

**FILED**

DEC - 7 2018 ᵏᵒ

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON SMITH, | ) |
| Plaintiff | ) |
| v | ) |
| HON CHIEF JUDGE TIMOTHY EVANS, | ) |
| OFFICE OF THE CHIEF JUDGE | ) |
| KATE GAILBRAITH VERRANT, | ) No. |
| COOK COUNTY JUVENILE PROBATION, | ) Judge |
| AVIK DAS | ) |
| WILLIAM PATTERSON | ) JURY DEMANDED |
| JENNIFER NUNEZ | |
| SHARON THROW KOC | |
| AFSCME COUNCIL 31 | |
| AFSCME INTERNATIONAL | |
| AFSCME LOCAL 3477 | |
| LEE SAUNDERS | |
| ROBERTA LYNCH | ) |
| MIKE NEWMAN | ) |
| LLOYD MARSHALL | ) |
| STEVE KASPERKI | ) |
| CITY OF CHICAGO | ) |
| CIVILIAN OFFICE OF POLICE ACCOUNT | ) |
| SYDNEY ROBERTS, | ) |
| KARLO FLOWERS | ) |
| BRANDON CRASE | ) |
| UNKNOWN PERSONS, | ) |

1:18-cv-08075
Judge Joan H. Lefkow
Magistrate Judge Young B. Kim

Defendants.

## COMPLAINT

JASON SMITH, PRO SE Plaintiff, states as follows for his Complaint against Defendants CHIEF JUDGE HON. TIMOTHY EVANS, OFFICE OF THE CHIEF JUDGE, KATE GAILBRAITH-VERRANT, COOK COUNTY JUVENILE PROBATION, AVIK DAS WILLIAM PATTERSON, JENNIFER NUNEZ, SHARON THROW- KOC, AFSCME COUNCIL 31, AFSCME INTERNATIONAL, AFSCME LOCAL 3477, LEE SAUNDERS, MIKE NEWMAN, LLOYD MARSHALL, STEVE KASPERKI CITY OF CHICAGO, the CIVILIAN OFFICE OF POLICE ACCOUNTABILITY, SYDNEY ROBERTS, KARLO FLOWERS, BRANDON CRASE AND UNKNOWN PERSONS

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 42 U.S.C. § 1983, 42 U.S.C. § 1988(a) and (b), 28 U.S.C. § 1331, 28 U.S.C. § 1343, Labor and Management Relations Act, 29 U.S.C. 142, 42 U.S.C. 2000 et seq ("Title VII"), 42 U.S.C. 1981, 28 U.S.C., and the First and Fourteenth Amendments to the United States Constitution. Plaintiff seeks legal and equitable relief, including but not limited to compensatory and punitive damages, interest, Attorneys Fees

2. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, under the principles of supplemental and pendant jurisdiction, and such claims so relate to the federal claims as to form a part of the same case and controversy.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants have their principal places of operation in this District, Plaintiff and, on belief, all Defendants, reside and are domiciled in this District, and all of the acts/omissions giving rise to Plaintiff's claims have occurred in this District.

4. Venue is further proper in this District pursuant to 710 ILCS §

## PARTIES

5. Plaintiff JASON SMITH ("SMITH") was at all times relevant to this Complaint an adult male resident of Cook County, Illinois. At all times relevant, Plaintiff had been employed by the City of Chicago as an Investigator with the Chicago's Civilian Office of Police Accountability ("COPA") and with the Chief Judge as a Probation Officer, is the former Union President of AFSCME Local 3477 and, Plaintiff was harmed by Defendants in this District.

6. Defendant CITY OF CHICAGO is a municipal corporation under the laws of the State of Illinois.

7. The CIVILIAN OFFICE OF POLICE ACCOUNTABILITY ("COPA") is an office of municipal government established pursuant to City ordinance 2-78-100, *et seq.*, charged with, *inter alia*, the investigation of alleged police misconduct. It is a successor

organization to the INDEPENDENT POLICE REVIEW AUTHORITY. It has obligations as an indemnitor of certain conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq.* Defendant harmed Plaintiff in Cook County, Illinois.

8. Defendant Chief Judge is the employer as defined by the Illinois Labor Relations Act, 5 ILCS 315/3 and according to 2017CH15851 lawsuit file by the Chief Judge whereby it states "the Chief Judge, not the county, is the employer of non-judicial employees of a court. See Orenic v. Illinois State Labor Relations Board., 127 Ill. 2d 453, 480 (1989) Chief Judge is a party to a collective bargaining agreement with AFSCME Local 3477, International, AFL CIO and Council 31 that includes a grievance and arbitration clause culminating in final and binding arbitration. It has obligations as an indemnitor of certain conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq.* Defendant harmed Plaintiff in Cook County, Illinois. (COLLECTIVE BARGAINING AGREEMENT) (2017CH15851) (AFSCME REBATES)

9. Defendant AFSCME Local 3477, Council 31, International at all times relevant herein, was and is a labor organization representing employees within the meaning of the Labor Management Relations Act, 29 U.S.C. 142.

10. 14. At all times relevant, Defendant AFSCME LOCAL 3477, COUNCIL 31 ("AFSCME") is and has been a public-sector labor organization within the meaning of the Illinois Public Labor Relations Act, 5 ILCS 315/1, *et seq.*, and the exclusive bargaining representative of, *inter alia*, Cook County Employees in the job title of Probation Officers.

11. At all times relevant, Defendant AFSCME Council 31, International ("AFSCME ") is and has been the umbrella organization FOR various local labor organizations, including AFSCME Local 3477. On belief, it provides resources, representational services, and grievance and arbitration administration services on behalf of AFSCME Local 3477.

12. All the Defendants are sued in their official and individual capacity.

13. Defendant Lloyd Marshall ("Marshall") is a legal adult and is the President of AFSCME Local 3477. He is a final policymaker and decision maker for Defendant AFSCME. Defendant Marshall is sued in his individual capacity and official capacity for all claims, and for defamation.

14. Defendant Sharon Throw Koc ("Koc") is a legal adult and is a final policymaker and decision maker for Defendant Chief Judge. Defendant KOC is sued in her individual capacity and official capacity for defamation when she provided a picture to the Cook County Sheriff, which resulted in the circulation of negative and false information that caused damaged to the plaintiff.

15. Defendant Avik Das ("DAS") is a legal adult and is a final policymaker and decision maker for Defendant Chief Judge. Defendant DAS is sued in his individual capacity and official capcaity, in addition to all the other claims for sending misleading information that affected a business relationship. (COPA Email from DAS)

16. Defendant Kate Gailbraith- Verrant ("VERRANT") is a legal adult and is a final policymaker and decision maker for Defendant Chief Judge. Defendant VERRANT is sued in her individual capacity, in addition to all the other claims for sending misleading information that affected a business relationship. (COPA Email from VERRANT)

17. Defendant William Patterson ("PATTERSON") is a legal adult and is a final policymaker and decision maker for Defendant Chief Judge. Defendant PATTERSON is sued in his individual capacity, and official capacity in addition to all the other claims.

18. Defendant Jennifer Nunez ("Nunez") is a legal adult and is a final policymaker and decision maker for Defendant Chief Judge. Defendant NUNEZ is sued in his individual capacity, and official capacity in addition to all the other claims.

19. Defendant Karlo Flowers ("FLOWERS") is a legal adult and is a final policymaker and decision maker for Defendant CITY OF CHICAGO. Defendant FLOWERS is sued in his individual capacity, and official capacity in addition to all the other claims.

## FACTS RELATING TO ALL COUNTS

17 SMITH was hired with the Chief Judge as a Probation Officer I in 2003. Smith was hired by the City of Chicago in 2018 as an Investigator. Smith became involved in the Union in 2010 became Vice President in 2012 and President in 2014

18 Smith became a steward, political action chairperson AFSCME Local 3477.

19. Smith quickly realized that the Employer was not following the collective bargaining agreement and quickly challenged policies that were contradictory to the collective bargaining agreement. (Letter)

20. Smith had a meeting with AFSCME Council 31 and the International in order to make them aware about the violations with a face-to-face meeting in Springfield with Henry Bayer and Lee Saunders. (*Picture and letters)*

21. Smith made complaints that AFSCME were not enforcing the provisions within the collective bargaining agreement and that the only person who could discipline probation officers was the employer. (*Arbitration and the Orenic decision defining the employer). (First Collective Bargaining Agreement under Judge Comerford*) In addition, Smith informed AFSCME that this was having a negative impact specifically African Americans

22. Smith was portrayed as a racist in an election in Springfield with information quickly being disseminated to the members by AFSCME. (Jordanette Letter)

23. Smith continued to challenged AFSCME and the International. He placed a motion on the floor for a vote to hire an Attorney and the membership approved.

24. Lloyd Marshall and others disseminated false information and

file 21 false charges with the Judicial Board of AFSCME that resulted in an acquittal for all but one. (*Charges*)

25 In May of 2018, Smith contributed information to a group of protected class of people who disseminated information about other Locals who have left AFSCME and information about the Chief Judge and Cook County Juvenile Probation about furloughs days under freedom of speech and association to raise awareness in participation of concerted activities. (Newsletter)

26. Smith provided information in a lawsuit filed by Theodis Chapman and Patrick Nelson about AFSCME (*1:2017cv08125*)

27. Smith sent a letter to AFSCME International requesting to be directly affiliated with the International in order to remove AFSMCE Council 31 as the exclusive representative (AFSCME response)

28. Smith received an email from Ms. Lena Bailey where Lloyd Marshall disparaged Mr. Smith's character (*email*)

29. Smith sent a letter to Lloyd Marshall and Steve Kasperski requesting Union representation for this violation of the collective bargaining agreement.

30 Steve Kasperski appears for the hearing and announces that he is only present for observation. Smith asked if he had received his letter and Steve Kasperski did not respond.

31. Smith began to complain about racial discrimination in 2012.

32 Smith sent letters, spoke with the Chief Judge at Cook County Board meetings, file grievances, unfair labor practice charges and sent emails about the racial discrimination.

33. Smith began to gather information by submitting Request for information, filing unfair labor practices charges when the department refused to provide that information and other concerted activities.

34 Smith blew the Whistle on the department when they attempted

to frame Probation Officer Anthony for derelict of his duties when Aaron Parks kidnapped and raped a Chicago State University student while on electronic monitoring. The department attempted to mislead the public to believe that Aaron Parks were being monitored twenty fours hours when this was not the truth.

35. The Department conducted an Investigation into Jordan's supervisor Brian Modeski, who is white and dismissed discipline for him. (Department dismissal letter)

36. William Pieroth, who is a Deputy Chief Probation Officer, made comments memorialized by Josh Slavin about comments made by William Pieroth that it was only one girl. (Josh Slavin letter)

37. Gregg Stanger, a Deputy Chief Probation Officer, wrote a memo in 2000 about the respond time and advocated for violent juveniles to be locked up immediately for a violation or not to be placed on the program. He also referenced a case where a juvenile had a stolen a car while on electronic monitoring. (Gregg Stanger Memo)

38. Smith challenged the department on the issue of Last Chance Agreements and noticed that only African Americans were receiving these agreements. AFSCME allowed the Chief Judge to create an additional contract only for African American Probation Officers that allowed them to circumvent the collective bargaining agreement, but never challenged that the last chance agreement had a disparate impact on African American Probation Officers (*IN THE APPELLATE COURT OF ILLINOIS FIRST JUDICIAL DISTRICT No. 16 CH 10890*)

39. Smith later provided information and appeared as a witness in the case of Kaletha Seay where the former president Mike Willis admitted that it was unusual for white probation officers to be discipline (*Kaletha Seay Illinois Department of Human Rights response)*

40. Smith later provided information to a group of protected class of people who file a Class Action lawsuit by Anthony Jordan, Kenneth Greenlaw, Theodis Chapman and Patrick Nelson

regarding the different terms and conditions imposed on African Americans Probation Officers. (*2015cv05907*)

41. Smith later learned during deposition that a white person (not probation officer) was provided a last chance agreement. All of the African American Probation Officers were terminated for the least minor infraction where this white support staff was given multiple chances by two different directors (*Michael Rohan and Avik Das*) despite the seriousness of the offenses. ( *Last chance agreement Joe Wosinak*)

42. Smith requested a four-day work week schedule in order to prepare to return to school and study for the LSAT.

43. The contract states "Requests by employees for flextime schedule shall be granted where practical to do. The scheduling of flex time shall be by mutual arrangement between the employee and his/her supervisor".

