**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jason Smith, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | No. 18CV08075 |
| | ) | |
| TIMOTHY EVANS, CHIEF JUDGE OF THE | ) | Judge Gary Feinerman |
| CIRCUIT COURT OF COOK COUNTY ET. | ) | |
| AL, | ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FIRST AMENDED COMPLAINT**

1.    Plaintiff,  Jason Smith, formerly employed as a Cook County Juvenile Probation Officer by the Hon. Timothy Evans, Chief Judge of the Circuit Court of Cook County, Illinois ("Chief Judge"), and formerly employed with the City of Chicago as an Investigator with the Civilian Office of Police Accountability contend that defendants Chief Judge who oversees the Cook County Juvenile Probation and Court Services Department ("Cook County Juvenile Probation Department"), City of Chicago, Sydney Roberts (COPA) and AFSCME (Roberta Lynch) have discriminated against him, tolerated discrimination of him and retaliated against him, violated his constitutional rights, contractual rights, defamed his reputation for advocating for equal justice on the basis of his race through their subordinates, AFSCME and the City of Chicago as follows:

A.  Avik Das, Chief Judge Timothy Evans, William Patterson, failed to follow the collective bargaining agreement when they claimed that the plaintiff's employment was terminated but failed to afford him the same rights that  other individuals received under the collective bargaining agreement with AFSCME Local 3477, Council 31 when he was denied a pre-discplinary hearing under the collective bargaining agreement to present evidence and a rebuttal.

B. Authorizing William Patterson, Katherine Gailbraith-Verrant, Avik Das and Jennifer Nunez to contact the City of Chicago and falsely claim that the plaintiff was still employed with the defendant that damaged the plaintiff's reputation when he was relieved of his duties with the City of Chicago.

1

C. Chief Judge Timothy Evans refused to reverse the adverse action of Avik Das, Katherine Gailbraith- Verrant, William Patterson and Jennifer Nunez by allowing the decision to stand and allowing, defamation, the discrimination and retaliation to impact the plaintiff's reputation with his new employer .

D. AFSCME Council 31, Local 3477, Roberta Lynch, Lloyd Marshall, Steve Kasperki, Michael Newman refused to forward this matter to arbitration because of the plaintiff's advocacy of no discrimination when it came to the working conditions of African Americans and assisted the Chief Judge Timothy Evans to retaliate and discriminate against the plaintiff for fair treatment.

E. The City of Chicago, Civilian Office of Police Accountability, Sydney Roberts, Karlo Flowers, Brandon Crase assisted the Chief Judge Timothy Evans, Avik Das, William Patterson, Jennifer Nunez, Katherine Gailbraith- Verrant with retaliation and discrimination by initially providing no reason for the relief of his duties, but later stated that the plaintiff was still employed and being paid by the Chief Judge as a probation officer under the City of Chicago policy for secondary employment.

F. Allowing William Patterson, Avik Das, Katherine Gailbraith- Verrant and Jennifer Nunez to deviate from the normal practice of investigations that caused damaged to the plaintiff's reputation when the City of Chicago relieved the plaintiff of his position.

G. Allowing William Patterson, Avik Das, Katherine Gailbraith- Verrant and Jennifer Nunez to conduct a bias investigation that defamed the plaintiff's reputation when he was relieved of his duties with the City of Chicago.

H. Allowing William Patterson, Avik Das, Katherine Gailbraith- Verran to neglectfully or maliciouly place in the personnel file of the plaintiff documents belonging to another probation officer and claiming that they never received the plaintiff's resignation letter. In addition, allowing Avik Das, Katherine Gailbraith-Verrant, (Chief Judge Designee), and William Patterson to place an illegal document in the personnel file of the plaintiff and claim "poor record keeping".

I. Allowing Avik Das to circumvent the language in the collective bargaining by allowing Avik Das, who has used the word nigger and other derogatory language to terminate the plaintiff's position despite the language in the collective bargaining agreement stating that "the Employer may only impose". Allowing William Patterson and Avik Das to cite the reason for discharge as misconduct and later changing its position to implied resignation, but sending it to the City of Chicago as termination.

2. Defendant CITY OF CHICAGO is a municipal corporation under the laws of the State of Illinois. It has obligations as an indemnitor of certain conduct of its employees and officers under at least 745 ILCS 10/2-301, et seq. and 745 ILCS 10/9-101, et seq. Defendants harmed Plaintiff in Cook County, Illinois. The CIVILIAN OFFICE OF POLICE ACCOUNTABILITY ("COPA") is an office of municipal government established pursuant to City ordinance 2-78-100, et seq., charged with, inter alia, the investigation of alleged police misconduct.

3.  At all times relevant, Defendant AFSCME LOCAL 3477, Council 31("AFSCME") is and has been a public-sector labor organization within the meaning of the Illinois Public Labor Relations Act, 5 ILCS 315/1, et seq., and the exclusive bargaining representative of, inter alia, Cook County employees in the job title of Probation Officer I, II and III. On belief, it provides resources, representational services, and grievance and arbitration administration services.

4.  Plaintiff Jason Smith, formerly employed as a Cook County Juvenile Probation Officer by the Hon. Timothy Evans, Chief Judge of the Circuit Court of Cook County, Illinois ("Chief Judge") contends that defendants Chief Judge who oversees the Cook County Juvenile Probation and Court Services Department ("Cook County Juvenile Probation Department") and the (Office of the Chief Judge) colluded and conspired with all the above defendants to deprived the Plaintiff of his constitutional rights of due process, a violation of his first amendment rights of association of a protected class of people who created and distributed information according to freedom of speech, defendants committed an act of tortious interference of a business relationship when they contacted his new employer and provided negative and misleading information that deprived the plaintiff of employment, City of Chicago defendants (COPA) acted on this misleading information and later provided misleading information in which COPA used as a pre textual reason when they stated that the plaintiff had secondary employment which is defined by the City of Chicago Policies as (**Paid**), The Chief Judge Defendants and AFSCME Defendants willfully violated the contractual provisions of the collective bargaining, therefore breaching the collective bargaining agreement and AFSCME failed to provide fair representation because of discriminatory reasons. The defendants defamed plaintiff reputation, retaliated against him for his concerted activities, retailiated against the plaintiff for his association with people of a protected class, the defendants violated the Whistle Blower Act and created a hostile work environment when the plaintiff resigned his position, which was later characterized as misconduct and submitted to his new employer after violating his rights.

## JURISDICTION AND VENUE

5.      Jurisdiction of this court arises under 42 U.S.C. 1983, 42 U.S.C. 1988 (a) and (b) 28 U.S.C. 1331, 28 U.S.C. 1343, This action is brought pursuant to the  Title VII of the Civil Rights Act of 1964, as amended,  Section 5(b) of the Illinois Civil Rights Act, 740 ILCS 23/5(b), Title VI, 42 U.S.C. § 2000d et seq of the Civil Rights Act, 42 U.S.C. sec.2000e-5(f). First and Fourteenth Amendments to the United States Constitution, Labor- Management Relations Act 29 USC 142, (740 ILCS 174/) Whistle-blower Act and Illinois Public Labor Relations Act, 5 ILCS 315/1, et seq.