44. Smith's supervisor approved the flextime schedule, but the department denied it. Smith learned there were white probation officers who had part time schedules and a white probation officer who was granted a four-day work week schedule.

45. A grievance was filed and the Chief Judge denied it. A lawsuit was filed for retaliation and discrimination by the Plaintiff.

46. The Plaintiff began looking for different employment opportunities. The department was aware because William Patterson sent the Federal Government Information and the Chicago Fire Department responses (William Patterson letters)

47. Smith accepted a position with the Civilian Office of Police Accountability because of the original positing had the hours that were flexible.

48 Smith later learned that this was an old positing and that the investigators normally do not work on weekends and their normal hours were 8:30 – 4:30 pm

49 Smith was instructed to speak with Annette Moore the Chief of

Staff on February 16, 2018 in which he did and was told that the supervisor would allow a flexible schedule because others were attending law school.

50. Smith assisted with the formation of a coalition to address the dismantling and reallocating of resources primarily employed by African American Probation Officers and the death of African American Juveniles.

51. A meeting was held whereby Avik Das, the Acting Director, used the word Nigger and derogatory language from a letter he said was written that served no purpose of this meeting. A request for a copy of this letter was requested and Plaintiff condemned him for failing to censor this sensitive language. (Email from Jason Smith to Avik Das and other)

52. Smith continued to look for classes despite this news and applied to different schools to continue his education. Smith enrolled into a Spanish Class and applied to Georgetown Summer Session program and decided to focus on the LSAT.

53. Smith requested an educational leave from the department with the anticipation of rescinding his acceptance from COPA because of the hours.

54. Avik Das continued to delay his response and gave Smith a difficult time with securing his educational leave that the Plaintiff contemplated resigning his position because he was tired of the racial discrimination and retaliation.

55. Smith sent an email to the Chief Judge about this issue, but never received a response.

56. The educational leave was granted, but the plaintiff still contemplated the decision to resign.

57. On the evening of February 15, 2018, Smith spoke with his supervisor and told him his thoughts and Supervisor Blair said he should just resign.

58. Plaintiff told his supervisor he would be submitting his

resignation letter to the department along with his credentials. The Plaintiff submitted these things multiple times and finally delivered them to the Department by leaving them in the office of the Supervisor.

59. Supervisor Blair was aware of the plaintiff's new employment and this was memorialized in an electronic communication.

60. Plaintiff received an electronic communication from his former supervisor stating "Stay Strong and watch your back"

61. Plaintiff received additional information that the department was searching for Plaintiff's new employment

62. Smith appeared in the Office of the Human Resource Director on May 17, 2018 and instructed the support staff to have Mr. Patterson to contact him in Patrick Nelson's office in order to speak with him while Mr. Patterson wasn't present. He appeared in the office of Patrick Nelson and left without speaking with the Plaintiff.

63. The plaintiff attempted to locate Mr. Patterson, but was unsuccessful.

64. William Patterson told the white officer being disciplined that "if the union wasn't complaining about discrimination, you wouldn't be here." (Ed Walsh affidavit)

65. Smith appeared in the Office of Juvenile Probation on May 22 or 23rd to gather the last of his belongings after Blair notified him that they were being relocated and finally delivered all items belonging to the department along with another copy of his resignation letter.

66. On May 26, 2018, Jennifer Nunez contacted COPA to inquire about my employment status by email after the 23rd when a newsletter was circulated about others leaving AFSCME and raising awareness of the employer's deceptive practices.

67. Subsequently, the Office of the Chief Judge Kate Verrant inquired about the plaintiff's employment status, which is unusual,

and deviation from the norm for the Office of the Chief Judge.

68. Karlo Flowers provided the Office of the Chief Judge Kate Verrant information about the plaintiff, which they were not sure, was the same person by email.

69. Cook County Juvenile Probation sent the plaintiff a negative letter on June 14, 2018 to his new place of employment.

70. Smith received a copy of a letter with his picture and information written about his status to the Cook County Sheriff from Sharon Throw – Koc that was not true and damaged the plaintiff's reputation. Koc included her cellphone number.

71. A police report was filed whereby it stated that the plaintiff refused to return his credentials when in fact nobody ever contacted the plaintiff to inquire about these items, which furthered damaged the plaintiff's reputation as it was posted online.

72. Subsequently, on June 22, 2018, the City of Chicago, severed their relationship with the Plaintiff citing no reason in the letter.

73. The plaintiff sent a letter to AFSCME requesting assistance in this matter and the confusion surrounding this issue. The plaintiff never received a response.

74. The plaintiff filed on his own grievance over this issue according to the collective bargaining agreement to Avik Das. The plaintiff never received response.

75. The plaintiff filed an additional grievance and sent it to the Chief Judge. The Chief Judge's designee responded by stating that Avik Das has waived his right to schedule this grievance.

76. A grievance hearing was held and despite the language in the collective bargaining agreement it was sustained. The plaintiff was never provided due process whereby the collective bargaining agreement states "Section 4. Pre-Disciplinary Meeting: A. Purpose: Prior to the imposition of suspension or discharge the Department Head/Designee shall meet with the employee to discuss the

circumstances giving rise to the contemplated discipline. The Employer, after presenting all known evidence and reasons for disciplinary action, will afford the employee an opportunity to rebut any evidence or charges against him/her. As Human Resource Director cited misconduct on his exit paperwork (William Patterson's exit paperwork)

77. The Contract also has different language in another section of the contract "Section 4. **Termination of Seniority**: An employee's seniority and employment relationship with the Employer shall

A. terminate upon the occurrence of one of the following:

B. following:

4.    Resignation or retirement;

5.    Discharge for just cause.

Which is an implied or forced resignation, but the department cited misconduct for participating in gainful employment.

78. There are no objective able standards that defines gainful employment, nor is this misconduct for locating new employment while on authorized leave of leave, but the department sent information to the City of Chicago with implication of adverse employment action.

79. The City of Chicago then stated to the EEOC that I had secondary employment when in fact the language is clear that secondary employment is **PAID** employment.

80. The Plaintiff sent an email to AFSCME Council 31 requesting that this matter be sent to arbitration. The Union never responded.

81. This is not the first time the department either cited that they misplaced or poor record keeping. During the year of 2017, the Chief Judge tried to cite poor recording keeping for an illegal document in the Plaintiff file.

82. The department cited to Theodis Chapman and Patrick Nelson

that they lost their training hours when they attempted to give them a poor performance evaluation.

83. Jonathan Willis was unaware a document was being placed in his personnel file when Mark Werner attempted to have Mr. Willis complete a drug test despite there is no drug testing in the department. (Jonathan Willis letter and Mark Morrissey letter)

84. The hearing conducted in this case was bias and heavily titled in the employer's direction as his designee conducted the hearing. It is fair to say that the plaintiff did not believe the employer would favor the plaintiff in this hearing. The response and justification is ripe for corruption and failed to insert all factual information. Matter of fact, the employer's designee has contradictory information in the response.

85. The plaintiff also received a copy of his personnel record and discovered other information that did not belong or misplaced in his personnel file.

86. **Section 9. Impartial Arbitration**:

If the Union is not satisfied with the Step Four answer, it may within thirty (30) days after receipt of the Step Four answer submit in writing to the Chief Judge notice that the grievance is to enter impartial arbitration. In addition, the only person who can discipline Probation Officers according to the Collective Bargaining Agreement is the Employer. The contract is clear and states "The Arbitrator, in his/her opinion, shall not amend, modify, nullify, ignore or add to the provisions of this Agreement. The issue or issues to be decided will be limited to those presented to the Arbitrator in writing by the Chief Judge and the Union. His/her decision must be based solely upon his/her interpretation of the meaning or application of the express relevant language of the Agreement. The decision of the Arbitrator made in compliance with the foregoing shall be final, shall be in writing, shall include the reasons for each finding and conclusion, and shall be rendered within thirty (30) days following the date of the last hearing conducted by the Arbitrator unless an extension of such period is

agreed to by the Chief Judge and the Union.

87. The Chief Judge's designee has cited that the Chief Judge is busy and delegate this authority, but according to an arbitration decision, Orenic decision, lawsuit file by the Chief Judge and the language in the contract. The Chief is the employer and is the only person who can discipline probation officers.

88. The Plaintiff believes the Union was satisfied with the Employer's response since they failed to submit it to arbitration or respond to the Plaintiff.

89. The Employer departed from the employer's typical policies and procedures is one of the typical ways of showing pretext when they failed to follow the collective bargaining agreement prior to this adverse action that could have alleviated or avoided this complaint.

90. One of the typical avenues explored by the Employer is to conduct a hearing, in the case of Christiana Guarner, who had been suspended and later terminated, was allowed to resign despite overwhelming evidence of failure to perform her duties. (Letter)

91. The Plaintiff suffered unwavering damage because of the interference of his new employment and nonfactual information when his only infraction was advocating for fairness, improving his education and securing new employment to get away from the discrimination.

92. The Union departed from the Union's typical policies and procedures is one of the typical ways of showing pretext when they fail to response or represent the plaintiff.

93. Smith has inquired of Defendant AFSCME about submitting this issue to arbitration. AFSCME has a history of stalling and not responding to African Probation Officers about the status or providing a reason as to why the case does not have merit

94. Further, Defendants Chief Judge and Avik Das committed an adverse employment action on Smith in retaliation for his refusal to engage in unethical and/or unlawful behavior in conducting his

duties as employee and allowing them to continue to circumvent the contract and violate the rights of other employees, and that this adverse employment action was entirely pre-textual.

95. Defendants Avik Das, Jennifer Nunez, William Patterson, Sydney Roberts, Lloyd Marshall, Steve Kasperski and Karol Flowers, conspired with Chief Judge to trump up a reason to cause a negative impact against Smith and provide a pre-textual basis for his separation.

96. At all times, acting under color of law, Defendants Chief Judge, Avik Das, Jennifer Nunez, William Patterson, Sydney Roberts, Karol Flowers, Verrant, conspired, and personally and directly, deprived Smith of his rights to engage in protected constitutional activity, including by refusing to engage in unethical/unlawful behavior, and for utilizing his contractual rights under a union contract.

97. The Plaintiff believes that because of his strong advocacy of fair and equal treatment under the United States Constitution, fair representation, his concerted activities in May 2018 and throughout his tenure with the Union and under the Civil Rights Act is the direct result of the Chief Judge, AFSCME, Cook County Juvenile Probation and the City of Chicago refuse to afford the Plaintiff his rights under the Constitution, the provisions of the collective bargaining agreement and other rights afforded to others when there was a breach of the collective bargaining agreement.

98. This is not the first time Avik Das used a third party to cause a negative impact on the Plaintiff. (Email)

Smith has exhausted his administrative remedies under the collective bargaining agreement and the law

## COUNT 1: 42 U.S.C. § 1983 DEPRIVATION OF FIRST AMENDMENT PROTECTED RIGHT TO FREEDOM OF SPEECH (Plaintiff v. All individual Defendants)

47. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint and facts.

48. Smith refused to allow Officer Jordan to be used as a scapegoat when Aaron Park committed this heinous act. The Chief Judge and the department were aware of their policies and that this unit did operate twenty-four hours a day.

49. Smith's refusal to allow misinformation to be disseminated to the public was on a matter of grave public concern, *to wit*, speech about the results of official probation duties into the operation and policies of the department was of general interest, legitimate news interest, and of value and concern to the public at the time of Smith's refusal and the present.

50. Smith was not required – in fact, he was prohibited – by law, to provide fair representation to All Probation Officers especially Anthony Jordan when the department was aware that this unit did not operate twenty four hours and that Officer Jordan was not working on this day. Such activity in no way was a part of Smith's employment duties.

51. Because Smith's report constituted official evidence, he had a legal obligation to include truthful information and only truthful information based on his investigation.

52. Smith had a strong First Amendment protected interest in refusing to allow the department to mislead the public in thinking that this unit operated twenty-four hours.

53. Smith also had an obligation to inform the probation officers to make a decision when information was provided about furlough days and the ability to decertify from AFSCME for failing to provide fair representation when information was circulated in 2018.