6. This court has jurisdiction over the state law claims pursuant to  28 U.S.C. 1367 under the principles of supplemental and pendant jurisdiction, and such claims so relate to the federal claims as to form part of the same case and controversy.

7. Venue is proper in this District pursuant to 28 U.S.C. 1391 because the events giving rise to this claim occurred in this District.

8.      The plaintiff has met the administrative prerequisites prior to instituting these legal proceedings. The named plaintiff filed his charge of race discrimination before the U.S. Equal Employment Opportunity Commission ("EEOC"). The EEOC issued right to sue letters dated December 04, 2018 to plaintiff.

## THE PARTIES

9.  Plaintiff Jason Smith is an African-American citizens of the United States and resident of Cook County, State of Illinois and formerly employed in that capacity as a Cook County Juvenile Probation Officer and as an Investigator for the City of Chicago (COPA).

10.     Defendant, Hon. Timothy Evans, is Chief Judge of the Circuit Court of Cook County, Illinois. In that capacity he is an "employer" for purposes of Title VII of the Civil Rights Act, Title VI of the Civil Rights Act and is a "unit" of State government for purpose of Section 5 of the Illinois Civil Rights Act of 2003, 740 ILCS 23/5. Separate from his judicial duties, defendant Chief Judge is as a matter of law administratively responsible for supervising the Cook County Juvenile Probation Department. The Chief Judge has general authority and supervisory responsibility over the actions of the subordinate director and other managerial employees of the Cook County Juvenile Probation Department.

11.     Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois.

12.     The Civilian Office of Police Accountability is an office of municipal government established pursuant to City ordinance 2-78-100, et seq., charged with, inter alia, the investigation of alleged police misconduct. It has obligations an an indemnitor of certain conduct of its employees and officers under at least 745 ILCS 10/9 - 101, et seq. The Defendant harmed plaintiff in Cook County.

13.     At all times relevant, Defendant AFSCME International, Council 31, LOCAL 3477 ("AFSCME") is and has been a public-sector labor organization within the meaning of the Illinois Public Labor Relations Act, 5 ILCS 315/1, et seq., and the exclusive bargaining representative of, inter alia, Cook County employees in the job title of Probation Officer I, II and III with the Chief Judge of the Circuit Court of Cook County.

14.     The Chief Judge of the Circuit Court of Cook County is a party to a collective bargaining agreement with AFSCME Council 31, Local 3477, AFL-CIO, AFSCME International that includes a grievance and arbitration clause culminating in final and binding arbitration.

15.     Defendant Chief Judge Timothy Evans("Evans") is a legal adult and is the Chief Judge of the Circuit Court of Cook County and administratively responsible for supervising the Cook County Juvenile Probation Department. The Chief Judge has general authority and supervisory responsibility over the actions of the subordinate director and other managerial employees of the Cook County Juvenile Probation Department.  He is a final policymaker and decisionmaker for Defendant the Office of the Chief Judge and Cook County Juvenile Probation Department.  Defendant Evans is sued in his individual and official capacity.

16.     Katherine Gailbraith- Verrant ("VERRANT") is a legal adult and is a designee of the Chief Judge. She is a final policymaker and decisionmaker for Defendant Chief Judge of the Circuit Court of Cook County. Defendant VERRANT is sued in her individual and official capacity.

17.     Avik Das ("DAS") is a legal adult and is the acting director of Cook County Juvenile Probation Department under the Chief Judge. He is a final policymaker and decisionmaker for Defendant Chief Judge of the Circuit Court of Cook County. Defendant DAS is sued in her individual and official capacity.

4

18. Jennifer Nunez ("NUNEZ") is a legal adult and is a Deputy Chief Probation Officer of Cook County Juvenile Probation Department under the Chief Judge. She is a final policymaker and decision-maker for Defendant Chief Judge of the Circuit Court of Cook County. Defendant Nunez is sued in her individual and official capacity.

19. William Patterson ("PATTERSON") is a legal adult and is Human Resource Director of Cook County Juvenile Probation Department under the Chief Judge. He is a final policymaker and decision-maker for Defendant Chief Judge of the Circuit Court of Cook County. Defendant PATTERSON is sued in her individual and official capacity.

20. Sharon Throw-Koc ("KOC") is a legal adult and is a Deputy Chief Probation Officer of Cook County Juvenile Probation Department under the Chief Judge. She is a final policymaker and decision-maker for Defendant Chief Judge of the Circuit Court of Cook County. Defendant KOC is sued in her individual and official capacity.

21. Lloyd Marshall ("MARSHALL") is a legal adult and is a Representative of AFSCME Council 31,Local 3477. He is a final policymaker and decision-maker for Defendant AFSCME. Defendant MARSHALL is sued in his individual and official capacity.

22. Steve Kasperski ("KASPERSKI") is a legal adult and is a Representative of AFSCME Council 31,Local 3477. He is a final policymaker and decision-maker for Defendant AFSCME. Defendant KASPERSKI is sued in his individual and official capacity.

23. Roberta Lynch ("LYNCH") is a legal adult and is Executive of AFSCME Council 31,Local 3477. She is a final policymaker and decision-maker for Defendant AFSCME. Defendant LYNCH is sued in his individual and official capacity.

24. Michael Newman ("NEWMAN") is a legal adult and is a Representative of AFSCME Council 31,Local 3477. He is a final policymaker and decision-maker for Defendant AFSCME. Defendant NEWMAN is sued in his individual and official capacity.

25. Lee Saunders ("SAUNDERS") is a legal adult and is a PRESIDENT of AFSCME International, Council 31,Local 3477. He is a final policymaker and decision-maker for Defendant AFSCME. Defendant SAUNDERS is sued in his individual and official capacity.

26. Defendant SYDNEY ROBERTS ("ROBERTS") is a legal adult and is Chief Administrator of COPA. She is a final policymaker and decision-maker for Defendant CITY'S COPA. Defendant ROBERTS is sued in her individual and official capacity.

27. Defendant Karlo Flowers ("FLOWERS") is a legal adult and is Human Resource Administrator of COPA. He is a final policymaker and decision-maker for Defendant CITY'S COPA. Defendant FLOWERS is sued in his individual and official capacity.

28. Defendant Brandon Crase ("CRASE") is a legal adult and is Legal Administrator of COPA. He is a final policymaker and decision-maker for Defendant CITY'S COPA. Defendant CRASE is sued in his individual and official capacity.

## FACTS RELATING TO ALL COUNTS

29. Plaintiff was employed by the Chief Judge of the Circuit Court of Cook County for fifteen years, from 2003 to 2018. The plaintiff exceeded the performance standards of his the Chief Judge for fifteen years from 2003 -2018.

30. The Plaintiff requested a ten hour four day work schedule. The Plaintiff was denied this schedule despite the Chief Judge employing part time workers and a white probation officer being granted this same schedule and the Chief Judge and Katherine Gailbraith - Verrant conspiring with Avik Das and William Patterson to discriminate and retaliate against the plaintiff.