53. Defendants Chief Judge, DAS, NUNEZ, PATTERSON, MARSHALL, KASPERKI, ROBERTS, FLOWERS, CRASE, and VERRANT acting under color of law, adversely affect the plaintiff on June 14 and June 22, 2018 in retaliation for his refusals to allow them to retaliate, discriminate and violate the rights of probation officers.

54. Defendant Chief Judge, DAS, NUNEZ, PATTERSON,

MARSHALL, KASPERKI, ROBERTS, FLOWERS, CRASE, and VERRANT by their actions under color of law, deprived Smith of his First Amendment protected right to free speech.

55. Defendant CHIEF JUDGE/ ROBERTS/ AFSCME LYNCH have refused and/or failed to intervene to prevent the effects of unlawful retaliation and discrimination against Smith.

56. As a direct and proximate result of Defendants' actions under color of law, Smith suffered damages, including loss of pay, benefits, compensatory damages, special and consequential damages, and emotional distress.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants, and order the following affirmative and other relief: (1) rescind the Plaintiff's termination with full back pay, benefits, pension service credits and contributions, and other make whole relief with pre-judgment interest; (2) pay damages to Plaintiff for actual, general, special, compensatory damages, including emotional distress and reputational damage in an amount to be proved at trial; (3) pay the costs of litigating this action and reasonable attorneys' fees; (4) pay punitive damages; (5) order Defendants to cease and desist from retaliating against Plaintiff in contravention of his federal constitutional rights; and, (6) order such other relief as this Court deems just and proper.

## COUNT 2: 42 U.S.C. § 1983 DEPRIVATION OF PROTECTED PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION (Plaintiff v. All individual Defendants)

57. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint and facts.

58. Plaintiff has an actual protected property interest under the Fourteenth Amendment pursuant to his collective bargaining agreement, his "for cause" employment status, and by a clearly

implied promise of continued employment if the defendants believe Smith was still employed.

59. Plaintiff has an actual property interest under his collective bargaining agreement because it provides that covered employees may be terminated only for just cause.

60. Plaintiff also has an actual protected property interest by (730 ILCS 110/13) (from Ch. 38, par. 204-5) The Chief Circuit Judge, or another judge designated by the Chief Circuit Judge to have general administrative and supervisory authority over the director of the court services department or the chief probation officer, may authorize the director or chief probation officer to appoint all subordinate court services department officers or probation officers, who shall serve at the pleasure of the director or chief probation officer. In addition to the authority to discharge such subordinate officers, the director or chief probation officer may impose lesser disciplinary sanctions as the circumstances warrant in the judgment of the director or chief probation officer. Any disciplinary action taken by the director or chief probation officer shall be in accordance with any State or federal laws that may be applicable that covered employees may be terminated only for just cause.

61. Plaintiff also has an actual protected property interest by implied promise of continued employment after he completed his probationary period with the Chief Judge, and because he was subject to a progressive disciplinary system.

62. If the Defendants CHIEF JUDGE, DAS, NUNEZ, PATTERSON, acting under color of law and in concert, believed the plaintiff was still employed that did not provide Plaintiff a *Loudermill* or other pre- deprivation hearing before adversely affecting his status with the Chief Judge, this denial resulted in the City of Chicago to severed their relationship with the Plaintiff in which this intentional act damaged and cost the plaintiff.

63. Through their actions under the color of law, Defendants CHIEF JUDGE, DAS, NUNEZ and PATTERSON deprived Plaintiff of a protected property interest in continued compensation without any

due process whatsoever as required by the Fourteenth Amendment of the United States Constitution.

64. Defendants CHIEF JUDGE, DAS, NUNEZ and PATTERSON took the aforesaid actions in retaliation for Plaintiff exercising his lawful rights.

65. Defendant ROBERTS/CHIEF JUDGE has failed and/or refused to intervene to prevent the ongoing deprivation of Plaintiff's protected property interest.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants, and order the following affirmative and other relief: (1) rescind the Plaintiff's termination with full back pay, benefits, pension service credits and contributions, and other make whole relief with pre-judgment interest; (2) pay damages to Plaintiff for actual, general, special, compensatory damages, including emotional distress and reputational damage in an amount to be proved at trial; (3) pay the costs of litigating this action and reasonable attorneys' fees; (4) pay punitive damages; (5) order Defendants to cease and desist from retaliating against Plaintiff in contravention of his federal constitutional rights; and, (6) order such other relief as this Court deems just and proper.

## COUNT 3: 42 U.S.C. § 1983 DEPRIVATION OF FIRST AMENDMENT PROTECTED RIGHT TO FREELY ASSOCIATE (Plaintiff v. All individual Defendants)

68. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint and facts.

69. Plaintiff, jointly and in concert with other probation officers, sought to freely exercise his First Amendment right to associate freely by filing a grievance over this negative action under the union contract, acting in concert with his fellow employees to process his grievance through to arbitration, by availing himself, through his union, of his right to arbitrate this negative action under the grievance procedure and under the collectively-bargained contract

providing for just cause.

70. Defendants Chief Judge, DAS, NUNEZ, PATTERSON, MARSHALL, KASPERKI, acting under color of law and in concert, deprived Plaintiff of his right to freely associate by utilizing the collective-bargained grievance and arbitration procedure by refusing to acknowledge the language in the contract, impacting his new employment with wrongful and misleading information, failing to submit this issue to arbitration.

71. Defendants Chief Judge, DAS, NUNEZ, PATTERSON, MARSHALL, KASPERKI, acting under color of law and in concert, deprived Plaintiff of his First Amendment guaranteed right to freely associate by providing misleading, and in correct information without legitimate explanation, without cause or justification, and in direct retaliation for Plaintiff exercising his rights to grieve and arbitrate this adverse action under the collective bargaining agreement, for advocating against racial discrimination and fair representation.

72. By their actions and conduct under color of law, Defendants Chief Judge, DAS, NUNEZ, PATTERSON, MARSHALL, KASPERKI, sent the message to employees under his span of control within CHIEF JUDGE that any effort to challenge his decisions would be met with retaliation such as impacting the plaintiff new employment and depriving plaintiff of his rights under the collective bargaining agreement, constitution, federal and state laws.

73. By their actions and conduct under color of law, Defendants Chief Judge, DAS, NUNEZ, PATTERSON, MARSHALL, KASPERKI, deprived Plaintiff of rights, privileges, and immunities guaranteed by the First Amendment of the United States Constitution, including the right to freely associate such as by utilizing the collectively-bargained for grievance and arbitration procedure of Plaintiff's union contract.

74. Defendant CHIEF JUDGE/ ROBERTS has failed and/or refused to intervene to prevent the ongoing deprivation of Plaintiff's

protected property interest.

75. Plaintiff's utilization of the grievance and arbitration procedure involved a matter of public concern because one of the bases for Plaintiff's challenge was that the Chief Judge/ Cook County Juvenile Probation continue to engage in racial discrimination in which Plaintiff was not even interviewed as part of the investigation and he was just summarily separated from his employment.

77. Plaintiff has suffered severe and ongoing damages as a result of Defendants' actions, including his separation from his new employment and retaliatory deprivation of his rights guaranteed by the contract and constitution which resulted, including but not limited to lost wages, benefits, pension service credits and contributions, lost or to-be-lost insurance coverage, and anxiety and emotional distress and humiliation.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants, and order the following affirmative and other relief: (1) rescind the Plaintiff's separation with full back pay, benefits, pension service credits and contributions, and other make whole relief with pre-judgment interest; (2) pay damages to Plaintiff for actual, general, special, compensatory damages, including emotional distress and reputational damage in an amount to be proved at trial; (3) pay the costs of litigating this action and reasonable attorneys' fees; (4) pay punitive damages; (5) order Defendants to cease and desist from retaliating against Plaintiff in contravention of his federal constitutional rights; and, (6) order such other relief as this Court deems just and proper.

## COUNT 4: ILLINOIS STATE LAW WHISTLEBLOWER ACT VIOLATION (Plaintiff v. All Defendants)

78. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint.

79. SMITH refused to participate in activity that would result in a violation of a State or federal law, rule, or regulation, by refusing

Defendant CHIEF JUDGE, DAS, NUNEZ, PATTERSON, demand that SMITH'S alter his findings to support a different outcome in an investigation in the Aaron Parks matter.

80. SMITH has a protected right under state law to be free from retaliation from engaging in protected refusals as outlined herein.

81. CHIEF JUDGE, DAS, NUNEZ, PATTERSON, engaged in the following separate and distinct retaliatory adverse actions against SMITH:

6.  Providing misleading information to the City of Chicago that resulted in separation from his employment;

7.  Denial of his rights guaranteed under the collective bargaining agreement, constitution;

8.  Ordering an internal investigation into SMITH;

9.  Ordering SMITH's removal in 2018;

82. Defendants CHIEF JUDGE, DAS, NUNEZ, PATTERSON, ROBERTS, FLOWERS engaged in the aforesaid adverse actions intending to retaliate against SMITH for his protected refusals.

83. As a direct and proximate cause of LETT's protected refusals, Defendants CHIEF JUDGE, DAS, NUNEZ, VERRANT, PATTERSON, ROBERTS, FLOWERS and CRASE have caused SMITH actual damages including lost pay and benefits, compensatory losses, emotional distress, and reputational harm.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and order (1) back pay and back benefits with interest; and, (3) compensation for damages in an amount to be determine at trial as a result of the violation, including litigation costs, expert witness fees, and reasonable attorneys' fees.

## COUNT 5: ILLINOIS STATE LAW ACTION FOR ENFORCEMENT OF AN COLLECTIVE BARGAINING

**AGREEEMENT (Plaintiff v. CHIEF JUDGE, AFSCME Local 3477, and AFSCME Council 31)**

85. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint.

86. Defendants CHIEF JUDGE, and AFSCME at all times relevant were parties to a valid and enforceable collective bargaining agreement covering all of CHIEF JUDGE employees in the job title of, *inter alia*, PROBATION OFFICERS.

87. CHIEF JUDGE under the Illinois Public Labor Relations Act, 5 ILCS 315/1, *et seq.*, assumed contractual obligations

88. Defendant AFSCME Local 3477 is a purely public-sector union subject to the Illinois Public Labor Relations Act, 5 ILCS 315/1, *et seq.*

89. Defendant AFSCME Council 31 provides contract administration services for AFSMCE Local 3477, and failed to file or present the plaintiff in his pursuit to enforce the provisions of the collective bargaining agreement

90. The collective bargaining agreement between Defendants CHIEF JUDGE and AFSCME Local 3477, COUNCIL 31, INTERNATIONAL contains a grievance procedure culminating in final and binding arbitration.

91. In 2018, Defendants CHIEF JUDGE, and both AFSCME Defendants failed to agree to submit this matter under the collective bargaining agreement,

92. SMITH's grievance alleged a meritorious violation of the Collective Bargaining Agreement by the CHIEF JUDGE

96. Instead, Defendants allowed the time period to lapse, which resulted in the filing of this complaint.

97. Defendants CHIEF JUDGE and AFSCME refused and failed to comply with Collective Bargaining Agreement.

98. Neither AFSCME Defendant has sought confirmation and/or enforcement of the Collective Bargaining agreement despite Plaintiff's diligent inquiries and attempts to have them seek such enforcement or legal action.

100. Plaintiff has wages and benefits as a result of Defendants CHIEF JUDGE, AFSCME, and COPA refusal to treat him fairly.

101. Plaintiff is also suffering extreme embarrassment, humiliation, anguish, stigma, and stigma plus and a change in his legal

103. Defendant AFSCME has never challenged the CHIEF JUDGE within the time limits allowed by law.

104. Plaintiff, an employee covered by a collective bargaining agreement has a private right of action if A **union** acts unfairly, partially, and with discrimination when pursuing a worker's grievance.

105. Labor Relations Act was enacted, and is a member of the class of persons for whom the grievance and arbitration clause in this case was intended to benefit; the Plaintiff's injury, non-enforcement and non-compliance with an collective bargaining agreement, is one the Illinois Public Labor Relations Act, and the collective bargaining agreement was designed to prevent; the plaintiff proceeding on his own to enforce his own rights is consistent with the purposes of the Illinois Public Labor Relations Act, and the collective bargaining agreement; and,

106. Plaintiff has no means of enforcing his own arbitration hearing unless he brings this action, given that AFSCME has not brought an action to confirm and enforce the collective bargaining agreement. Defendant AFSCME Local 3477 and AFSCME Council 31 breached the duty of fair representation by intentionally failing and/or refusing to seek enforcement of the collective bargaining agreement and failing to give any explanation to SMITH for so doing, including after SMITH had notified the Union that the Defendants CHIEF JUDGE was not complying with the provisions of the collective bargaining agreement.