31. The plaintiff discovered An illegal and disparaging document in his personnel file in September 2017 during a deposition. The plaintiff filed a grievance and Chief Judge and his designee Katherine Gailbraith, Avik Das and William Patterson claimed it was poor record keeping. The plaintiff never seen that document.

32. The plaintiff along with similar situated individuals formed a group called the African American Coalition to challenge the discriminatory practices with the Employer and AFSCME that were impacting African American children and employees.

33. The plaintiff appeared for a deposition on or about September 2017 in a lawsuit filed by other African American employees against the Chief Judge of the Circuit Court of Cook County and provided testimony and evidence.

34. The plaintiff filed lawsuit 17CV08341 against Chief Judge Timothy Evans, Avik Das and William Patterson for racial discrimination and retaliation.

35. The plaintiff provided information in a lawsuit filed against AFSCME in l7cv08l25

36. The plaintiff assisted others with filing of complaints or have filed complaints or their behalf through the grievance process for racial discrimination and sexual harassment or provided guidance with the EEOC and the Illinois Department of Human Rights against both the the Chief Judge, Avik Das, William Patterson and AFSCME.

37. Plaintiff filed several unfair labor practices charges against the Chief Judge, Avik Das, William Patterson and AFSCME.

38. Following the rape and kidnapping of a Chicago State University student by a juvenile delinquent, the Employer gave the perception that this juvenile was being electronically monitored for twenty four hours a day. The Plaintiff notified the public that there was no active twenty four hour supervision of juvenile delinquents and shortly there after the department changed its operations.

39. The plaintiff sent an email in 2017, condemning Avik Das for the use of the word nigger and other derogatory language that had no relevance in a meeting.

40. In 2017, The Plaintiff started searching for employment and initially accepted a position with the Chicago Fire Department, but changed his mind after it was confirmed that the schedule was not flexible for school.

41. Sharon Throw Koc posted a picture of the plaintiff at 1100 S. Hamilton defaming the plaintiff when she claimed the plaintiff was terminated therefore, damaging the plaintiff's reputation and opportunities.

42. Chief Judge Timothy Evans, William Patterson and Avik Das were aware of the plaintiff's intention to leave the department when they sent correspondence to the Federal government at the request of the plaintiff and when they responded to the Chicago Fire Department inquiry.

43. The Plaintiff requested in 2018 an educational leave of absence and it was granted.

44. The Plaintiff submitted his resignation to Chief Judge Timothy Evans and William Patterson in 2018 after he received confirmation from the City of Chicago that this schedule would be flexible.

45. The Plaintiff former supervisor sent a congratulatory electronic communication on his new position.

46. The Chief Judge, Katherine Gailbraith-Verrant, Avik Das, William Patterson, Jennifer Nunez began to have clandestine conversations with the City of Chicago, COPA, Sydney Roberts, Karlo Flowers and Brandon Crase about the plaintiff's employment.

47. The Chief Judge, Katherine Gailbraith- Verrant, Avik Das, William Patterson, Jennifer Nunez sent a letter to the City of Chicago, COPA, Sydney Roberts, Karlo Flowers and Brandon Crase that this plaintiff's was engaging in gainful employment and that his position was terminated on June 14, 2018. This action defamed, discriminated and retaliated against the plaintiff and constitutes a tortorious interference in a business relationship. The Chief Judge defendants attempted to deposit money into the plaintiff's account in June 2018 to give the impression that the plaintiff was still employed with the Chief Judge.

48. The City of Chicago, COPA, Sydney Roberts, Karlo Flowers and Brandon Crase initially without reason relieved the plaintiff of his duties on June 22, 2018, Karlo Flowers later stated that this plaintiff was still being paid by the Chief Judge of the Circuit Court and this paid employment was a violation of secondary employment. City of Chicago, COPA, Sydney Roberts, Karlo Flowers and Brandon Crase knew this was not the truth and  assisted and colluded with the Chief Judge Defendants for the purpose of discrimination and retaliation against the plaintiff. The City of Chicago, COPA defamed the plaintiff when they informed a potential employer that the plaintiff engaged in misconduct or negligence may not promote the efficiency or protect the integrity of the service.

49. The plaintiff sent a letter to AFSCME, Lloyd Marshall and Steve Kasperski, but they never responded to the plaintiff's request for a grievance to be filed therefore assisting and colluding for the purpose of retaliation and discrimination with the Chief Judge Defendants.

50. The plaintiff decided to file a grievance over this issue, Avik Das never responded to the plaintiff. The plaintiff submitted this grievance to the Chief Judge and his designee who engaged in clandestine conversations with the City of Chicago appeared for this hearing with Carina Segallini from the Office of the Chief Judge to give the impression that this was an unbiased hearing. AFSCME, Steve Kasperski appeared and said he was only there to observe assisting and colluding with the discrimination and retaliation.

51. The Chief Judge designee, Carina Segalini assisted with the retaliation and discrimination when they disregarded the language in the collective bargaining and responded with a claim that the plaintiff was on medical leave, educational leave and tailored their response in attempt to justify their reason for searching for the plaintiff.  In addition, non of the information was correct in the response from the Office of the Chief Judge date September 20, 2018.

52. Since the Chief Judge claimed the plaintiff was still employed. The plaintiff had a public employment contract by virtue of the Collective Bargaining Agreement that provides the plaintiff may be terminated only for cause; therefore, plaintiff had a property interest in continued public employment if the employer is claiming that the plaintiff was still employed. See Arnett v. Kennedy,416 U.S. 134 (L974).

53.  Lloyd Marshall, defamed the plaintiff when an email was sent to another bargaining unit member, the executive board and AFSCME Council 3l stating that "it has been proven that the plaintiff has been illegally sending cases to arbitration and that the plaintiff has some character issues". The plaintiff cannot send cases to arbitration as AFSCME Council 3l is the exclusive representative because of this act this case was not submitted for arbitration.

54. Plaintiff had a public employment contract by virtue of the Collective Bargaining Agreement that provides the plaintiff that the relationship with the Chief Judge of the Circuit Court of Cook County shall terminate upon resignation, discharge for just cause or retirement.

55. The plaintiff emailed AFSCME Council 31, Roberta Lynch and subordinates and requested that the plaintiff wrongful termination be arbitrated. The plaintiff never received a response. It has been well known that AFSCME held hostility towards the plaintiff because of his advocacy on behalf of his members and of African Americans, therefore assisting and colluding with the retaliation and discrimination.

56. A Collective Bargaining Agreement ("CBA") was entered into between defendant Chief Judge of Cook County as the Employer of employees covered by this agreement and the American Federation of State, County, and Municipal Employees ("AFSCME") Council 31, AFL-CIO for and on behalf of Local 3477("The Union"). Article I, Section 2. Employer Obligation: the union recognizes that this Agreement does not empower the Employer to do anything that is prohibited from doing by law.. The CBA representing the juvenile probation officers contained in pertinent part the  following terms:


* * *

Article XX, Section 9. No Discrimination:

No employee shall be discriminated against on the basis of race, color, sex, age, religion, disability, national origin, ancestry, sexual orientation, marital status, political affiliation and/or beliefs, or activity or non activity on behalf of the Union. Employees are required to comply with the Employer's policies on discrimination and harassment….