107. AFSCME's breach of its duty of fair representation necessitates SMITH's bringing this action on his own behalf, regardless of his private right to confirm and enforce provisions within the collective agreement overturning his own adverse action notwithstanding.

108. Because of his private right to do so and because of the Union's breach of its duty of fair representation, Plaintiff is entitled to purse this action to the end

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment against AFSCME for failing to provide fair representation and by paying Plaintiff all of the back pay and benefits to which he is entitled under the pre- and post- judgment interest.

## COUNT 6: INDEMNIFICATION OF DEFENDANTS PURSUANT TO 745 ILCS 10/2- 301, *et seq.*, AND 10/9-102

109. Plaintiff alleges and incorporates by reference all other paragraphs of this complaint above as if fully set forth in this Count.

110. Illinois statute provides that a local public entity such as the City of Chicago/ Chief Judge is obligated to assume financial responsibility for the actions committed by its officials or employees, such as the CITY/ Chief Judge and all of the individual Defendants named herein, and to pay judgments against such individuals. *See, e.g.* 745 ILCS §§ 10/2-301, 2- 302, 9-102.

WHEREFORE, Plaintiff requests that this court enter a judgment in favor of Plaintiff and against all Defendants, and order that Defendant CHIEF JUDGE/ CITY OF CHICAGO assume financial responsibility for the actions and/or omissions committed by the Defendants and make Plaintiff whole in all ways with pre- and post- judgment interest.

### Denial of Equal Protection (United States Constitution)

15. The employees working for the Chief Judge\ under the same classification as members professional bargaining unit, are covered by the Contract.

16. Many of the employees working for Defendant the Chief Judge under the same classification as members in a professional bargaining unit were subject to the grievance and disciplinary procedures as set forth in the Contract and were not adversely affected, while Plaintiff, Jason Smith was not afforded the same procedures set forth in the Contract and was improperly removed.

17. Applying different procedures to employees when they have the same classification and/or duties is unreasonable, arbitrary, lacks a rational basis, and violates the Contract. It therefore violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

18. Defendant the Chief Judge and his subordinates were acting under the color of state law to violate the rights of the Plaintiff, Jason Smith, guaranteed under the united States Constitution, and the Court may grant relief against those actions pursuant to 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(a) render a declaratory judgment that Plaintiff's removal violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

10. (b) issue an order requiring Defendants to rescind the adverse action;

11. (c) enter an injunction prohibiting Defendants from further action that violates the Equal Protection Clause;

(d) enter a judgment for requiring Defendants to pay back pay to the employees who have lost wages due to their unconstitutional acts;

(e) order Defendants to pay Plaintiff the costs and reasonable attorney fees of bringing this cause of action;

(f) order any further relief the Court deems just and proper.

**COUNT 7**

19. The employees working for the Chief Judge a under the same classification as members in the professional bargaining unit, are covered by the Collective Bargaining Agreement.

20. Many of the employees working for Defendant the Chief Judge as well as other Chief Judge employee under the same or different classification as members in the professional bargaining unit were subject to the grievance and disciplinary procedures as set forth in the Master Contract and were not removed, while Plaintiff, Jason Smith was not afforded the same procedures set forth in the Contract and was improperly removed specifically. Christiana Grunauer, a white probation officer who was allowed to resign despite egregious accusations of falsification and Joe Wosinak, a white support staff who was on a last chance agreement, threatened to kill a black woman, whereby Avik Das used his discretion not to enforce this binding agreement because of his race and negotiated the resignation of Christiana Gruaner. (See Attachments)

21. Applying different procedures to employees when they have the same classification and/or duties is unreasonable, arbitrary, lacks a rational basis, and violates the Contract. It therefore violates the Equal Protection Clause of the Illinois Constitution contained in Article 1, Section 2.

22. Defendant the Chief Judge were acting under the color of state law to violate the rights of the Plaintiff, Jason Smith, guaranteed under the Illinois Constitution, and the Court may grant relief against those actions.

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(a) render a declaratory judgment that Plaintiff's removal violates the Equal Protection Clause of Article 1, Section 2, of the Illinois Constitution;

1. (b) issue an order requiring Defendants to rescind the language;

2. (c) enter an injunction prohibiting Defendants from further action that violates the

Equal Protection Clause of the Illinois Constitution;

(d) enter a judgment for requiring Defendants to pay back pay to the employees who have lost wages due to their unconstitutional acts;

(e) order Defendants to pay Plaintiff the costs and reasonable attorney fees of bringing this cause of action;

(f) order any further relief the Court deems just and proper.

(g) Appoint a monitor to oversee the Chief Judge and his personnel decisions

(h) Allow all African American Probation Officers who lost their job to return if desired.

## COUNT 8

23. The 2008-2012 collective bargaining agreements are valid and binding collective bargaining agreements between the Chief Judge and AFSCME, of which Plaintiff is a member.

24. The Chief Judge of Cook County breached the Contract when it applied different procedures to Plaintiff as compared to other employees with the same classification and/or duties.

25. That as a result of Defendants breach, Plaintiff was damaged, WHEREFORE, Plaintiff prays that this Court grant the following relief: (a) render a declaratory judgment that Defendant State of Illinois has violated the Contract;

(b) that the court enjoin further breaches of the contract;

(c) that the court order damages be paid to Plaintiff for the harm caused by Defendants breach;

(d) order any further relief the Court deems just and proper.

Count 9 – Breach of Duty of Fair Representation

Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint.

27. Defendants CHIEF JUDGE, and AFSCME at all times relevant were parties to a valid and enforceable collective bargaining agreement covering all of CHIEF JUDGE employees in the job title of, *inter alia*, PROBATION OFFICERS.

28. By refusing, declining of failing, in a perfunctory and arbitrary manner, to arbitrate Smith's adverse employment action, AFSCME breached their duty of fair representation owed to SMITH.

29. AFSCME failure to properly and fairly represent SMITH despite the obvious violations of the provision in the language and Smith's removal was willful, discriminatory, knowing disregard of Smith's right to fair representation.

## COMMON PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor, and against Defendants, for:

12. Compensatory damages;

13. Punitive damages;

14. Reasonable attorneys' fees and litigation costs and expenses;

15. Appropriate equitable relief; and

16. Such other relief as this Court deems just and proper.

17. Appoint a monitor

18. Establish an outside Agency to investigate complaints of Probation Officers to afford them due process and an unbiased system

19. **PLAINTIFF DEMANDS A TRIAL BY JURY** Respectfully submitted,

JASON SMITH
3515 W. CERMAK
CHICAGO, IL 60623
312-965-9052



IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION

TIMOTHY C. EVANS, as Chief Judge      )
of the Circuit Court of Cook County,    )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )
                                        )    Case No.
COUNTY OF COOK, a body politic and      )
corporate, TONI PRECKWINKLE,            )
President of the Cook County Board of    )
Commissioners, and MARIA PAPPAS,        )
Treasurer of Cook County,               )
                                        )
          Defendants.                   )

2017CH15851
CALENDAR/ROOM  04
TIME 00:00
Injunction

## VERIFIED COMPLAINT FOR ENFORCEMENT OF THE CHIEF JUDGE'S ADMINISTRATIVE ORDER AND FOR INJUNCTIVE RELIEF

Plaintiff, Timothy C. Evans, as Chief Judge of the Circuit Court of Cook County, (the "Chief Judge," "Circuit Court," or "Court"), by and through his attorney, Lisa Madigan, the Illinois Attorney General, and, pursuant to Illinois Supreme Court Rule 21(d), hereby petitions the Court for entry of an order compelling the Defendants to comply with the Chief Judge's General Administrative Order No. 2017-09 (hereinafter referred to as "Administrative Order"). Under Rule 21(d), Plaintiff seeks an injunction against Defendants, compelling them to take whatever action is necessary to comply with the Administrative Order, including the provision of sufficient financial support to ensure the proper operation of the court system, as detailed in said order, along with enjoining Defendants from taking any action in processing the termination, separation, or layoff of any employee of the Circuit Court without approval from the Chief Judge, or his designee. In support thereof, the Plaintiff states the following:

## JURISDICTION AND VENUE

1. The courts have the authority to compel the expenditure of resources necessary to allow the judicial branch to perform its constitutional responsibilities. *Jorgensen v. Blagojevich*, 211 Ill. 2d, 286, 312 (2004); *People ex rel. Bier v. Scholz*, 77 Ill. 2d 12, 19-20 (1979).

2. Moreover, a County has no authority to unilaterally select specific non-judicial employees of a court for termination of employment or reduction in force; simply put, the Chief Judge, not the County, is the employer of non-judicial employees of a court. *See Orenic v. Ill. State Labor Relations Bd.*, 127 Ill. 2d 453, 480 (1989).

3. Pursuant to Supreme Court Rule 21(d), the circuit court has jurisdiction to compel a person or agency to comply with an administrative order of the chief circuit judge. Ill. Sup. Ct. Rule 21(d).

4. The circuit court also has the authority to grant a temporary restraining order and a preliminary or permanent injunction after proper notice has been provided to all parties. *See* 735 ILCS 5/11-101, 11-102.

5. Venue in Cook County is proper pursuant to 735 ILCS 5/2-101 because the Chief Judge's administrative order was entered in Cook County, Illinois, and the Defendants from whom the Chief Judge seeks compliance are located and conduct their official duties in Cook County, Illinois.

## PARTIES

6. Plaintiff, Timothy C. Evans, is the Chief Judge of the Circuit Court of Cook County, who, in his capacity as chief circuit judge, entered Administrative Order No. 2017-09, dated November 30, 2017. (Exhibit 1).

2

JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612

TO: DCPO Mark Morrissey
From: PO Jonathon Willis
Date: January 7, 2010
RE: Meeting on December 17, 2009

I am writing this letter to address a meeting that took place on Dec 17, 2009. Let me first say that I was in shock at the nature of the meeting. I am still in shock to this day that the meeting even took place. It was embarrassing and humiliating as a professional to be subjected to this discriminating behavior on your part. I have to ask how many other employees have been subjected to this type of interrogation. The witch-hunt that was conducted by management makes me feel very uncomfortable that I am not welcomed as a professional in this department. We work in a judicial system that allows for due process to everyone that comes through our doors, yet the very same employees who work in the system are not afforded those same rights? What is most damaging is that the entire basis for this questioning was based on some alleged "credible source" that was *never produced.*

During the interrogation I answered all the questions asked of me. Apparently my responses did not suffice because I was still warned about this serious allegation against me and the fact that I would be disciplined if I were suspected of drug use in the future. The presumption that I as an African American man am guilty, and you a male Caucasian are innocent is frightening to me when you offered to take a urine test with me? I felt very uncomfortable with that request. Finally, I was warned that a more serious investigation would arise as a result of any future inquiries made by whom? More credible sources?

When the meeting concluded I was informed that no disciplinary action would be taken as a result of the meeting. Basically, management placed in my personnel file a letter memorializing the meeting indicating that I lied during the interview. To this date I have not received a copy of the letter. I have only seen the copies that were given to the union. This only further makes me believe that I am being discriminated against by management.

I take my profession and my role as a Probation Officer in this department very serious and I would not do anything to jeopardize my integrity, character, or employment with our department.

In closing I want the memo memorializing the meeting on December 17, 2009 removed from my personnel file.

Respectfully,

Probation Officer, Jonathan Willis

The State of Illinois                <u>AFFIDAVIT</u>

                                      ) S.S.

County of Cook

I, Edward Walsh , of Rolling Medows, Illinois, MAKE OATH AND SAY THAT:

1.    I, Edward Walsh, Illinois, am a member of AFSCME Local 3477 Cook County Juvenile Probation Officers. During a grievance hearing held at the Chief Judge Office. William Patterson, of Cook County Juvenile Probation, Human Resource Director made the statement that if the Union was not complaining about discrimination that you would not be here. President Jason Smith of AFSCME Local 3477 stated to the Chief Judge Designee that it should be just cause not just because of someone color that they are being disciplined.