* * *

Article III, Section I. Employer Rights:

The union recognizes that the Employer has the full authority and responsibility for directing its operations and determining policy…. except as amended, changed or modified by this agreement Article XIX, Section, I. Use of Discipline, Disciplinary Procedure. The Employer has the right to discipline employees. The Employer may only impose the types of discipline listed in Section 2 of this Article. Although discipline shall normally be progressive and corrective... The employer may only discipline an employee for just cause

The Employer may only impose the following types of discipline:

1. Verbal reprimand
2. Written reprimand
3. Suspension

4. Discharge

Section 4 Pre Disciplinary Meeting

A.      Purpose: Prior to the imposition of suspension or discharge the department head/designee shall meet with the employee to discuss the circumstances giving rise to the contemplated discipline. The Employer after presenting all known evidence and reasons for disciplinary action, will afford the employee an opportunity to rebut any evidence or charges against him/her.

**The Historical Pattern, Policy, and Practice**
**of The Defendant Employer In His Delivery**
**of Discipline to The Juvenile Probation Officers.**

Argentry Mitchell

57.      In 2009 Argentry Mitchell, an African-American supervisory juvenile probation officer, made a claim of Title VII race discrimination against the defendant Chief Judge in *Mitchell v. Rohan, et al.*, No. 09-cv-5874, (N.D. Ill). Although Mitchell performed his job in a manner which exceeded expectations, he received a 10-day suspension without pay based on a claim that that Mitchell's supervision of a subordinate was faulty.

58.      Yet a non African-American supervisory probation officer who was also accused of such faulty supervision received only a reprimand.

59.      Defendant Chief Judge was aware of Mitchell's claims, yet took no action to investigate the veracity, abandoned his duty under Illinois law to exercise general supervision over the Department; and permitted managers without his legal background to decide the veracity of evidence, the characterization of the alleged misconduct, and the degree of discipline.

60. Because of errors made by Mitchell's counsel in the timing of service of the defendants, the district court dismissed the complaint in November, 2010, without ever reaching the merits of Mitchell's claim.

61. Plaintiff is an African-American former juvenile probation officer who succeeded as president of union Local 3477. Mr. Smith was previously the vice-president of the local.

62. Plaintiff recognized that claims of racial discrimination to the EEOC, theIllinois Department of Human Rights ("IDHR"), the federal courts, and arbitration were failing due to the failure to allege and document a pattern and practice of racially disparate treatment.

**The Collection of Discipline Records**

63.      Accordingly, in 2012, Jason Smith made his first request for juvenile probation officer discipline records for the preceding five years. On several occasions the defendant employer refused to turn over the records, citing pre-textual excuses, such as the information was "irrelevant," or could not be found. Finally, the plaintiff filed an unfair labor charge against the defendant Chief Judge, which resulted in a decision compelling the defendant Chief Judge to turn over the records.

64. Recently the defendant Chief Judge has permitted or acquiesced to actions of the Cook County Department of Juvenile Probation in making bad faith claims of misconduct by white or non-African-American probation officers so as to portray past and current disciplinary acts as evenhanded for all probation officers, regardless of race. during a grievance hearing held on behalf of probation officer Edward Walsh, a white officer, one of defendant's managers, William Patterson, stated that if defendant did not discipline Walsh the plaintiff would say that defendant was being racially discriminatory.

65. In an effort to substantiate the racially-disparate treatment of African-American probation officers, Local 3477 began to compile data reflecting categories of terminations, suspensions, and written or verbal reprimands among the population of approximately 400 juvenile probation officers for the years 2008 thru 2013. For each of these years the categorical data focused on four groups: African-American, Caucasian, Latino, and Other.

66. For the year 2008 there were a total of 12 terminations and/or suspensions. Of the

| | |
|---|---|
| 10 were African-American | (83%) |
| 1 was Caucasian | (8.5%) |
| 1 was Latino | (8.5%) |
| 0 was Other | (0%) |

67. For the year 2008 there was a total of one written or verbal reprimand. The one was Latino.

68. For the year 2009 there was a total of 8 terminations/and or suspensions. Of the 8:

| | |
|---|---|
| 7 were African-American | (87%) |
| 0 was Caucasian | (0%) |
| 1 was Latino | (13%) |
| 0 was Other | (0%) |

69. For the year 2009 there was a total of 5 written and/or verbal reprimands. Of the 5:

| | |
|---|---|
| 3 were African-American | (60%) |
| 1 was Caucasian | (20%) |

1 was Latino                    (20%)

0 was Other                     (0%)

70.     For the year 2010 there was a total of 17 terminations and/or suspensions. Of the 17

12 were African-American        (71%)

5 were Caucasian                (29%)

0 was Latino                    (0%)

0 was Other                     (0%)

71.     For the year 2010 there was a total of 16 written and/or verbal reprimands. Of the 16:

2 were African-American         (12%)

10 were Caucasian               (63%)

4 were Latino                   (25%)

0 was Other                     (0%)

72.     For the year 2011 there was a total of 18 terminations and/or suspensions. Of the 18

14 were African-American        (78%)

1 was Caucasian                 (5%)

3 were Latino                   (17%)

0 was Other                     (0%)

For the year 2011 there was a total of 2 written and/or verbal reprimands. Of the 2:

2 were African-American         (100%)

0 was Caucasian                 (0%)

0 was Latino                    (0%)

0 was Other                     (0%)

73.     For the year 2012 there was a total of 6 terminations and/or suspensions. Of the 6:

| | |
|---|---|
| 5 were African-American | (83%) |
| 1 was Caucasian | (17%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

74.    For the year 2012 there was a total of 2 written and/or verbal reprimands. Of the 2:

| | |
|---|---|
| 2 were African-American | (100%) |
| 0 was Caucasian | (0%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

75.    For the year 2013 there was a total of 10 terminations and/or suspensions. Of the 10

| | |
|---|---|
| 5 were African-American | (50%) |
| 3 were Caucasian | (30%) |
| 2 were Latino | (20%) |
| 0 was Other | (0%) |

76.    For the year 2013 there was a total of 2 written and/or verbal reprimands. Of the 2:

| | |
|---|---|
| 0 was African-American | (0%) |
| 2 were Caucasian | (100%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

77.    The total number of suspensions and/or terminations for the years 2008 through 2013 was 71:

| | |
|---|---|
| 53 were African-American | (75%) |
| 11 were Caucasian | (15%) |
| 7 were Latino | (10%) |

|  |  |
|---|---|
| 0 was Other | (0%) |

The total number of written and/or verbal reprimands for the years 2008 through 2013 was 28:

|  |  |
|---|---|
| 9 were African-American | (32%) |
| 13 were Caucasian | (47%) |
| 6 were Latino | (21%) |
| 0 was Other | (0%) |

78.     Plaintiff also performed an analysis of the labeling utilized by the defendants to describe the misconduct allegedly committed by juvenile probation officers during the period 2008 through 2013.

79.     The analysis revealed that the defendant employer would use in its records a descriptive label to describe the character of misconduct for a non African-American probation officer that was less aggravating, but would use a different, more aggravating label for an African-American probation officer who was accused of committing a similar type of misconduct.