SUBSCRIBED AND SWORN TO      )

BEFORE ME, on the              )

13th day of January, 2016       )

                                     )

_Peter N. Ryan_            )      _Edward Walsh_

NOTARY PUBLIC                )      Edward Walsh

My Commission expires: _3 - 6 - 20/9_      )

```
OFFICIAL SEAL
PETER N. RYAN
Notary Public - State of Illinois
My Commission Expires .3/06/2019
```

July 8, 2015

Dear: AFSCME LOCAL 3477

My name is Buford Arrington, I am a Probation Officer with Cook County Juvenile Probation and Court Services Department for over 25 + years. In that time I have willingly contributed my experience in various units within the department. I have also received many Exceeds Standards on my various Performance Appraisals throughout the years. I come to work every day just as I have for the last 25+years excited about contributing to helping empower the minors, their families and the communities. I am proud and thankful to be employed as a Probation Officer and a loyal longstanding member of the union.

I am approaching 26years of service and I have waited years to get the opportunity to work in Intake Screening. When a recent vacancy for intake screening became available I was very excited. I felt that I earned the opportunity after years of loyal service to the department to bid into the position. I viewed this final move of my career as being a proud moment for my involvement with the minors and their families.

My moment of happiness was short lived as I discovered that another Probation Officer with less seniority who is a white female was given the position over me by management.

I find it to be sad and alarming that I had to file a grievance report for the position I worked hard to qualify for and bid into. I view the entire department and the union as family. I should not be put in this position; whereby, I am being discriminated against by being denied the opportunity to work in the Intake screening position. According to my collective bargaining agreement and from my years of service, I have earned my seniority rights to be there.

Please look carefully at my job history at Juvenile Court and my record, both will speak for itself. I do not want to talk negatively about anyone as to what they have and have not done. I want management to look at my work as a probation officer, my qualifications, and my collective bargaining right to assume the intake screening position.

I am requesting the union for which I have been a longstanding and loyal member to protect my contractual union rights, my state and federal rights to not be discriminated against in the workplace and not be treated like my color and my years of service is secondary to another individual because they happen to be white.

Sincerely,

*Buford Arrington*

Buford Arrington

RE: Request for Information - Outlook



Outlook

Type here to search | Entire Mailbox ∨ |

Privacy | | Options | | Sign out

**Mail**

Calendar

Contacts

Deleted Items (111)
Drafts [176]
Inbox (2234)
Junk Email
Sent Items

Click to view all folders

Cabinet
Checklist
Clutter (179)
Local Failures

Manage Folders...

Reply | Reply All | Forward | ✕ | Close

## RE: Request for Information
Rose M Golden (OCJ)

**Sent:** Thursday, March 27, 2014 11:49 AM
**To:** Jason Smith (OCJ)
**Cc:** willissigma1@hotmail.com; Michael Rohan (OCJ); Charles M Young (OCJ); William Patterson (OCJ)

Jason,

In response to your request for information relative to temporary suspensions, I have previously provided information from my database regarding discipline to the union. I do not keep information specific to temporary suspensions in that database (the database is updated to reflect the final outcome). Each time temporary suspension is invoked, that information has been provided to the union, and a union representative has been present.

Regarding your request for relevant information pertaining to the allegations set forth for the temporary suspension, a suspension letter was issued and copies were provided to the union. As is customary, details regarding the allegations will be presented in the pre-disciplinary notice once the investigation is complete.

Rose

Rose Marie Golden
Director of Human Resources
Cook County Juvenile Probation Department
2245 West Ogden Avenue 8th Floor
Chicago, Illinois 60612
rose.golden@cookcountyil.gov

**From:** Jason Smith (OCJ)
**Sent:** Thursday, March 20, 2014 5:19 PM
**To:** Rose M Golden (OCJ)
**Cc:** willissigma1@hotmail.com
**Subject:** Request for Information

Good Evening Rose,

Attached to this email is a request for information. The union is expecting this information by March 28, 2014

Thanks

Jason Smith
Vice President/ AFSCME Local 3477

Re: AFSCME, Council 31 and Chief Judge, Case No. S-CA-14-043 - Outlook

Page 1 of 2



Reply | Reply All | Forward | | X | Close

## Re: AFSCME, Council 31 and Chief Judge, Case No. S-CA-14-043

Michael Willis [willissigma1@hotmail.com]

Sent: Friday, February 14, 2014 9:00 AM
To: Jason Smith (OCJ)
Cc: MLorenc@afscme31.org

What case is this ...?.

Michael Willis

On Feb 14, 2014, at 9:03 AM, "Jason Smith (OCJ)" <jason.smith@cookcountyil.gov> wrote:

---

**From:** Tarver, Elaine L. [Elaine.Tarver@Illinois.gov]
**Sent:** Thursday, February 13, 2014 1:31 PM
**To:** JAMES C PULLOS (States Attorney); Jason Smith (OCJ)
**Cc:** Provines, Michael
**Subject:** AFSCME, Council 31 and Chief Judge, Case No. S-CA-14-043

Dear Parties,
After reviewing the file in this matter, I encourage the parties to pursue mediation
and resolve this dispute without a hearing. Michael Provines is the Board's
mediator and he specializes in these types of cases. Mediation is without cost to the
parties. Mr. Provines has also been copied on this email.
If the parties do not agree to mediate, one day of hearing would be necessary in
resolving this dispute. As of now, this case is set for hearing **April 23, 2014 in the
Chicago office.** If the parties are not available for hearing on this day, the parties
must provide the undersigned with three alternatively agreed upon dates for
hearing.

Thank you,

Elaine L. Tarver
Administrative Law Judge
Illinois Labor Relations Board
160 N. LaSalle Street, Suite S-400
Chicago, IL 60601
(312) 793-6412 (direct line)
(312) 793-6400 (main office)
(312) 793-6989 (fax)
Elaine.Tarver@illinois.gov

this matter is over......FYI - Outlook

 Outlook

 Type here to search | Entire Mailbox ∨

Privacy | 🔲 | 🔲 Options | ❓ | Sign out

 Reply | Reply All | Forward | | X | Close

**Mail**

**Calendar**

**Contacts**
···········

**Deleted Items** (111)
**Drafts** [176]
**Inbox** (2236)
**Junk Email**
**Sent Items**
···········

Click to view all folders

**Cabinet**
**Checklist**
**Clutter** (179)
**Local Failures**
···········

**Manage Folders...**

### this matter is over......FYI
Michael Willis (OCJ)

**Sent:** Thursday, March 21, 2013 9:38 AM

**To:** Aaron Campbell (OCJ); Carol Braz (OCJ); Jason Smith (OCJ); Jordanette Matthews (OCJ); Jose Bravo (OCJ); Kisha Roberts (OCJ); Marisol Vergara (OCJ); Martin Gleason (OCJ); Michael Willis (OCJ); Nelson Rivera (OCJ); Russell Akis (OCJ); Steven Kasperski (OCJ)

---

**From:** Michael Willis (OCJ)
**Sent:** Thursday, March 21, 2013 10:31 AM
**To:** Jason Smith (OCJ)
**Subject:** RE: Level Four Hearing

Jason
ok, I have read your response.....I had a meeting with Francisco. I hope this matter is now over..Also I spoke with Katie she said she was satisfied with your explanation of what happen at the grievance hearing........

**From:** Jason Smith (OCJ)
**Sent:** Thursday, March 21, 2013 9:47 AM
**To:** Francisco Arenas (OCJ); Michael Willis (OCJ)
**Cc:** Katie McGoldrick (OCJ)
**Subject:** RE: Level Four Hearing

Francisco,

I am not sure why Michael Rohan was CC on the previous email. Again, involving management in the business of the union is undermining this union as Michael Rohan said in the meeting he would spread these lies among our members. I am neither afraid or timid to challenge Michael Rohan or anyone from his management team when it comes to protecting our members. Assisting management in any way to divide this union is counterproductive especially being a union member. As I wrote in the previous email, you have no personal knowledge about the facts surrounding the case and your behavior is very disturbing. Seldom do I engage in protecting my character especially to another member of this union. The enemy is not our union members and I do not engage in union politics. Once again until you begin to participate in building our Local, I will no longer response to inquires from you regarding the internal affairs of this Local. If you have any questions please forward them to our Union President.

P.S. You can forward this email to Michael Rohan as well.

Jason Smith
Vice President/ Local 3477

**From:** Francisco Arenas (OCJ)
**Sent:** Thursday, March 21, 2013 9:21 AM
**To:** Jason Smith (OCJ); Michael Willis (OCJ)
**Cc:** Katie McGoldrick (OCJ); Michael Rohan (OCJ)
**Subject:** RE: Level Four Hearing

Jason,

.is matter is over......FYI - Outlook

Thank you for your quick response. I know that navigating the responsibilities of being a field officer and union executive board member are time consuming. So once again I thank you for taking time out of your busy schedule to address this concern.

After reading what appears to be a soliloquy bout your union activities, I want to assure you that your lengthy rhetoric regarding union politics was unnecessary. This issue is not up for debate and we can agree to disagree. After speaking with PO McGoldrick yesterday and listening to her account of your explanation as the facts of the Level Four hearing I have full confidence that you did in fact mention her name to benefit another member as well as the name of another bargaining member. In addition, I want to make it crystal clear that no one in management spoke to me about this issuem, especially Michael J Rohan. The information came from members of this local that brought this issue to my attention. Your actions whether noble or malicious in intent are divisive and disingenuous. I would ask that PO McGoldrick's name or any member's name not be mentioned in any future hearings as a mitigating factor or as part of a strategy. As a strategy it strips away at the core of union solidarity. No response is needed and I wish you a the best of luck in advocating for our members.

Sincerely,

Francisco Arenas

**From:** Jason Smith (OCJ)
**Sent:** Wednesday, March 20, 2013 5:08 PM
**To:** Michael Willis (OCJ); Francisco Arenas (OCJ)
**Cc:** Katie McGoldrick (OCJ)
**Subject:** RE: Level Four Hearing

Francisco,

Since the beginning of taking this office I took an oath to represent each and every member with respect and with integrity regardless of race. These two things are something management tends to forget and violate many of our members' rights. Over the course of being involved in this Local I have always echoed One Union Same Issues One Mission. For you to question the integrity of this union especially being the former Vice President of this Local shows that you are noncommittal to this union by continued to assist management to spread this propaganda amongst our members in order to divide us and to promote anxiety. If you have continued your participation in this Union as a steward this would have never been an issued or question you would have raised. Rather than trying to tear this union apart I would expect that you would assist with building this Local and assist with securing a fair contract and advocating for all our members regardless of management's issues with our members. It is my hope you will cease with this propaganda as you were not privy to the meeting that took place at the Chief Judge's Level, therefore you would not have personal knowledge of what happened at this meeting. The only people who would have supplied you with this false information is management as I spoke to Michael Willis and he said he never shared the facts of this case at this level with you. Let me make this clear I would never advocate for any of our members to be discipline as I know the value and dedication of our members to this profession. I know personally the dangers of being a Probation Officer and to how much work it takes to protect our communities, discharge our responsibilities and to make sure every member is treated with respect. I have spoken to this member and reassured her the way it was explained it is false. I implore you to recommitment yourself to this union and become active in this Local. If you have any questions feel free to contact me you have my phone number.

Sincerely,

Jason Smith
Vice President Local 3477
One Union. Same Issues. One Mission.

**From:** William Patterson (Juvenile Probation)
**Sent:** Tuesday, October 27, 2015 11:28 AM
**To:** Avik Das (Juvenile Probation)
**Cc:** Patrick Nelson (Juvenile Probation); Theodis Chapman (Juvenile Probation); Jason Smith (Juvenile Probation); Lloyd Marshall Jr. (Juvenile Probation)
**Subject:** Reassignment of JUMPSTART Classroom Instructors

Good morning,

Please be advised that we have completed the process of determining the assignments of the two JUMPSTART classroom instructors. We put P.O. Nelson and P.O. Chapman names in a box and DCPO Neal picked the first name for assignment to SPO Garcia's unit. She picked the name P.O. Nelson. Therefore, P.O. Nelson will be assigned to DCPO Griffin/SPO Garcia and P.O. Chapman will be assigned to DCPO Kelly/SPO Dussman. I will send out official notices and the effective date is November 2, 2015.