80.     In this respect, the plaintiffs' analysis drew attention to the facts that the defendant employer gave disparate discipline to African-American probation officers, in contrast to the discipline meted out to non African-American probation officers who engaged in similar, or even more egregious misconduct.

81.     Instead personally taking corrective action to cure the disparate treatment complained of by the plaintiff the Chief Judge failed and continues to fail to exercise any meaningful oversight of the Cook County Juvenile Probation Department and has abdicated his responsibility to ensure compliance with federal and state laws on race discrimination.

82.  In 2014, with the aid of the compelled records, Jason Smith sent a letter to the Civil Rights Division, Employment Litigation Section, Department of Justice, requesting the initiation of an investigation into racial discrimination within the Cook County Juvenile Probation Department. A copy of the letter was sent to defendant Chief Judge.

83. Accordingly, as set forth here and in Count II below, the defendant Chief Judge has failed his statutory responsibility to ensure that his subordinates are in compliance with such laws, including, Title VI of the Civil Rights Act, Title VII of the Civil Rights Act and the Illinois Civil Rights Act of 2003.

84. These acts have resulted in disparate treatment of juvenile probation officers on the basis of their race, including:

a.  Emily Pierce.

Emily Pierce is an African-American juvenile probation officer who, in an audit concerning performance, was admonished and cited as deserving of discipline. However, two white probation officers, Dennis Brady and Katie McGoldrick, received more negative performance reviews in the audit, but were never recommended for discipline. Defendant Chief Judge took no action to investigate this claim of disparate treatment.

b.  Christen Loeb.

Christen Loeb is a white juvenile probation officer who admitted that she made mistakes which led to another probation officer not being able to complete a social investigation, which led to a minor remaining in custody. Although such errors would have led to a notice of discipline and investigation of an African-American officer, Deputy Chief Probation Officer

Virginia Caulfield stated that she would never discipline Ms. Loeb. Defendant Chief Judge took no action to investigate this claim of disparate treatment.

c. Lauren Brown.

Lauren Brown is an African American juvenile probation officer who was assigned as a screener and adjudicator within a courtroom. In 2013, she received a three-month suspension for not placing notes into a computer system. A white probation officer would not have received the same discipline. Defendant Chief Judge took no action to investigate this claim of disparate treatment.

d. Kevin Gavin.

Kevin Gavin is a white juvenile probation officer assigned as a field probation officer. On two occasions Mr. Gavin received a written reprimand and a 1.5 day suspension on the accusation that "there are discrepancies" between his time sheets and case logs that could not be reconciled.  If an African-American probation officer committed the same conduct the accusation would be that they "falsified" their time sheets and case logs.  Defendant Chief Judge took no action to investigate this claim of disparate treatment

e. Kalthea Seay.

Kalthea Seay is an African-American juvenile probation officer who placed a bid to transfer to another position. Although initially offered the position, defendant Chief Judge refused the transfer because of a claim Seay did not meet performance standards. In 2014, the Cook County Juvenile Probation Department transferred Susan Patla, a white probation officer, to that position, even though she was recently disciplined for testing positive for marijuana. The CBA does not permit a probation officer to transfer if they have been disciplined or do not meet

performance expectations. Defendant Chief Judge took no action to investigate of disparate treatment.

f. Julie Montgomery.

Julie Montgomery was an African-American juvenile probation officer for 18 years when the following series of events occurred within one year, ending her career: An allegation of misconduct by the Cook County Juvenile Probation Department compelled Ms. Montgomery to accept a "Last Chance Agreement," or else face termination. Despite her pleas of innocence as to the allegation, and the Union's pleas to her that she not accept the Last Chance Agreement, the pressure and fear of losing her job, and therefore her ability to financially support her family, caused her to accept the Last Chance Agreement. After her disciplinary sentence, the Cook County Juvenile Probation Department attempted to construct another reason to create a disciplinary investigation, but it was not sustained; subsequently defendant alleged another claim of misconduct which, although could not be proven, placed enough stress upon her to force her to resign under duress in what was a constructive discharge. Defendant Chief Judge took no action to investigate of disparate treatment.

g. Joi Basley.

Joi Basley was a 17-year African-American juvenile probation officer who accepted a four-month suspension after she was accused of falsification by the Cook County Juvenile Probation Department and accepted a "Last Chance Agreement" against the advice of the Union. Under the threat of termination, she accepted these terms because of her financial condition and need to support her family. When she returned to work after the suspension the Department now accused her of a lie on her timesheet because she mistakenly added one name to her "white" time sheet. Even though she admitted the mistake to her supervisor, wherein she explained that she

erroneously transferred the name from her "green sheet" to her "white sheet" after realizing she did not complete the itinerary she thought she had completed that date, the Cook County Juvenile Probation Department terminated her employment. All of the above described events happened within one year, ending Ms. Basley's career. Defendant Chief Judge took no action to investigate this claim of disparate treatment.

85.      Defendant Chief Judge neither supervised nor exercised his authority in making the decision of discipline.

86.      The creation of the last chance agreement between AFSCME Local 3477, AFSCME Council 31 and the Defendant created a sub contract that deprived African Americans of their rights under the collective bargaining agreement. AFSCME and the Defendants knowingly imposed and agreed with this secondary contract only on behalf of African American Probation Officers. Never the less, a white employee, who is not a probation officer was offered a second and third last chance agreement despite the serious allegations against him and remains employed with the Chief Judge. Therefore, using their discretion to ignore the just cause clause and the secondary language in the last chance agreement.

**COUNT ONE**
**Title VII of the Civil Rights Act of 1964**
**(Plaintiff v. All Individual Defendants)**

87. Plaintiff incorporate and restate each paragraph 1 through 86, as if fully set forth in this Count and in the Counts below.

88. By the acts set forth above, including the disparate and harsher discipline of plaintiffs and other African-American juvenile probation officers when compared with non African-American juvenile probation officers for purported offenses of the same character, and for other disparate and discriminatory treatment described above, and by tolerating such actions by subordinates without redress or correction, the defendant employer Chief Judge his subordinates, Avik Das, William Patterson, Jennifer Nunez, the City of Chicago, COPA, Sydney Roberts, Karlo Flowers, Brandon Crase, AFSCME International, Council 31, Local 3477, Roberta Lynch, Mike Newman, Lloyd Marshall and Steve Kasperski have violated the rights of of plaintiff under Title VII of the Civil Rights Act of 1964, as amended, to be free of racial discrimination in their employment when the Chief Judge Defendants ignored the resignation letter submitted, ignored the language in the collective bargaining agreement, City of Chicago, COPA Defendants provided a pretexual reason and the AFSCME Defendants refused to submit this case to arbitration.

89.     As a direct and proximate result of defendants Chief Judge, defendants City of Chicago, COPA and defendants AFSCME's violation of Title VII,     as set forth above, plaintiffs has incurred loss of employment, loss of employment opportunities, emotional and mental suffering and other injury, and loss of their statutory rights to be free of such racial stigmatization.