The drawing was witnessed by the support staff in the Administrative Services Division, Eboni McLemore, Nancy Calderon, and Eileen Winston-Smith.

Thank you.

William Patterson
Director of Human Resources
Cook County Juvenile Court
(312) 433-6527

M E M O R A N D U M

April 18, 2000

TO:        Michael J. Rohan, Director
           Probation and Court Services

FROM:      Gregg Stanger, Deputy Chief
           Home Confinement Division

RE:        Restructuring of the Electronic Monitoring Unit

---

On March 7, 2000, I received a phone call from the older sister of a minor on EM. She stated that on the preceding Friday night (March 3), her sixteen year old brother cut off the EM transmitter from his ankle and, with the twenty-six year old woman that he had impregnated, stole a family car with the intention of driving to Minnesota. The sister stated that she had phoned the EM Unit over the entire weekend without success and was going to inform the television stations and newspapers of our ineptitude.

Fortunately, the car and the minor were located shortly after the call (the woman had taken a bus to Minnesota) and all was resolved satisfactorily for the sister. This incident points out, however, an existing problem with the current coverage procedure of the EM Unit.

Also, the Unit is currently monitoring a large number of minors who are charged with violent offenses that include Attempted Murder, Aggravated Criminal Sexual Assault, Aggravated Battery, and Aggravated Discharge of a Firearm. I am concerned that our response time to violations by minors charged with such offenses compromises public safety and reflects negatively upon the Department.

Subsequently, I am offering the following proposals for your consideration so that we might improve the service of the EM Unit to the Court and fulfill our mission of public safety.

\* TARGET POPULATION

Because our response time to violations is, by necessity, at least one day after the fact, we cannot guarantee that a minor will not be able to resume his delinquent behavior and put the public at risk. It is my suggestion that the judiciary be encouraged to detain violent offenders in the Juvenile Temporary Detention Center and only place those who are charged with property offenses (Possession of a Stolen Motor Vehicle, Burglary, Theft) on EM.

\* WEEKEND COVERAGE

As I mentioned earlier in the "Minnesota" incident, we can go two or three days (over a weekend) before we are informed of a breach or tamper because the officers only work Monday through Friday. I would propose that we begin coverage on Saturdays and Sundays as soon as possible. My suggestion is that one team of officers would work Saturday from 9AM to 5PM and another team the same hours on Sundays. Excepting for holidays, we would then have personnel available every working day to address whatever problems might arise.

\* PLACING VIOLATORS IN CUSTODY

You mentioned at the Division meeting in December that you would not be adverse to equipping EM officers with handcuffs to preserve the integrity of the program. I submit that, considering the crimes our present population is charged with, placing a minor in custody and returning him to the JTDC better protects the public than the current procedure of retrieving the equipment and instructing the minor to appear in Court the next day. In conjunction with weekend coverage especially, this proposed new procedure would reduce the issuance of arrest warrants and better address the concern for public safety.

\* EVENING ACTIVATIONS

It has long been a problem to coordinate with working parents a convenient time to bring minors home for activation. I propose to assign officers on a rotating basis to begin their work day at noon to address this situation. Tuesday and Thursday evenings would be designated for all activations excepting for any last minute rush cases. Such an arrangement would require the scheduled use of the Department van as a large number of minors would be activated on those days.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2018-06893 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Jason Smith | (773) 242-4658 | |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| 3515 W. Cermak, CHICAGO, IL 60623 | | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| CITY OF CHICAGO (CIVILIAN OFFICE OF POLICE ACCOUNTABILITY) | 501+ | (312) 744-5000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 121 N LaSalle, CHICAGO, IL 60602 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 06-22-2018 | 06-22-2018 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by Respondent on around February 16, 2018. My most recent position was Investigator. On or around June 22, 2018, I was discharged.

I believe I have been retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Digitally signed by Jason Smith on 07-30-2018 12:26 PM EDT | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Jason Smith**
**3515 W. Cermak**
**Chicago, IL 60623**

From: **Chicago District Office**
**500 W. Madison St.**
**Suite 2000**
**Chicago, IL 60661**

☐  On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No.: |
|---|---|---|
| **440-2018-06893** | **Janel Smith, Investigator** | **(312) 869-8136** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☒  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit **may not be collectible.**

On behalf of the Commission

**Julianne Bowman, District Director**

11/9/18
(Date Mailed)

Enclosure(s)

cc: **CITY OF CHICAGO CIVILIAN OFFICE OF POLICE ACCOUNTABILITY**

C/O  **Nicole Dax, Assistant Corporation Counsel**
**City of Chicago Department of Law**
**30 N. LaSalle Street, Suite 1040**
**Chicago, IL 60602**

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

## PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf; your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

## ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

## DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 869-8220** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests). ***Be sure to include your name, address, phone number and EEOC charge number with your request.***

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

\*      **Before filing a lawsuit, but within 90 days of your receipt of the Right to Sue, or**

\*      **After your lawsuit has been filed. If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.**

If you are the ***Respondent*** you may be granted access to the file ***only after*** a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by **Aloha Print Group, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300.** You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, it is recommended that you first review your file to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent **in its entirety** to the copy service, **and you will be responsible for the cost.** Payment must be made directly to **Aloha Print Group,** which charges 15 cents per page.

(Revised 04/20/2016, previous copies obsolete)

# STATE OF ILLINOIS .
## CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION
## MEMORANDUM

TIMOTHY C. EVANS
CHIEF JUDGE

AVIK DAS
ACTING DIRECTOR
PROBATION AND COURT SERVICES



2245 W. Ogden Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6575
(312) 433-7388 Fax

July 20, 2016

To:  Christina Grunauer

CC:  Eugene Boatwright, AFSCME Council 31 Staff Representative
     Lloyd Marshall, AFSCME Local 3477 President
     Russell Akis, AFSCME Local 3477 Union Steward
     Jeff Haynes, AFSMCE Local 3477 Union Steward
     William Patterson, Director of Human Resources
     Personnel File

From: Avik Das

RE:  Settlement Agreement

The undersigned agree to the following terms and conditions effective immediately upon execution by all
parties hereto:

1) Christina Grunauer hereby tenders notice of her voluntary resignation as a Cook County Juvenile
   Probation Officer, effective immediately.

2) In consideration for Ms. Grunauer's voluntary resignation the Employer hereby accepts Ms.
   Grunauer's resignation and recognizes it as the sole basis for the end of her employment.

3) In further consideration for Ms. Grunauer's voluntary resignation, the Employer restores all paid
   and unpaid time taken by Ms. Grunauer as a result of the temporary suspension imposed by the
   Employer that started on 5/12/16.

4) In further consideration for Ms. Grunauer's voluntary resignation, the Employer removes the
   record of the temporary suspension.

5) In further consideration for Ms. Grunauer's voluntary resignation, the Employer hereby documents
   that it shall pursue no further disciplinary action towards Ms. Grunauer.

6) In further consideration for Ms. Grunauer's voluntary resignation, the Employer will not contest any claim for unemployment benefits made by Ms. Grunauer.

7) In further consideration for Ms. Grunauer's voluntary resignation, the Employer, if asked to do so, shall be limited, unless otherwise required by law, to only make neutral reference to Ms. Grunauer's employment; such reference shall only include confirmation of her time of employment and general description of her assignments.

8) The terms of this Agreement shall remain strictly confidential. The Agreement shall have no precedential value and is nondiscoverable and inadmissible in any future proceeding in any forum, except as necessary to enforce the Agreement terms.

9) The Exclusive Bargaining Unit Representative (AFSCME) through its duly authorized agent(s) hereby withdraws and waives any current or future claims, grievances, or other recourse available to it under the law, including but not limited to the applicable collective bargaining agreement with regards to any matter that involves Ms. Grunauer.

10) This settlement agreement constitutes the entirety of the agreement entered into by the parties hereto as duly represented by the undersigned.

_____ Christina Grunauer        Date: 20 - Jul - 2016
Employee/AFSCME Local 3477 Member

_____ Jeff Haynes        Date: 7/20/16
AFSCME Local 3477, Union Steward

_____ Russell Akis        Date: 7/20/16
AFSCME Local 3477, Union Steward

_____ Avik Das        Date: 7/20/16
Acting Director, Cook County Juvenile Probation and Court Services

_____ William Patterson        Date: 7/20/16
Director of Human Resources, Cook County Juvenile Probation and Court Services

# STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

TIMOTHY C. EVANS
CHIEF JUDGE

AVIK DAS
ACTING DIRECTOR
PROBATION AND COURT SERVICES



2245 W. Ogden Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6575
(312) 433-7388 Fax

May 11, 2016

Christina Grunauer
10545 S. Avers
Chgo. 60655

Probation Officer Grunauer:

I am presently in receipt of allegations against you suggesting your continued dereliction of duty including unexcused absences, and falsification of both time worked and documentation of work performed. The allegations are of a nature that suggests your continued presence may be dangerous, disruptive of operations, or result in a violation of the Professional Code of Conduct applicable to all department employees, and which are established to promote the integrity of the department and the judiciary. Indeed, the pattern of behavior alleged jeopardizes the integrity of the operation to which you are assigned and may also undermine public safety.

Pursuant to Article XIX, Section 8, of the applicable Collective Bargaining Agreement, you are hereby placed on temporary suspension, effective immediately and pending the outcome of our further investigation into this matter. As a condition of this suspension, the first fourteen (14) calendar days shall be without pay. After that time period, you may use accrued benefit time. Also as a condition of this suspension, you are required to submit your county identification to me. You are not allowed to return to the workplace unless otherwise directed and until further notice, including participation in further deliberations concerning this matter.

You are entitled to union representation. I have currently directed that further investigation into the allegations at issue commence immediately, and you and your union representatives will be notified of any subsequent meetings management will schedule that may require your participation.

Sincerely,

Avik Das
Acting Director, Probation and Court Services

CC: W. Patterson
D. Neal
A. Salazar
J. Smith
Lloyd Marshall
Personnel File



STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

AVIK DAS
ACTING DIRECTOR
PROBATION AND COURT SERVICES

1100 S. HAMILTON AVENUE
2ND Floor
CHICAGO, ILLINOIS 60612

312-433-6569
312-433-7388 FAX

TO:        Probation Officer Christina Grunauer,
           Detention Alternatives Division

FROM:      DCPO Arnulfo V. Salazar
           Detention Alternatives Division

SUBJECT:   Pre-Disciplinary Notice

DATE:      June 9, 2016

This memorandum is to inform you that a Pre-Disciplinary Meeting has been scheduled for June 13, 2016 at 11:30 am in the Administrative Services Conference Room located on the 8th floor. Disciplinary action is being contemplated at this time due to the following allegations:

You violated policy 1.1 (Professional Code of Conduct) and policy 1.26 (Accountability Policy) based on the following allegations:

On 3/28/16 you were scheduled to work and did not come in for your shift. You failed to notify your immediate supervisor of your inability to work this scheduled shift. During a meeting with SPO Lena Bailey-Holland, you stated that you did not have access to your cell phone.

On 4/7/16 you were scheduled to work and did not come in for your shift. You failed to notify your immediate supervisor of your inability to work a scheduled shift. During a meeting with SPO Lena Bailey-Holland, you stated that you did not realize that you were scheduled to work.

On 5/03/16 you were scheduled to work 6:00 am – 2:00 pm and 2:00 pm – 10:00 pm. You left work at 9:30 am without notifying your immediate supervisor thus abandoning part of your shift and failing to work your 2:00 pm 10:00 pm shift. SPO Lena Bailey-Holland sent you a text message asking you to explain your early departure. You failed to respond to the text message

On 03/08/16 you deleted 5 alert emails from Sentinel without responding to the alert.

You violated policy 1.1 (Professional Code of Conduct) by falsifying official records based on the following allegations:

On 05/02/16 you entered notes into Focal Point stating that you made 23 attempts to contact minors. However, phone records show that only 2 phone calls were made from your office telephone.

On 05/03/16 you entered notes into Focal Point stating that you made 21 attempts to contact minors. However, phone records show that no phone calls were made from your office telephone.

On 05/08/16 you entered notes into Focal Point stating that you made 16 attempts to contact minors. However, phone records show that only 1 phone call was made from your office telephone.