WHEREFORE, Plaintiffs pray this Court to:

A. Declare that by such actions, and in violation of Title VII of the Civil Rights Act of 1964, the defendants and Chief Judge, defendants of the City of Chicago, COPA and defendants of AFSCME have engaged in or tolerated a pattern and practice of racial discrimination in the supervision and discipline of plaintiff who are under the authority of the Chief Judge, City of Chicago, COPA and AFSCME.

B. Award compensatory damages to plaintiff arising from their unlawful discharge and refusal to submit this matter to arbitration.

C. Grant plaintiff his damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

## COUNT TWO
## Title VI of the Civil Rights Act
## (Plaintiff vs. All Individual Defendants)

90. By the facts alleged above, Plaintiff incorporate and restate each paragraph 1 through 89, against all Defendants. The defendants violated Title VI of the Civil Rights Act for exercising their rights under Title VI.

WHEREFORE, Plaintiffs pray this Court to:

   A. Award compensatory damages to plaintiff arising from their unlawful discharge and refusal to submit this matter to arbitration.

B. Grant plaintiff his damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

## COUNT THREE
## Retaliation in Violation of Title VII of the Civil Rights Act of 1964
## (Plaintiff vs. All Individual Defendants)

91. by the facts alleged above, the defendants has retaliated against plaintiff for exercising his rights under Title VII. Plaintiff incorporate and restate each paragraph 1 through 89, against all Defendants

WHEREFORE, Plaintiffs pray this Court to:

A. Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages.

B. Removed all the adverse action from his personnel file

C. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

## COUNT FOUR
### Retaliation in Violation of Title VI of the Civil Rights Act of 1964
### (Plaintiff vs. All Individual Defendants)

92. By the facts alleged above, Plaintiff incorporate and restate each paragraph 1 through 89, against all Defendants. The defendants has retaliated against plaintiff for exercising his rights under Title VI.

WHEREFORE, Plaintiffs pray this Court to:

A. Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages.

B. Removed all the adverse action from his personnel file

C. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

## COUNT FIVE
### (Illinois Civil Rights Act of 2003)
### Plaintiff v. All individuals Defendants

93. In violation of 740ILCS 23l5(b), and by the acts set forth above, Plaintiff incorporate and restate each paragraph 1 through 89, against all Defendants the defendants, Chief Judge Defendants and AFSCME Defendants, City of Chicago (COPA) defendants conspired and colluded to discriminate against the plaintiff for exercising his rights under the Illinois Civil Rights Act of 2003.

WHEREFORE, Plaintiffs pray this Court to:

A. Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages.

B. Removed all the adverse action from his personnel file

C. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

### COUNT SIX
**(Illinois Civil Rights Act of 2003)**
**Retaliation in Violation of The Illinois Civil Rights Act of 2003**
**Plaintiff v. All individuals Defendants**

94. In violation of 740ILCS 23l5(b), and by the acts set forth above, the defendants, Chief Judge Defendants and AFSCME Defendants, City of Chicago (COPA) defendants conspired and colluded to  retaliate against plaintiff.

WHEREFORE, Plaintiffs pray this Court to:

A. Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages.

B. Removed all the adverse action from his personnel file

C. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

### COUNT SEVEN
**Violation of  the Slander and Libel Act.**
**Plaintiff v. Lloyd Marshall, City of Chicago (COPA) Defendants, Chief Judge Defendants**,

95.      In Violation of 740 ILCS 145/ Plaintiff incorporate and restate each paragraph 1 through 86, as if fully set forth in this Count and in the Count below, the defendants, Chief Judge Defendants and Lloyd Marshall, City of Chicago (COPA) defamed the plaintiff when the Chief Judge, Avik Das, Katherine Gailbraith, Verrant, William Patterson sent over a document to the City of Chicago with the notice of termination when it is actually an implied resignation and claimed that the plaintiff was still employed and when Sharon Throw Koc posted a picture at 1100 S. Hamilton and provided it to the Cook County Sheriff stating that the plaintiff's employment was terminated. The City of Chicago, COPA Defendants defamed the plaintiff with a potential employer by providing a statement that the he engaged in misconduct or negligence may not promote the efficiency or protect the integrity of the service. Lloyd Marshall defamed the plaintiff when he published a false statement to several individuals when he said it has been proven that the plaintiff has been illegally sending cases to arbitration and that the plaintiff has some character issues.

WHEREFORE, Plaintiffs pray this Court to:

A. Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages.

B. Removed all the adverse action from his personnel file

C. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

## COUNT EIGHT
### Violation of the Illinois Whistle-blower Act.
### Plaintiff v. Chief Judge Defendants and AFSCME Defendants

96.    In violation of (740 ILCS 174/), and by the acts set forth above, Plaintiff incorporate and restate each paragraph 1 through 86, as if fully set forth in this Count and in the Counts below, against the Chief Judge Defendants and AFSCME Defendants, Anthony Jordan was employed as a probation officer from April 1998, to February 4, 2015, when he was terminated for alleged misconduct, by purportedly failing to properly monitor and respond to electronic monitoring alerts of a particular youth assigned to his Electronic Monitoring ("EM") Unit caseload on September 10, 2014. Two days later, Mr. Jordan completed a form to notify the Juvenile Court judge assigned to the youth's case of the alleged violation by reason of the alerts. Cook County Juvenile Probation Department has repeatedly stressed to all probation officers assigned to the Electronic Monitoring Unit that the priority was to first expend efforts to have the youths released from custody or temporary detention and placed on EM – and then to review the electronic monitoring system daily, and complete paperwork. Anthony Jordan was terminated because he, as an African-American, was a convenient the scapegoat for the Department which had to blame someone for the fact that this youth committed a crime while on electronic monitoring, and that this crime received a substantial amount of Chicago-area press, TV, and radio coverage. The Plaintiff notified the public after a perception was given that this juvenile was being monitored twenty four hours a day. After this public statement was made the department changed its operations and established a twenty four hour monitoring unit. AFSCME defendants attempted to discouraged the plaintiff from advocating on behalf of this probation officer by notifying the public of this false perception.

WHEREFORE, Plaintiffs pray this Court to:

A. Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages.

B. Removed all the adverse action from his personnel file

C. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

<u>COUNT NINE</u>
## <u>42 U.S.C. § 1983 DEPRIVATION OF FIRST AMENDMENT PROTECTED RIGHT TO</u> <u>FREEDOM</u> <u>OF SPEECH</u>
### (Plaintiff v. Chief Judge Defendants and AFSCME Defendants)

97. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint. Plaintiff refused to allow the perception that Anthony Jordan was responsible for monitoring this juvenile twenty four hours or that the department operated a twenty four hour monitoring unit.

98. Plaintiff's refusal was on a matter of grave public concern, to wit, speech about the supervision and operation of monitoring those who have committed felony offenses which those who were accused of murder, attempted murder, rape, issues of general interest, legitimate news interest, and of value and concern to the public at the time of Plaintiff's refusal and the present. Plaintiff was not required – in fact, he was prohibited – by law, and the oath he taken to protect the constitutional rights of others. Because Plaintiff's information constituted official evidence, he had a legal obligation to include truthful information and only truthful information based on the operation of the department.