On 05/08/16 you entered notes into Focal Point indicating that minor CS was in his home zone. However, a review of the minor's location showed that the minor was clearly outside of his home zone.

On 05/09/16 you entered notes into Focal Point stating that you made 47 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 04/27/16 you entered notes into Focal Point stating that you made 39 attempts to contact minors. Phone records show that 5 phone calls were made from your office telephone.

On 04/25/16 you entered notes into Focal Point stating that you made 56 attempts to contact minors. Phone records show that 1 phone call was made from your office telephone.

On 04/24/16 you entered notes into Focal Point stating that you made 26 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 04/26/16 you entered notes into Focal Point stating that you made 28 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 04/22/16 you entered notes into Focal Point stating that you made 38 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 04/20/16 you entered notes into Focal Point stating that you made 17 attempts to contact minors. Phone records show that 3 phone calls were made from your office telephone.

On 04/19/16 you entered notes into Focal Point stating that you made 47 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 04/18/16 you entered notes into Focal Point stating that you made 30 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 04/17/16 you entered notes into Focal Point stating that you made 22 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 04/15/16 you entered notes into Focal Point stating that you made 23 attempts to contact minors. Phone records show that 1 phone call was made from your office telephone.

On 04/14/16 you entered notes into Focal Point stating that you made 13 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 04/13/16 you entered notes into Focal Point stating that you made 19 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 04/12/16 you entered notes into Focal Point stating that you made 13 attempts to contact minors. Phone records show that 2 phone calls were made from your office telephone.

On 04/11/16 you entered notes into Focal Point stating that you made 5 attempts to contact minors. Phone records show that 1 phone call was made from your office telephone.

On 04/06/16 you entered notes into Focal Point stating that you made 35 attempts to contact minors. Phone records show that 5 phone calls were made from your office telephone.

On 04/05/16 you entered notes into Focal Point stating that you made 39 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 04/04/16 you entered notes into Focal Point stating that you made 14 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 04/03/16 you entered notes into Focal Point stating that you made 21 attempts to contact minors. Phone records show that 1 phone call was made from your office telephone.

On 03/31/16 you entered notes into Focal Point stating that you made 28 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 03/30/16 you entered notes into Focal Point stating that you made 29 attempts to contact minors. Phone records show that 6 phone call was made from your office telephone.

On 03/25/16 you entered notes into Focal Point stating that you made 49 attempts to contact minors. Phone records show that 0 phone call was made from your office telephone.

On 03/24/16 you entered notes into Focal Point stating that you made 15 attempts to contact minors. Phone records show that 1 phone call was made from your office telephone.

On 03/23/16 you entered notes into Focal Point stating that you made 22 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 03/21/16 you entered notes into Focal Point stating that you made 16 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 03/20/16 you entered notes into Focal Point stating that you made 16 attempts to contact minors. Phone records show that 2 phone calls were made from your office telephone.

On 03/19/16 you entered notes into Focal Point stating that you made 72 attempts to contact minors. Phone records show that 6 phone calls were made from your office telephone.

On 03/15/16 you entered notes into Focal Point stating that you made 31 attempts to contact minors. Phone records show that 4 phone calls were made from your office telephone.

On 03/14/16 you entered notes into Focal Point stating that you made 57 attempts to contact minors. Phone records show that 3 phone calls were made from your office telephone.

On 03/13/16 you entered notes into Focal Point stating that you made 34 attempts to contact minors. Phone records show that 5 phone calls were made from your office telephone.

On 03/11/16 you entered notes into Focal Point stating that you made 43 attempts to contact minors. Phone records show that 1 phone call was made from your office telephone.

On 03/10/16 you entered notes into Focal Point stating that you made 23 attempts to contact minors. Phone records show that 1 phone call was made from your office telephone.

On 03/09/16 you entered notes into Focal Point stating that you made 24 attempts to contact minors. Phone records show that 2 phone calls were made from your office telephone.

On 03/07/16 you entered notes into Focal Point stating that you made 12 attempts to contact minors. Phone records show that 4 phone calls were made from your office telephone.

On 02/25/16 you entered notes into Focal Point stating that you made 2 attempts to contact minors. Phone records show that 5 phone calls were made from your office telephone to one telephone number.

On 02/23/16 you entered notes into Focal Point stating that you made 17 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 02/22/16 you entered notes into Focal Point stating that you made 16 attempts to contact minors. Phone records show that 7 phone calls were made from your office telephone.

On 02/21/16 you entered notes into Focal Point stating that you made 4 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 02/17/16 you entered notes into Focal Point stating that you made 11 attempts to contact minors. Phone records show that 3 phone calls were made from your office telephone.

On 02/16/16 you entered notes into Focal Point stating that you made 11 attempts to contact minors. Phone records show that 2 phone calls were made from your office telephone.

On 02/15/16 you entered notes into Focal Point stating that you made 6 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 02/13/16 you entered notes into Focal Point stating that you made 9 attempts to contact minors. Phone records show that 2 phone calls were made from your office telephone.

On 02/12/16 you entered notes into Focal Point stating that you made 10 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

4

On 02/09/16 you entered notes into Focal Point stating that you made 13 attempts to contact minors. Phone records show that 1 phone call was made from your office telephone.

On 02/08/16 you entered notes into Focal Point stating that you made 9 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 02/06/16 you entered notes into Focal Point stating that you made 5 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 02/04/16 you entered notes into Focal Point stating that you made 17 attempts to contact minors. Phone records show that 1 phone call was made from your office telephone.

On 02/02/16 you entered notes into Focal Point stating that you made 4 attempts to contact minors. Phone records show that 6 phone call was made from your office telephone.

On 01/24/16 you entered notes into Focal Point stating that you made 17 attempts to contact minors. Phone records show that 3 phone calls were made from your office telephone.

On 01/22/16 you entered notes into Focal Point stating that you made 11 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 01/21/16 you entered notes into Focal Point stating that you made 4 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 01/21/16 you entered notes into Focal Point stating that you made 9 attempts to contact minors. Phone records show that 0 phone call was made from your office telephone.

On 01/19/16 you entered notes into Focal Point stating that you made 1 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 01/17/16 you entered notes into Focal Point stating that you made 14 attempts to contact minors. Phone records show that 2 phone calls were made from your office telephone.

On 01/13/16 you entered notes into Focal Point stating that you made 16 attempts to contact minors. Phone records show that 9 phone calls were made from your office telephone.

On 01/11/16 you entered notes into Focal Point stating that you made 23 attempts to contact minors. Phone records show that 2 phone calls were made from your office telephone.

On 01/10/16 you entered notes into Focal Point stating that you made 2 attempts to contact minors. Phone records show that 2 phone calls were made from your office telephone.

On 01/08/16 you entered notes into Focal Point stating that you made 17 attempts to contact minors. Phone records show that 1 phone call was made from your office telephone.

On 01/03/16 you entered notes into Focal Point stating that you made 18 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

On 01/02/16 you entered notes into Focal Point stating that you made 22 attempts to contact minors. Phone records show that 0 phone calls were made from your office telephone.

You failed to perform your duties:

The following is a listing of the dates and times that you worked, the numbers of alerts that were sent to you from Sentinel and the number of alerts that you responded to. On the following dates and times you failed to respond to all alerts which are essential duties of an EM 24/7:

| 05-09-16 | 6:00am – 2:00pm | 238 alerts | 158 responses |
|---|---|---|---|
| 04-25-16 | 6:00am – 2:00pm | 228 alerts | 123 responses |
| 04-23-16 | 2:00pm - 10:00pm | 201 alerts | 0 responses |
| | 10:00pm – 6:00am | 226 alerts | 106 total responses |
| 04-18-16 | 6:00am – 2:00pm | 235 alerts | 100 total responses |
| | 10:00pm – 6:00am | 264 alerts | 0 responses |
| 04-15-16 | 6:00am – 2:00pm | 218 alerts | 73 responses |
| 03-31-16 | 10:00pm – 6:00 am | 286 alerts | 57 responses |
| 03-30-16 | 2:00pm 10:00pm | 369 alerts | 80 responses |
| 03-24-16 | 10:00pm – 6:00am | 198 alerts | 40 responses |
| 03-20-16 | 10:00pm – 6:00 am | 136 alerts | 44 responses |
| 03-18-16 | 10:00pm – 6:00 am | 108 alerts | 0 responses |
| 03-15-16 | 6:00am – 2:00pm | 53 alerts | 60 responses |
| 02-23-16 | 6:00am – 2:00 pm | 135 alerts | 17 responses |
| 02-22-16 | 6:00am – 2:00pm | 192 alerts | 16 responses |
| 02-20-16 | 10:00pm – 6:00am | 86 alerts | 0 responses |
| 02-17-16 | 2:00pm – 10:00pm | 482 alerts | 11 responses |
| 02-16-16 | 6:00am – 9:30am | 51 alerts | 11 responses |
| 02-13-16 | 6:00am – 2:00pm | 135 alerts | 10 responses |
| 02-11-16 | 6:00am - 2:00pm | 155 alerts | 0 responses |
| 02-10-16 | 6:00am – 2:00pm | 135 alerts | 13 responses |
| 02-06-16 | 2:00pm – 10:00pm | 150 alerts | 5 responses |
| 02-02-16 | 6:20am – 2:00pm | 145 alerts | 6 responses |
| 01-24-16 | 6:00am – 2:00pm | 85 alerts | 0 responses |
| | 2:00pm – 10:00 pm | 245 alerts | 17 responses |
| 01-22-16 | 6:00am – 9:00am | 29 alerts | 11 responses |
| 01-21-16 | 6:00am – 9:30 am | 42 alerts | 4 responses |
| 01-20-16 | 6:00am – 9:30am | 39 alerts | 6 responses |
| 01-17-16 | 6:00am – 2:00pm | 94 alerts | 0 responses |
| | 2:00pm – 10:00pm | 133 alerts | 14 responses |
| 01-13-16 | 6:00am – 2:00pm | 129 alerts | 16 responses |
| 01-11-16 | 6:00am – 2:00pm | 100 alerts | 23 responses |
| 01-10-16 | 2:00pm – 10:00pm | 192 alerts | 4 responses |
| 01-03-16 | 6:00am – 2:00pm | 147 alerts | 18 responses |
| 01-02-16 | 6:00am – 2:00pm | 204 alerts | 22 responses |

Based on the above information the Department has serious concerns that you failed to complete your assigned duties and responsibilities as well as falsified official documents. In accordance with the CBA you are entitled to union representation available at the hearing. The following documents are offered in support of the disciplinary action being contemplated:

> Copy of time sheet for 05/03/16
> Copy of memorandum dated 03/09/16
> Copy of the time sheet for 03/28/16
> Copy of memorandum dated 04/04/16
> Copy of screen shots from Omni Link for 05/08/16
> Copy of memorandum dated 05/03/16
> Listing of the Sentinel alerts that were sent to you and the number of alerts to which you
> responded
> Copy of the Quality Assurance Report completed by SPO Lena Bailey Holland
> Copy of your notes as entered in to Focal Point by date and shift that you worked for the months of January 2016 to May 2016.
> Copy of the telephone records for the telephone at your workstation from 01/01/16 to 06/03/16
> Copy of policy 1.1 (Professional Code of Conduct) and policy 1.26 (Accountability Policy)
> Copy of Home Confinement with Electronic Monitoring Alert Monitoring and Response Officer

C.  Avik Das
    William Patterson
    Donna Neal
    Lloyd Marshall
    Steve Kasperski
    Jeff Haynes
    Personnel File

# COOK COUNTY - DAILY TIME RECORD

Date: Tuesday, May 03, 2016

Juvenile Probation Department – EM          Detention Alternatives Division

(Department, Board, Institution or Commission)          (Division or Activity)

### INSTRUCTIONS FOR PREPARING DAILY TIME RECORD

This record will be signed by office employees and examined, approved and certified to by the immediate Superior at the close of each day's work.

When employees are authorized to do overtime work, entry of the overtime should be made in the separate columns provided thereof.

The record of the time of employees working in the field will be recorded on the summary time record from the daily field work reports.

This form will not be used where time clocks are provided for employees.