99. Plaintiff had a strong First Amendment protected interest in refusing to provide information that was dishonest and contained lies, as the defendants wanted him to do. Defendants Chief Judge Timothy Evans, Avik Das, William Patterson acting under color of law, submitted a letter of claiming the plaintiff was terminated on June 9, 2018 Plaintiff in retaliation for his refusals to provide false information or providing truthful information to the public. AFSCME Defendants, Roberta Lynch, Michael Newman, Lloyd Marshall and Steve Kasperski refused to provide fair representation and to submit this matter to arbitration because of this free speech. Defendant Chief Judge Timothy Evans, Avik Das, and William Patterson by their actions under color of law, deprived Plaintiff of his First Amendment protected right to free speech. Defendant Chief Judge Timothy Evans has refused and/or failed to intervene to prevent the effects of unlawful retaliation against Plaintiff As a direct and proximate result of Defendants' actions under color of law, Plaintiff suffered damages, including loss of pay, benefits, compensatory damages, special and consequential damages, and emotional distress.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants:

A.  Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages and pay punitive damages.

B. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

<u>COUNT TEN</u>
<u>42 U.S.C. § 1983 DEPRIVATION OF PROTECTED PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION</u>
**(Plaintiff v. All individual Defendants)**

100. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint. Plaintiff has an actual protected property interest under the Fourteenth Amendment pursuant to his collective bargaining agreement, his "for cause"employment status, and by a clearly implied promise of continued employment since the Chief Judge Defendants claim that the plaintiff was still employed. Plaintiff has an actual property interest under his collective bargaining agreement because same provides that covered employees may be terminated only for just cause. Plaintiff also has an actual protected property interest by (730 ILCS 110/) Probation and Probation Officers Act because same provides that covered employees may be terminated shall be in accordance with any State or federal laws that may be applicable.

101. Defendants Chief Judge Timothy Evans, Avik Das and William Patterson acting under color of law and in concert, did not provide Plaintiff a Loudermill or other pre-deprivation hearing before submitting a letter of termination and informing him from the paperwork submitted by the Defendants that is was misconduct for their allegations. Through their actions under the color of law, Defendants Chief Judge Timothy Evans, Avik Das, William Patterson deprived Plaintiff of a protected property interest in continued compensation without any due process whatsoever as required by the Fourteenth Amendment of the United States Constitution. AFSCME Defendants, Roberta Lynch, Michael Newman, Lloyd Marshall and Steve Kasperski, colluded and conspired with the Chief Judge Defendants by refusing to submit this matter to arbitration and the City of Chicago, COPA, Defendants Sydney Roberts, Karlo Flowers, Brandon Crase colluded and conspired with Chief Judge Defendants to deprive the plaintiff of his position when they were aware it was impossible for the plaintiff to be working two paid full time positions.

102. Defendants Chief Judge Timothy Evans, Avik Das, William Patterson, Roberta Lynch, Michael Newman, Lloyd Marshall and Steve Kasperski, Sydney Roberts, Karlo Flowers, Brandon Crase took the aforesaid actions in retaliation for Plaintiff exercising his lawful rights.

103. Defendant Chief Judge Timothy Evans, Sydney Roberts and Roberta Lynch has refused and/ or failed to intervene to prevent the effects of unlawful retaliation against Plaintiff As a direct and proximate result of Defendants' actions under color of law, Plaintiff suffered damages, including loss of pay, benefits, compensatory damages, special and consequential damages, and emotional distress.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants:

A. Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages and pay punitive damages.

B. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

**COUNT ELEVEN**
**42 U.S.C. § 1983 DEPRIVATION OF FIRST AMENDMENT PROTECTED RIGHT TO FREELY ASSOCIATE**
**(Plaintiff v. All of Chief Judge Defendants and All of AFSCME Defendants)**

104. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint. Plaintiff, jointly and in concert with other probation officers, sought to freely exercise his First Amendment right to associate freely by filing a grievances over violations under the union contract, acting in concert with his fellow employees to process these grievances through to arbitration, by availing himself, through his union, of his right to arbitrate his termination grievance under the collectively-bargained contract providing for just cause termination only. Defendants Chief Judge Timothy Evans, Avik Das, William Patterson, acting under color of law and in concert, deprived Plaintiff of his right to freely associate by utilizing the collective-bargained grievance and arbitration procedure by summarily terminating him.

105. Defendants Chief Judge Timothy Evans, Avik Das, William Patterson acting under color of law and in concert, deprived Plaintiff of his First Amendment guaranteed right or freely associate by claiming to have terminated the plaintiff in direct retaliation for Plaintiff exercising his rights to grieve and arbitrate his termination under the collective bargaining agreement.

106. By their actions and conduct under color of law, Defendants Chief Judge Timothy Evans, Avik Das and William Patterson sent the message to employees under their span of control under the Chief Judge that any effort to challenge his decisions would be met with retaliation such as the claim of termination of Plaintiff directly following his filing of the previous lawsuit and other grievances. By their actions and conduct under color of law, Defendants Chief Judge Timothy Evans, Avik Das, William Patterson deprived Plaintiff of rights, privileges, and immunities guaranteed by the First Amendment of the United States Constitution, including the right to freely associate such as by utilizing the collectively-bargained for grievance and arbitration procedure of Plaintiff's union contract.

107. Defendant Chief Judge and AFSCME Defendants, Roberta Lynch and Mike Newman have failed and/or refused to intervene to prevent the ongoing deprivation of Plaintiff's protected property interest. Plaintiff's utilization of the grievance and arbitration procedure involved a matter of public concern because one of the bases for Plaintiff's challenge was that the Chief Judge and Avik Das continue to tolerate racial discrimination and failed to properly oversee an investigation into Plaintiff in which Plaintiff was not even interviewed as part of the investigation and he was just summarily terminated.

108. Plaintiff has suffered severe and ongoing damages as a result of Defendants' actions, including his wrongful termination and retaliatory action including but not limited to lost wages, benefits, pension service credits and contributions, lost or to-be-lost insurance coverage, and anxiety and emotional distress and humiliation.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants:

A. Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages and pay punitive damages.

B. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

**ILLINOIS STATE LAW ACTION FOR ENFORCEMENT OF AN COLLECTIVE BARGAINING**
**AGREEMENT BREACH OF CONTRACT AND UNFAIR REPRESENTATION**
**Plaintiff v. All of Chief Judge Defendants and All of AFSCME Defendants**

109. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint. Defendants Chief Judge and AFSCME at all times relevant were parties to a valid and enforceable collective bargaining agreement covering all of Cook County Juvenile Probation and employees in the job title of, inter alia, Probation Officer I, Probation Officer II, and Probation Officer III with Chief Judge Cook County Juvenile Probation Department. Defendant AFSCME Council 31, Local 3477 is a purely public-sector union subject to the Illinois Public Labor Relations Act, 5 ILCS 315/1, et seq. Defendant AFSCME Council 31 is the exclusive representative for AFSMCE Local 3477, and process and arbitrate grievances in this case. The collective bargaining agreement between Defendants Chief Judge and AFSCME contains a grievance procedure culminating in final and binding arbitration. Plaintiff's termination grievance alleged a meritorious violation of the Collective Bargaining Agreement by the Chief Judge Defendants, whereby they failed to follow the provisions in the collective bargaining agreement and negated the language in the collective bargaining agreement when they claimed the plaintiff was terminated.