The following is a correct record of the time worked by me today for this department:

| NAME OF EMPLOYEE (Signature at Beginning of day) | 1st Half of day Started | 1st Half of day Stopped | 2nd Half of day Started | 2nd Half of day Stopped | Total Hours Worked | Authorized Overtime Started | Authorized Overtime Stopped | Total Hours Overtime | NAME OF EMPLOYEE (Signature at the close of day) | |
|---|---|---|---|---|---|---|---|---|---|---|
| ACEVEDO, Carmen | 10:30 | 2:30 | 2:00 | 10:00 | | | | | ACEVEDO, Carmen | |
| GRUNAUER, Tina | 6:00 | 9:30 | | | | | | | GRUNAUER, Tina | |
| JONES, Vanessa | 10:00 | | | 6:00 | | | | | JONES, Vanessa | |
| MARRERO, Elizabeth | RDD | | | | | | | | MARRERO, Elizabeth | |
| MUHAMMAD, Agin | QP | | | 5:30 | | | | | MUHAMMAD, Agin | Sick ½ |
| RIVAS, Orlando | RDD | | | | | | | | RIVAS, Orlando | |
| WARDLAW, Karen | RDD. | | | | | | | | WARDLAW, Karen | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

The immediate Superior will enter below, at the close of each day, any information on employees absent, reasons for absence, changes in employees, salaries, etc., which took place on this day, in this division or department:

| Name Of Employee | Position | Salary | Action Taken |
|---|---|---|---|
| Agin Muhammad | P.O. II | | SA |
| Tina Grunauer | P.O. II | | SA ½ |
| Tina Grunauer | P.O. # | | SA |

"A" CODE: NEW CODE
1 - Worked
0 - Absent Without Pay    Shift 6Am to 2pm
E - Excused, Absent Without Pay
V - Vacation With Pay    Shift 10pm to 6 AM.
A - Sickness Allowance
H - Holiday
S - Saturday or Sunday
F - In Time Column Indicates Full-Time for Period

(Use other side for additional entries)

I have examined and approved this record and certify that the service was rendered by each individual above named under my supervision.

Approved by:

Entered on Summary Time Record by:          Chief Clerk



## COOK COUNTY - DAILY TIME RECORD

Date: Monday, March 28, 2016

Detention Alternatives Division

Juvenile Probation Department - EM

(Department, Board, Institution or Commission)                    (Division or Activity)

### INSTRUCTIONS FOR PREPARING DAILY TIME RECORD

This record will be signed by office employees and examined, approved and certified to by the Immediate Superior at the close of each day's work.

When employees are authorized to do overtime work, entry of the overtime should be made in the separate columns provided thereof.

The record of the time of employees working in the field will be recorded on the summary time record from the daily field work reports.

This form will not be used where time clocks are provided for employees.

The following is a correct record of the time worked by me today for this department:

| NAME OF EMPLOYEE (Signature at beginning of day) | 1st Half of day | | 2nd Half of day | | Total Hours Worked | Authorized Overtime | | Total Hours Overtime | NAME OF EMPLOYEE (Signature at the close of day) |
|---|---|---|---|---|---|---|---|---|---|
| | Started | Stopped | Started | Stopped | | Started | Stopped | | |
| ACEVEDO, Carmen | | | | | | | | | ACEVEDO, Carmen |
| GRUNAUER, Tina | | | | | | | | | GRUNAUER, Tina |
| JONES, Vanessa | | | | | | | | | JONES, Vanessa |
| MARRERO, Elizabeth | RDO | | | | | | | | MARRERO, Elizabeth |
| MUHAMMAD, Agin | RDO | | | | | | | | MUHAMMAD, Agin |
| RIVAS, Orlando | RDO | | | | | | | | RIVAS, Orlando |
| WARDLAW, Karen | 10 pm | | | | | | | | WARDLAW, Karen |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

The immediate Superior will enter below, at the close of each day, any information on employees absent, reasons

or absence, changes in employees, salaries, etc., which took place on this day, in this division or department:

| Name Of Employee | Position | Salary | Action Taken |
|---|---|---|---|
| Tina Grunauer | POI | | VAC |
| | | | |
| | | | |
| | | | |

(Use other side for additional entries)

"A" CODE:  NEW CODE
1 - Worked
0 - Absent Without Pay
E- Excused, Absent Without Pay
V - Vacation With Pay
A - Sickness Allowance With Pay
H - Holiday
S - Saturday or Sunday
F - In Time Column indicates Full-Time for Period

APR 0 2016

have examined and approved this record and certify

that the service was rendered by each individual above named

under my supervision.

Approved by:

SPO Buddy Hoveland

Entered on Summary Time Record by:                    Chief Clerk

MEMORANDUM

April 14, 2016

To:        Arnie Salazar
           Deputy Chief
           Detention Alternatives Division

From       Lena Bailey-Holland
           Supervising Probation Officer
           Detention Alternatives Division

Re:        24/7 Officer Christina Grunauer


On April 12, I met with Officer Grunauer in regards to a no call no
show regarding Officer's shift on April 7th from 10pm to 6am.
Probation Officer Grunauer stated that she did not realize that she was
scheduled for that day. This supervisor's sent updated schedules to the
unit on 4/11, 4/8 and 4/6 which I showed Probation Officer Grunauer at
the time of our meeting.  It should be noted that Probation Officer
Grunauer made a change to her schedule on April 6th which did not
incorporate any change to April 7th. It was explained to Officer
Grunauer that Officers are responsible to maintain and cohere to their
schedule. In addition, on April 11th Probation Officer Grunauer left her
shift of 6am to 2pm at 9:30am without notification.  Probation Officer
did not have any comments to this matter. I reiterated to Probation
Officer Grunauer the protocols for calling off on a shift and the policy
for requesting benefit time.

It should be noted that Probation Officer Grunauer was given a memorandum summarizing a conference held with Officer on March 30th as it related to protocols and expectations of the unit.

On April 13, 2016 Probation Officer Grunauer did not sign out when she departed from her shift (10pm to 6am). I placed a phone call to Probation Officer Grunauer on April 14th at 9:43am to verify her departure time. At 11:25am Probation Officer responded that she left at 5:35am and took lunch from 1:30am to 2:30am. The last email regarding an alert sent by Probation Grunauer to this Supervisor was at 11:56am. I have requested a report from Beth Whiting, sentinel representative to verify Probation Officer's Grunauer Omni link activity from April 13th thru April 14th.





MEMORANDUM

March 9, 2016

To:       Arnie Salazar
          Deputy Chief
          Detention Alternatives Division

From      Lena Bailey-Holland
          Supervising Probation Officer
          Detention Alternatives Division

Re:       24/7 Officer Christina Grunauer


On March 9, 2016 I met with Officer Grunauer in regards to deleting
alert responses without entering notes in the Omni link system and not
tagging these alerts as well.

Documentation presented to Officer Grunauer from her shift of 3/7
from 12:30pm to 1:30pm and todays shift from 10:00am to 10:30 am.

Officer Grunauer's response for today's non-compliance was that she
must have forgotten to enter her entries. There was no explanation for
the shift she worked on March 8th.

PO Grunauer was informed not to delete alert responses if she has not
addressed them and reminded that all alerts must be tagged and that an
entry must be placed in the Omni link system as well.

## MEMORANDUM

May 3, 2016

To:      Arnie Salazar
             Deputy Chief
             Detention Alternatives Division

From    Lena Bailey-Holland
             Supervising Probation Officer
             Detention Alternatives Division

Re:      24/7 Officer Christina Grunauer

On May 3, 2016 I arrived at my work station at approx. 9:40am to find that Officer Grunauer had signed out for 9:30am.

Please be advised that I received no email, text or phone notification from Officer Grunauer requesting to leave early. At approx. 9:53am I sent Probation Officer Grunauer a text informing her that an Officer can't leave a shift uncovered without prior notification. Probation Officer Grunauer never responded.

It should be noted that a half of a sick day was allocated for today.

## TINA GRUNAUER ALERT/RESPONSE REPORT

| Date | Time | Alerts | Responses |
|---|---|---|---|
| 05-09-16 | 6:00am – 2:00pm | 238 alerts | 158 responses |
| 04-25-16 | 6:00am – 2:00pm | 228 alerts | 123 responses |
| 04-23-16 | 2:00pm - 10:00pm<br>10:00pm – 6:00am | 201 alerts<br>226 alerts | 106 total responses |
| 04-18-16 | 6:00am – 2:00pm<br>10:00pm – 6:00am | 235 alerts<br>264 alerts | 100 total responses |
| 04-15-16 | 6:00am – 2:00pm | 218 alerts | 73 responses |
| 03-31-16 | 10:00pm – 6:00 am | 286 alerts | 57 responses |
| 03-30-16 | 2:00pm 10:00pm | 369 alerts | 80 responses |
| 03-24-16 | 10:00pm – 6:00am | 198 alerts | 40 responses |
| 03-20-16 | 10:00pm – 6:00 am | 136 alerts | 44 responses |
| 03-18-16 | 10:00pm – 6:00 am | 108 alerts | 0 responses |
| 03-15-16 | 6:00am – 2:00pm | 53 alerts | 60 responses |
| 02-23-16 | 6:00am – 2:00 pm | 135 alerts | 17 responses |
| 02-22-16 | 6:00am – 2:00pm | 192 alerts | 16 responses |
| 02-20-16 | 10:00pm – 6:00am | 86 alerts | 0 responses |
| 02-17-16 | 2:00pm – 10:00pm | 482 alerts | 11 responses |
| 02-16-16 | 6:00am – 9:30am | 51 alerts | 11 responses |
| 02-13-16 | 6:00am – 2:00pm | 135 alerts | 10 responses |
| 02-11-16 | 6:00am - 2:00pm | 155 alerts | 0 responses |
| 02-10-16 | 6:00am – 2:00pm | 135 alerts | 13 responses |
| 02-06-16 | 2:00pm – 10:00pm. | 150 alerts | 5 responses |
| 02-02-16 | 6:20am – 2:00pm | 145 alerts | 6 responses |
| 01-24-16 | 6:00am – 2:00pm<br>2:00pm – 10:00 pm | 85 alerts<br>245 alerts | 17 responses |

| | | | |
|---|---|---|---|
| 01-22-16 | 6:00am – 9:00am | 29 alerts | 11 responses |
| 01-21-16 | 6:00am – 9:30 am | 42 alerts | 4 responses |
| 01-20-16 | 6:00am – 9:30am | 39 alerts | 6 responses |
| 01-17-16 | 6:00am – 2:00pm<br>2:00pm – 10:00pm | 94 alerts<br>133 alerts | 14 responses |
| 01-13-16 | 6:00am – 2:00pm | 129 alerts | 16 responses |
| 01-11-16 | 6:00am – 2:00pm | 100 alerts | 23 responses |
| 01-10-16 | 2:00pm – 10:00pm | 192 alerts | 4 responses |
| 01-03-16 | 6:00am – 2:00pm | 147 alerts | 18 responses |
| 01-02-16 | 6:00am – 2:00pm | 204 alerts | 22 responses |

## 24/7 QUALITY ASSURANCE FOR PO Christina Grunauer
### DETENTION ALTERNATIVES DIVISION
Prepared by SPO Lena Bailey-Holland

| Date | Name | Time | Time | Type | | | | | Comments |
|---|---|---|---|---|---|---|---|---|---|
| 2/22/2016 | TERRICK SMITH | 10:55AM | 10:51AM | NO COMM | YES | YES | YES | NO | PO DOES NOT STATE IF LAST KNOWN LOCATION WAS TOWARD AN APPROPRIATE ZONE |
| 2/29/2016 | | | | NO LOC | | | | | |
| 2/23/2016 | ALEXIS WASHINGTON | 11:53PM | 12:35PM | SIA | YES | YES | YES | NO | PO STATES PT LEFT SCHOOL ZONE EARLY HOWEVER DOES NOT INDICATE IF PT WAS HEADED TOWARD THE DIRECTION OF THE HOME ZONE / USE OF ACRONYOMS / USE OF ACRONYOMS / 2/1 CALLED OFF ON A SINGLE SHIFT |
| 2/29/2016 | | | | | | | | | |
| 3/7/2016 | GABRIEL RUIZ | 12:43PM | SIA | | NO | NO | NO | NO | ALERT NOT ADDRESSED HOWEVER, PO DELETED ALERT INTO DELETE BOX FROM EM DISPATCH EMAIL |
| 3/8/2016 | | | | | | | | | |