110. The Defendants failed to provide a hearing and negated the language of the Employer may only impose. Defendants Chief Judge, Avik Das, William Patterson and AFSCME Council 31, Local 3477 refused and failed to comply with the the collective bargaining agreement. Neither AFSCME Defendant has sought confirmation and/or enforcement of the Collective Bargaining Agreement despite Plaintiff's diligent inquiries and attempts to have them seek such enforcement through the Arbitrator or legal action. Plaintiff is also suffering extreme embarrassment, humiliation, anguish, stigma, and a change in his legal status at least in that the Employer claims that the plaintiff was still employed prior to them sending him a termination notice.

111. Plaintiff, an employee covered by a collective bargaining agreement and as the employee has a private right of action to he is a member of the class for whose benefit Illinois' Uniform Arbitration Act was enacted, is a member of the class for whose benefit Illinois' Public Labor Relations Act was enacted, and is a member of the class of persons for whom the grievance and arbitration clause in this case was intended to benefit. The Employer breached the collective bargaining agreement when the provisions were not followed and AFSCME has failed to provided fair representation because of the hostility AFSCME Council 31, Local 3477, Roberta Lynch, Michael Newman, Lloyd Marshall and Steve Kasperski has against the plaintiff because of his race, he advocated for the separation from AFSCME Council 31 to stand alone as an independent Union and because he has been an vocal advocate for fair treatment of the people in the Cook County Juvenile Probation Department.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants:

A. Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages and pay punitive damages.
B. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

### COUNT THIRTEEN: INDEMNIFICATION OF DEFENDANTS PURSUANT TO 745 ILCS 10/2-301, et seq., AND 10/9-102
### City of Chicago, COPA Defendants, Sydney Roberts, Karlo Flowers and Brandon Crase

112. Plaintiff realleges and incorporates by reference all other paragraphs of this complaint above as if fully set forth in this Count.

113. Defendants Sydney Roberts, Karlo Flowers and Brandon Crase were fully aware that the plaintiff was not employed with the Defendant Chief Judge Cook County Probation Department and were fully aware of the definition within the City of Chicago Policy for secondary employment that is defined as paid. It was impossible for the plaintiff to appear in two places at the same schedule time and complete two jobs. The plaintiff accepted the position with the City of Chicago, COPA and submitted his resignation. The Defendants were fully aware, but use this as a pre-textual reason to relieve the plaintiff of his position without justification. Illinois statute provides that a local public entity such as the City of Chicago is obligated to assume financial responsibility for the actions committed by its officials or employees, such as the CITY and all of the individual Defendants named herein, and to pay judgments against such individuals. See, e.g,, 745 ILCS §§ 10/2-301, 2-302, 9-102.

WHEREFORE, Plaintiff requests that this court enter a judgment in favor of Plaintiff and against all Defendants, and order that Defendant CITY assume financial responsibility for the actions and/or omissions committed by the Defendants and award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages and pay punitive damages. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

### COUNT FOURTEEN
### Tortious Interference with Contract
### Chief Judge Defendants, Timothy Evans, Avik Das, Jennifer Nunez, William Patterson and Katherine Gailbraith-Verrant

114. Plaintiff reincorporates paragraphs 1 through 86 as if fully set forth herein. Plaintiff was hired as an investigator for the City of Chicago COPA. The plaintiff submitted his letter of resignation to the Chief Judge Defendants after they discriminated against him for his flexible schedule. The plaintiff initally accepted a position with the City of Chicago Fire Department, but rescinded this acceptance after he discovered the position was not flexible with the hours.

115. The Chief Judge Defendants began to search for the plaintiff's employment and had clandestine conversations with the City of Chicago, COPA. The Chief Judge Defendants notified the City of Chicago that the plaintiff was still working for them. The Chief Judge Defendants submitted a letter of termination to the City of Chicago, COPA with the intent to defame the plaintiff and induce the City of Chicago, COPA to terminate the employment relationship with the plaintiff. The Chief Judge Defendants never spoke to the plaintiff's immediate supervisor nor did they speak to the plaintiff or hold a Pre-disciplinary hearing prior to terminating the plaintiff to allow him to present evidence for what they classified as misconduct. The Chief Judge Defendants' intentions were to deprive and retaliate against the plaintiff for filing lawsuit 17CV08341, participating in a deposition, for providing evidence of racial discrimination in lawsuit 115CV05907 and for advocating for fair treatment for the employees of Chief Judge, Cook County Juvenile Probation.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants:

A. Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages and pay punitive damages.

B. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

### COUNT FIFTEEN
### Tortious Interference With Business Relationships
### Chief Judge Defendants, Timothy Evans, Avik Das, Jennifer Nunez, William Patterson and Katherine Gailbraith-Verrant

116. Plaintiff reincorporates paragraphs 1 through 86 as if fully set forth herein. Plaintiff was hired as an investigator for the City of Chicago COPA. The plaintiff submitted his letter of resignation to the Chief Judge Defendants after they discriminated against him for his flexible schedule. The plaintiff initially accepted a position with the City of Chicago Fire Department, but rescinded this acceptance after he discovered the position was not flexible with the hours. The Chief Judge Defendants began to search for the plaintiff's employment and had clandestine conversations with the City of Chicago, COPA.

117. The Chief Judge Defendants notified the City of Chicago that the plaintiff was still working for them. The Chief Judge Defendants submitted a letter of termination to the City of Chicago, COPA with the intent to defame the plaintiff and induce the City of Chicago, COPA to terminate the employment relationship with the plaintiff. The Chief Judge Defendants never spoke to the plaintiff's immediate supervisor nor did they speak to the plaintiff or hold a Pre-disciplinary hearing prior to terminating the plaintiff to allow him to present evidence for what they classified as misconduct.

118. The Chief Judge Defendants' intentions were to deprive, interfere in this relationship with the City of Chicago, COPA, where the plaintiff had exceed their performance standards, and retaliate against the plaintiff for filing lawsuit 17CV08341, participating in a deposition, for providing evidence of racial discrimination in lawsuit 115CV05907 and for advocating for fair treatment for the employees of Chief Judge, Cook County Juvenile Probation.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants:

A. Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm he suffered, including monetary damages and pay punitive damages.

B. Grant plaintiff damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

## **COMMON PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor, and against Defendants, for:

1. Compensatory damages;

2. Punitive damages;

3. Reasonable attorneys' fees and litigation costs and expenses;

4. Appropriate equitable relief; and

5. Such other relief as this Court deems just and proper.

## **PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,

Jason Smith

## **Certificate of Service**

I, Jason Smith, Pro Se Plaintiff, certify that on April 9, 2019  I caused, via ECF, this Amended Complaint to be served upon Courtlan L. Coppler Attorney General of Illinois, Jessica Ryan Durkin City of Chicago-Law Department, Rena M. Honorow City of Chicago, Law Department, Susan Margaret O'Keefe City of Chicago Law Department, Robert A. Seltzer Cornfield and Feldman LLP