UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 8075 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| TIMOTHY EVANS, KATE GAILBRAITH VERRANT, | ) | |
| COOK COUNTY JUVENILE PROBATION, OFFICE | ) | |
| OF THE CHIEF JUDGE, AVIK DAS, WILLIAM | ) | |
| PATTERSON, JENNIFER NUNEZ, SHARON | ) | |
| THROW-KOC, AFSCME COUNCIL 31, AFSCME | ) | |
| INTERNATIONAL, LEE SAUNDERS, AFSCME | ) | |
| LOCAL 3477, MARSHALL LYNCH, MIKE NEWMAN, | ) | |
| LLOYD MARSHALL, STEVE KASPERSKI, CITY OF | ) | |
| CHICAGO, SYDNEY ROBERTS, KARLO FLOWERS, | ) | |
| BRANDON CRASE, and ROBERTA LYNCH, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | _____ |
| | ) | |
| JASON SMITH, | ) | |
| | ) | 19 C 1539 |
| Plaintiff, | ) | |
| | ) | Judge Gary Feinerman |
| vs. | ) | |
| | ) | |
| TIMOTHY EVANS, KATE GAILBRAITH VERRANT, | ) | |
| COOK COUNTY JUVENILE PROBATION, AVIK | ) | |
| DAS, WILLIAM PATTERSON, JENNIFER NUNEZ, | ) | |
| SHARON THROW-KOC, AFSCME COUNCIL 31, | ) | |
| AFSCME LOCAL 3477, MIKE NEWMAN, LLOYD | ) | |
| MARSHALL, STEVE KASPERSKI, and ROBERTA | ) | |
| LYNCH, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The first part of this opinion will address the motions filed in No. 18 C 8075, while the

second part will address the motions filed in 19 C 1539.

Jason Smith filed this *pro se* suit against the Office of the Chief Judge, Cook County Juvenile Probation, Chief Judge Timothy Evans in his official capacity, Katherine Gailbraith-Verrant, Avik Das, William Patterson, Jennifer Nunez, and Sharon Throw-Koc (collectively, "OCJ Defendants"); AFSCME Council 31, AFSCME International, AFSCME Local 3477, Lee Saunders, Steve Kasperski, Marshall Lynch, Roberta Lynch, Lloyd C. Marshall, and Mike Newman (collectively, "AFSCME Defendants"); and the City of Chicago, Brandon Crase, Karlo Flowers, and Sydney Roberts (collectively, "City Defendants").  Doc. 80 (all record citations in this part of the opinion are to the docket in 18 C 8075).  The initial complaint purported to bring claims under 42 U.S.C. § 1983, the Illinois Whistleblower Protection Act, 740 ILCS 174/1 *et seq.*, the Illinois constitution, and Illinois contract law.  Doc. 1.  The amended complaint eliminated the state constitutional claims and added claims under Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d-e *et seq.*, the Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/1 *et seq.*, the Illinois Slander and Libel Act, 740 ILCS 145/1 *et seq.*, and Illinois tort law.  Doc. 80.  All three sets of defendants move to dismiss, and AFSCME Defendants move for summary judgment on the Title VII claims against them.  Docs. 98, 99, 102.  City Defendants' motion is granted in part and denied in part, and OCJ Defendants' and AFSCME Defendants' motions are granted in full.

## Background

In resolving a Rule 12(b)(1) or Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions.  *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (Rule 12(b)(6)); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (Rule 12(b)(1)).  The court must also consider

"documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Smith's briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Smith as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018). The operative complaint is difficult to parse and lacks a clear chronology, but the relevant facts are set forth as best the court can understand them.

Smith, an African-American man, was employed as a Cook County juvenile probation officer from 2003 to 2018. Doc. 80 at ¶¶ 9, 29. Evans is the Chief Judge of the Circuit Court of Cook County, which oversees the Juvenile Probation Department. *Id.* at ¶¶ 4, 10, 15. Gailbraith-Verrant, Das, Nunez, Patterson, and Throw-Koc are Juvenile Probation Department employees. *Id.* at ¶¶ 16-20. AFSCME Local 3477 was, at all relevant times, the exclusive bargaining representative of Cook County probation officers. *Id.* at ¶¶ 3, 13. Lynch is the executive of AFSCME Local 3477, *id.* at ¶ 23, Marshall, Kasperski, and Newman are representatives of Local 3477, *id.* at ¶¶ 21-22, 24, and Saunders is President of AFSCME International, *id.* at ¶ 25. Roberts is Chief Administrator of the Chicago Civilian Office of Police Accountability ("COPA"), *id.* at ¶ 26, Flowers is COPA's Human Resource Administrator, *id.* at ¶ 27, and Crase is COPA's Legal Administrator, *id.* at ¶ 28.

The operative complaint details several negative experiences Smith had a work. At some point, Smith was denied a work schedule modification that had previously been granted to a white probation officer. *Id.* at ¶ 30. In September 2017, Smith discovered a disparaging

document in his personnel folder. *Id*. at ¶ 31. Along with others, Smith formed a group to challenge discriminatory practices within the Juvenile Probation Department and AFSCME. *Id*. at ¶ 32. He spoke in public to correct what he believed to be misleading statements about the Department's monitoring of a dangerous juvenile suspect. *Id*. at ¶¶ 38, 96-99. On one occasion, Smith condemned Das's use of racist and derogatory language. *Id*. at ¶ 39.

As a result of his negative experiences, Smith pursued several legal and administrative remedies. Those included filing a lawsuit against OCJ Defendants alleging race discrimination and retaliation, *id*. at ¶ 34; providing information in a lawsuit against AFSCME, *id*. at ¶ 35; and filing unfair labor practice charges against OCJ Defendants and AFSCME, *id*. at ¶ 37. Smith also assisted others with their own challenges to the Juvenile Probation Department's and AFSCME's conduct. *Id*. at ¶ 36.

In 2017, Smith began searching for another job. *Id*. at ¶ 40. At some point, he accepted a position with the Chicago Fire Department, but changed his mind upon learning that it could not accommodate his desired schedule. *Ibid*. Sometime in 2018, Smith submitted his resignation to Evans and Patterson after receiving confirmation from the City that a job he was considering would allow a flexible schedule. *Id*. at ¶ 44. Under the terms of his contract with the Juvenile Probation Department, Smith's employment was to "terminate upon resignation." *Id*. at ¶ 54.

While Smith searched for another job, the Juvenile Probation Department sent a letter to COPA, a prospective employer, stating that he had been terminated for misconduct. *Id*. at ¶¶ 1, 4, 47-48, 95, 99, 101, 104-108, 115, 117. OCJ Defendants did not speak to Smith or hold a pre-disciplinary hearing prior to sending the letter, which Smith describes as his "termination." *Id*. at ¶ 115. At some other point during Smith's job search, the City and COPA informed another potential employer that he had engaged in misconduct or negligence. *Id*. at ¶¶ 48, 95.

Smith eventually filed a grievance over his "termination." *Id.* at ¶¶ 49-50, 109. In his telling, AFSCME did not forward his grievance to arbitration despite his request that it do so. *Id.* at ¶¶ 1, 55, 88. Smith, however, was provided with a hearing at which non-party Carina Segallini from the Office of the Chief Judge and Kasperski of AFSCME were present. *Id.* at ¶ 50. As a result of his "termination," Smith has suffered anxiety, humiliation, and the loss of wages, benefits, pension service credits and contributions, and insurance coverage. *Id.* at ¶ 108.

The operative complaint includes other allegations that do not fit neatly into the foregoing chronology. On February 23, 2018, Marshall sent an email to another bargaining unit member, the union's executive board, and AFSCME Council 31 stating that "it has been proven that [Smith] has been illegally sending cases to arbitration and … has some character issues." *Id.* at ¶ 53; Doc. 117-8 at 1-2. Also, Throw-Koc posted, at an unspecified time and to an unspecified location, a picture of Smith and claimed that he had been terminated. *Id.* at ¶ 41.

## Discussion

### I.    City Defendants

Smith has voluntarily dismissed his non-retaliation Title VII and ICRA claims, his Title VI claim, and his § 1983 claims against City Defendants. Doc. 119 at 4-6. In addition, Smith does not respond to the City's argument for dismissing COPA as a defendant, Doc. 98 at 5-6, thereby forfeiting his claims against COPA. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there

might be something to say against the defendants' reasoning.") (internal quotation marks omitted); *Lekas v. Briley*, 405 F.3d 602, 614-15 (7th Cir. 2005) ("While Lekas alleged in his complaint that his segregation was in retaliation for his filing of grievances, he did not present legal arguments or cite relevant authority to substantiate that claim in responding to defendants' motion to dismiss," and "[a]ccordingly, [his] Section 1983 retaliation claim has been waived."); *see also Boogaard v NHL*, 891 F.3d 289, 294-96 (7th Cir. 2018) (affirming the district court's holding that the plaintiffs forfeited their claims by failing to respond to the defendant's argument on a Rule 12(b)(6) motion that they failed to state a claim).  Accordingly, those claims are dismissed and the court proceeds to consider Smith's remaining claims against City Defendants.

## A.    Title VII Retaliation Claim

Title VII's antiretaliation provision "prohibits retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one."  *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (citing 42 U.S.C. § 2000e-3(a)).  Because "there is no individual liability under Title VII," *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017), Smith's Title VII retaliation claim against the individual City Defendants is dismissed.  Timing aside, the City does not dispute that Smith alleges sufficient facts to support a Title VII retaliation claim against it, thereby forfeiting any argument to the contrary.  *See G & S Holdings LLC*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721 ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue … .").  The City contends, however, that the Title VII retaliation claim is untimely because Smith first raised it in his amended complaint, which was filed outside the 90-day window following his receipt of his right-to-sue letter.  Doc. 98 at 6; Doc. 123 at 3; *see*

42 U.S.C. § 2000e-5(f)(1) (providing that a Title VII plaintiff must file his claim within ninety days of receiving a right-to-sue letter). The City is wrong for two separate reasons.

First, although it did not expressly reference Title VII retaliation, Smith's original complaint pleaded a Title VII retaliation claim. A complaint need not plead legal theories. *See Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error."); *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (same). Rather, all that is required is that the complaint give the defendant fair notice of the claim and the grounds on which it rests. *See* Fed. R. Civ. P. 8(a)(2); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The original complaint alleged that "the City of Chicago[] severed [its] relationship with" Smith while "citing no reason" for its decision, Doc. 1 at p. 11, ¶ 72, and drew a connection between his "strong advocacy … under the Civil Rights Act" and how the City treated him, *id*. at p. 15, ¶ 97. Smith also attached his EEOC charge against the City, which stated in relevant part: "I believe I have been retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id*. at p. 43. That was more than enough to have put City Defendants on notice of a Title VII retaliation claim in the original complaint. Because Smith filed the original complaint within the 90-day window following his receipt of his right-to-sue letter, the Title VII retaliation claim is timely.

Second, Smith's Title VII retaliation claim arises from the same core of facts alleged in the original complaint. Accordingly, even if the original complaint did not state a Title VII retaliation claim, the amended complaint's Title VII retaliation claim would relate back under Civil Rule 15(c) to the original complaint, avoiding any time-bar problem. *See Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir. 1996) ("[A] new substantive claim that

would otherwise be time-barred relates back to the date of the original pleading, provided the new claim stems from the same conduct, transaction, or occurrence as was alleged in the original complaint; for relation back to apply, there is no additional requirement that the claim be based on an identical theory of recovery.") (internal quotation marks omitted).

Accordingly, Smith's Title VII claims against City Defendants are dismissed, except for his Title VII retaliation claim against the City.

## B.    ICRA Retaliation Claim

Smith's ICRA retaliation claim, Doc. 80 at ¶ 94, is indistinguishable in substance from his Title VII retaliation claim.  The ICRA claim against individual City Defendants is dismissed because ICRA claims may be brought against only governmental entities.  *See* 740 ILCS 23/5(b) ("Any party aggrieved by conduct that violates subsection (a) may bring a civil lawsuit, in a federal district court or State circuit court, against the offending unit of government."); *Thorncreek Apartments III, LLC v. Vill. of Park Forest*, 970 F. Supp. 2d 828, 845 (N.D. Ill. 2013) (holding that the ICRA "provides a cause of action against only three potential parties: the State of Illinois, its counties, and its local governments") (internal quotation marks omitted).

While it is unclear whether the ICRA allows for retaliation claims, the City does not press and therefore has forfeited the point.  *See G & S Holdings*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721.  The City argues only that Smith failed to exhaust his ICRA claims.  But the "ICRA does not require exhaustion; rather, a plaintiff may file a lawsuit directly in federal court."  *Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 890 (N.D. Ill. 2015); *see* 740 ILCS 23/5(b) ("Any party aggrieved by conduct that violates subsection (a) may bring a civil lawsuit, in a federal district court or State circuit court, against the offending unit of government.").  The Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*, by contrast, does impose an exhaustion

requirement.  *See* 775 ILCS 5/7A-101 to 104.  The operative complaint does not refer to the

IHRA, but Smith's opposition brief does.  Doc. 119 at 5.  To the extent Smith means to advance

an IHRA claim, it is dismissed for failure to exhaust.  *See Cervantes v. Ardagh Grp.*, 914 F.3d

560, 564-66 (7th Cir. 2019) (affirming dismissal of an IHRA claim on exhaustion grounds).

Accordingly, Smith's ICRA claims against City Defendants are dismissed, except for his

ICRA retaliation claim against the City.

> ### C.     Defamation Claim and Slander and Libel Act Claim

To state a common law defamation claim under Illinois law, a plaintiff must allege "facts

showing that the defendant made a false statement about the plaintiff, that the defendant made an

unprivileged publication of that statement to a third party, and that this publication caused

damages."  *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009); *see also Republic Tobacco Co. v.

N. Atl. Trading Co.*, 381 F.3d 717, 726 (7th Cir. 2004).  Illinois recognizes two types of

defamation: per quod and per se.  *See Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006).  In a per

quod action, the plaintiff must plead actual damages.  *See ibid*.; *Republic Tobacco*, 381 F.3d at

726.  In a per se action, the statement's defamatory character is considered so "obvious and

apparent on its face" that "injury to the plaintiff's reputation may be presumed."  *Tuite*, 866

N.E.2d at 121.  Among the five categories of defamatory per se statements are those that "impute

an inability to perform or a want of integrity in the discharge of duties of office or employment."

*Republic Tobacco*, 381 F.3d at 726.

To survive dismissal, a defamation claim must "identify the defendant's false statements

and allege their communication to a third party."  *Johnson v. Schnuck Mkts., Inc.*, 495 F. App'x

733, 736 (7th Cir. 2012).  "The Seventh Circuit has not spoken as to the exact pleading standard

for claims of defamation."  *Gardner v. Kappa Alpha Psi Fraternity*, 2013 WL 3724865, at *2

(N.D. Ill. July 12, 2013). Although some level of specificity is required, "Rule 8 does not require that the complaint recite verbatim the allegedly defamatory statement." *Rivera v. Allstate Ins. Co.*, 140 F. Supp. 3d 722, 728 (N.D. Ill. 2015) (collecting cases); *see also United Labs., Inc. v. Savaiano*, 2007 WL 4557095, at *11 (N.D. Ill. Dec. 21, 2007) ("[A]lthough plaintiffs are required to set forth the defamatory language with sufficient detail so as to allow the defendant to formulate an appropriate response, plaintiffs need not allege the defamatory language verbatim.") (internal quotation marks omitted); *Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2003 WL 22176077, at *7 (N.D. Ill. Sept. 18, 2003) (similar); *Molina v. Experian Credit Info. Sols.*, 2003 WL 21147771, at *2 (N.D. Ill. May 14, 2003) ("Where the substance of the defamatory statement is adequately identified, specific pleading is not necessary.").

Smith alleges that "[t]he City of Chicago [and] COPA defamed [him] when they informed a potential employer that [he] engaged in misconduct or negligence [that] may not promote the efficiency or protect the integrity of the service." Doc. 80 at ¶¶ 48, 95. Without more, Smith's allegation that the City made, at an unknown time, an unknown accusation of misconduct to an unknown potential employer might not suffice. But an exhibit attached to Smith's brief makes clear that the City's statement was communicated to the Transportation Security Administration in late January 2019. Doc. 119-4. That exhibit, properly considered on a Rule 12(b)(6) motion, *see Phillips*, 714 F.3d at 1020, provides the necessary detail regarding what the allegedly defamatory statement said (that Smith engaged in misconduct), to whom it was made (the Transportation Security Administration), and when (late January 2019). *See Maui Jim, Inc. v. SmartBuy Guru Enters.*, 386 F. Supp. 3d 926, 941 (N.D. Ill. 2019) (holding that allegations that a corporation "falsely instructed [the counterclaimant's] potential customers … that [it] sells counterfeit goods," sold "fake" merchandise, and was "not an authentic website"

were sufficient at the pleading stage because they set forth the speaker, the listener, and the statement's content) (internal quotation marks omitted); *Lycurgan, Inc. v. Rood*, 2014 WL 6810338, at *4 (N.D. Ind. Dec. 3, 2014) (holding that an allegation that a corporation's president "made statements to at least one unknown individual which referred to [the corporation] being a victim of fraud at the hands of the [counterclaimants]" provided "sufficient notice of the basis for the claim" by setting forth the "who, what, and when of [the statement's] making"); *Walters v. Merrill Lynch Mortg. Corp.*, 1987 WL 109137, at *1 (N.D. Ill. June 22, 1987) (holding that an allegation that the defendant corporation asserted that the plaintiff "caused problems with … loan submissions" was "sufficiently specific" to satisfy Rule 8).

It follows that Smith's defamation claim against the City survives dismissal. That said, Smith has not alleged that any particular person made the defamatory statement. Without such an allegation, there is no basis for a defamation claim against any individual City Defendant. Accordingly, Smith's defamation claim against Crase, Flowers, and Roberts is dismissed.

The Illinois Slander and Libel Act applies only to a false publication that "charge[s] any person with having been guilty of fornication or adultery," 740 ILCS 145/1 or "swearing falsely," 740 ILCS 145/2. The complaint alleges neither, so Smith's claim under the Act is dismissed.

### D. Indemnification Claim

While Smith's Title VII retaliation, ICRA retaliation, and defamation claims against the City survive dismissal, no claim against the individual City Defendants does. Accordingly, there is no individual liability to give rise to an indemnification obligation on the City's part. Smith's indemnification claim against the City is therefore dismissed.

## II.    OCJ Defendants

### A.    Title VII Claim

Because there is no individual liability under Title VII, Smith's Title VII claim against the individual OCJ Defendants is dismissed.  *See Nischan*, 865 F.3d at 930.

Smith's official capacity Title VII claim against Chief Judge Evans—technically a claim against the OCJ, Doc. 80 at ¶ 10— and the other entity OCJ Defendants is dismissed for failure to exhaust.  Smith attaches to his opposition brief an amended EEOC charge naming the Circuit Court of Cook County, Doc. 116-5 at 3-4, and the corresponding right-to-sue letter, Doc. 116-22.  But the amended charge alleges discrimination only on June 22, 2018, Doc. 116-5 at 4, and therefore does not encompass Smith's resignation or alleged termination, which occurred on or before June 14, 2018.  Doc. 80 at ¶ 47.  The only event the operative complaint alleges to have occurred on June 22 is that City Defendants—not the entity OCJ Defendants—"reliev[ed] [Smith] of his duties."  *Id*. at ¶ 48.  Because Smith failed to exhaust any claim against the entity OCJ Defendants arising from events not occurring on June 22, and because the complaint's June 22 allegations do not concern the entity OCJ Defendants, the Title VII claim against the entity OCJ Defendants is dismissed.  *See Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819-20 (7th Cir. 2005) (holding that an EEOC charge alleging discrimination concerning one job application did not properly exhaust a claim that the same employer engaged in discrimination as to a second job application, even though the second incident could have been discovered in the course of the EEOC's investigation of the first).  Because the dismissal is for failure to exhaust, it is without prejudice.  *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009) ("Because Teal failed to exhaust administrative remedies, her complaint must be dismissed without prejudice."); *see also Hill v. Potter*, 352 F.3d 1142, 1145-46 (7th Cir. 2003).

## B.     Title VI Claim

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  Thus, "to plead [a] claim under Title VI successfully," Smith must "plausibly allege that Defendants have received 'federal financial assistance' within the meaning of Title VI."  *Shebley v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 693 (N.D. Ill. 2019).

OCJ Defendants contend that 42 U.S.C. § 2000d-3 bars Smith's Title VI claim.  Doc. 100 at 5-6.  Section 2000d-3 provides that Title VI "shall not be construed to authorize action … by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment."  42 U.S.C. § 2000d-3.  Section 2000d-3 was enacted out of "concern that the receipt of any form of financial assistance might render an employer subject to the commands of Title VI rather than Title VII."  *Johnson v. Transp. Agency, Santa Clara Cnty.*, 480 U.S. 616, 627 n.6 (1987).  In *Ahern v. Board of Education of City of Chicago*, 133 F.3d 975 (7th Cir. 1998), the Seventh Circuit interpreted § 2000d-3 to limit Title VI employment discrimination claims to cases where "(1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid."  *Id*. at 978 (internal quotation mark omitted).

Smith does not allege that OCJ received federal funding at all, let alone allege facts allowing the inference that OCJ receives funding that would satisfy either prong of *Ahern*.  His Title VI claim accordingly is dismissed.  *See Outley v. City of Chicago*, __ F. Supp. 3d __, 2019

WL 4261202, at *10-11 (N.D. Ill. Sept. 9, 2019) (dismissing a Title VI employment discrimination claim for failing to satisfy either prong of *Ahern*).

###### C.  Section 1983 Claims

For his § 1983 claims, Smith alleges that OCJ Defendants: (1) punished him for First Amendment protected speech by sending a letter claiming that he had been terminated, Doc. 80 at ¶¶ 97-99, and by actually terminating him, Doc. 116 at 7; (2) deprived him of procedural due process by refusing to arbitrate a grievance over his alleged termination, Doc. 80 at ¶¶ 100-103; and (3) punished him for exercising his First Amendment right to free association by terminating him and mishandling his grievance, *id.* at ¶¶ 104-108.  These allegations fail to make out § 1983 claims.

To state a First Amendment retaliation claim, a plaintiff must allege that "he suffered an adverse action that would likely deter future First Amendment activity."  *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 623 (7th Cir. 2012) (setting forth the elements for a free association retaliation claim); *see also Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019) (setting forth the same elements for a free speech retaliation claim).  Similarly, a procedural due process claim requires that the plaintiff have been "deprived of a protected liberty or property interest."  *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 365 (7th Cir. 2019).  Accordingly, if Smith has not alleged that he suffered an adverse action or other meaningful deprivation, his § 1983 claims do not survive dismissal.

The operative complaint alleges that Smith voluntarily "submitted his resignation to" OCJ Defendants after receiving confirmation that another job to which he had applied would allow for flexible hours.  Doc. 80 at ¶ 44.  At no point does Smith claim that he was constructively discharged or allege facts that would support an inference of constructive

discharge.  Granted, Smith alleges that OCJ Defendants processed a "termination" for him and communicated to others that he had been "terminated."  Doc. 80 at ¶¶ 1, 47, 52, 99, 101, 104-108.  But an employee's receipt of a termination notice following his undisputedly voluntary resignation does not, without more, constitute an adverse employment action or the deprivation of a protected liberty or property interest.  *See Curby v. Solutia, Inc.*, 351 F.3d 868, 872 (8th Cir. 2003) ("An employee cannot submit a resignation and then claim the employer's acceptance of the resignation is an adverse employment action."); *Mihalovich v. Jewel-Osco*, 2003 WL 22232800, at *5 (N.D. Ill. Sept. 26, 2003) ("Accepting an employee's resignation is not—as a matter of law—an 'adverse employment action' that would be an essential element of a prima facie retaliation case.  Furthermore, an employee cannot submit a resignation to her employer and then argue that her employer's acceptance of her resignation is a pretext for unlawful discrimination.").

Smith arguably offers up two other adverse actions or deprivations, but neither suffices. First, his complaint could be read to suggest that alleged due process deficiencies in his post-termination grievance proceeding were in retaliation for his protected speech or associational conduct, and also were denials of his free association and due process rights in their own right. But while a § 1983 First Amendment claim does not require that an adverse action reach the same level of severity as in a Title VII case, *see Spiegla v. Hull*, 371 F.3d 928, 941 (7th Cir. 2004), the action must still be "sufficient to deter an ordinary person from engaging in that First Amendment activity in the future," *Santana*, 679 F.3d at 622-23.  Procedural deficiencies in a grievance proceeding that exists only to a contest an employee's own voluntary resignation are not such a deterrent.  *See Massey v. Johnson*, 457 F.3d 711, 720-21 (7th Cir. 2006) (holding that while even "minor forms of retaliation" may be actionable under the First Amendment, actions

"so trivial that no rational jury could find that they would deter" protected activity are not); *Sneed v. City of Harvey*, 6 F. Supp. 3d 817, 840 (N.D. Ill. 2013) (holding that evidence showing that an unauthorized individual filled out the plaintiff officer's performance evaluation was not enough to avoid summary judgment on a First Amendment retaliation claim, as "[a] single evaluation, without any tangible job consequences or other evidence suggesting that the experience was distressing, would not deter a person of ordinary firmness from exercising his or her First Amendment rights"). As for Smith's due process claim, procedure itself cannot be a protected interest, lest "process" be wrongly treated "as a substantive end in itself." *Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir. 1982).

The second is that OCJ Defendants "lied about Plaintiff's employment status to City of Chicago Defendants by informing them that Plaintiff was still employed." Doc. 116 at 3; *see* Doc. 80 at ¶¶ 1, 47, 52, 95. But Smith fails to offer, and the court cannot find, any authority for the proposition that having one's employment status inaccurately communicated is sufficient to deter an ordinary person from exercising his right to speak or associate freely, or that there is a due process property or liberty interest in the accurate communication of such status.

Accordingly, Smith's § 1983 claims against OCJ Defendants are dismissed.

**D.     State Law Claims**

As shown above, there is no individual liability under the ICRA. *See* 740 ILCS 23/5(b); *Thorncreek Apartments*, 970 F. Supp. 2d at 845. As for the entity OCJ Defendants, OCJ Defendants contend that the ICRA claim is barred by 740 ILCS 12/5(b), which provides that any ICRA claim "brought in federal district court shall be a supplemental claim to a federal claim." Doc. 100 at 9. The only federal claims surviving dismissal are those against the City, and Smith fails to argue, let alone show, that Section 12/5(b) is satisfied where federal claims against one

defendant are paired with ICRA claims against another defendant. Smith accordingly has forfeited his ICRA claim against OCJ Defendants. *See G & S Holdings LLC*, 697 F.3d at 538; *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("[I]t is the parties' responsibility to allege facts and indicate their relevance under the correct legal standard.") (internal quotation marks omitted); *Alioto*, 651 F.3d at 721; *Lekas*, 405 F.3d at 614-15.

OCJ Defendants argue, Doc. 100 at 10, that the court lacks jurisdiction over Smith's contract claim because the Illinois Public Labor Relations Act, 5 ILCS 315/1 *et seq.*, "confer[s] exclusive jurisdiction on the Illinois Labor Relations Board over matters involving collective bargaining agreements between public employers and employees, including breach of contract claims." *McGreal v. Vill. of Orland Park*, 2013 WL 3984477, at *11 (N.D. Ill. Aug. 2, 2013) (collecting cases); *see also Cessna v. City of Danville*, 693 N.E.2d 1264, 1270-71 (Ill. App. 1998) (dismissing a public employee's claim that she was discharged in violation of a collective bargaining agreement, reasoning that the Board had exclusive jurisdiction over claims requiring interpretation of a collective bargaining agreement). The argument is correct, as Smith's employment was governed by a collective bargaining agreement. Doc. 80 at ¶¶ 14, 52, 54, 56. In any event, Smith forfeited any opposition he might have asserted by not responding to OCJ Defendants' argument. *See W.C. Motor Co. v. Talley*, 63 F. Supp. 3d 843, 852 (N.D. Ill. 2014) (holding that the proponent of jurisdiction can forfeit an argument in favor of jurisdiction). Smith's contract claim against OCJ Defendants thus is dismissed for lack of jurisdiction.

Finally, OCJ Defendants contend, Doc. 100 at 11-13, that Smith's remaining state law claims are barred by the Illinois State Lawsuit Immunity Act, 745 ILCS 5/0.01 *et seq.*, which protects the State and its subdivisions from being "made a defendant or party in any court." 745 ILCS 5/1. Although the statute is subject to an array of exceptions, Smith does not present an

intelligible argument for the application of any such exception. Doc. 116 at 11. Nor does Smith respond to OCJ Defendants' argument that the claims against individual OCJ Defendants are "really against the State itself" for purposes of the immunity statute. Doc. 100 at 11-13. Accordingly, Smith has forfeited any argument that his remaining state law claims should not be dismissed on immunity grounds. *See G & S Holdings LLC*, 697 F.3d at 538; *Puffer*, 675 F.3d at 718; *Alioto*, 651 F.3d at 721; *Lekas*, 405 F.3d at 614-15.

## III. AFSCME Defendants

### A. Title VII Claim

Smith alleges that AFSCME Defendants violated Title VII by refusing to submit or arbitrate his grievance and by failing to communicate with him about the status of his grievance. Doc. 80 at ¶¶ 1, 55, 80; Doc. 117 at 3. The Title VII claim against the individual AFSCME Defendants is dismissed. *See Nischan*, 865 F.3d at 930. The entity AFSCME Defendants move for summary judgment on the Title VII claim against them. Doc. 104 at 2-3.

AFSCME Defendants attached to their Local Rule 56.1(a)(3) statement a declaration from Thomas Edstrom—Council 31's supervising counsel—and a copy of the union's petition to compel arbitration for Smith's grievance. Doc. 102-2. Both documents confirm that AFSCME submitted Smith's grievance for arbitration and sought to compel arbitration after the OCJ refused to arbitrate. Doc. 103 at ¶¶ 16-19. Although Smith suggests that the union "submit[ted] [his] grievance to arbitration" only "after the filing of this lawsuit" on December 7, 2018, Doc. 117 at 3, the record indisputably refutes his point. While AFSCME's petition to compel arbitration was filed after Smith filed suit, its efforts to arbitrate his grievance began months earlier. Doc. 102-1 at 7 (AFSCME representative emailing Chief Judge's Office on October 5, 2018, to discuss the panel for Smith's arbitration); Doc. 102-2 (describing AFSCME's efforts in October 2018 to arbitrate Smith's grievance).

As to AFSCME Defendants' alleged failure to communicate with him, it is undisputed that Smith sent an email on October 1, 2018 to several AFSCME representatives about the status of his arbitration. Doc. 139 at ¶ 7. But Smith adduces no evidence that AFSCME failed to respond to that email. Doc. 136 at ¶ 16. Even if AFSCME did not respond, that would not raise any material fact dispute concerning whether AFSCME submitted Smith's grievance to arbitration. Any failure in AFSCME's diligence in communicating with Smith about the status of his grievance and arbitration would not be actionable under Title VII because it would not "visit[] upon [him] a significant change in employment status." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (internal quotation marks omitted); *see also Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 372-73 (6th Cir. 2013) (holding that "a failure to communicate" about the results of discrimination complaints "does not constitute an adverse employment action"); *LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688, 692 (8th Cir. 2001) (holding that a supervisor's "failure to inform [an employee] of mandatory meetings … , alone, does not establish an adverse employment action"); *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000) (holding that a "university's failure to inform" an assistant professor "of its findings or resulting disciplinary actions," while "certainly irritating and perhaps unjustified," did not constitute an adverse employment action). For purposes of a Title VII retaliation claim, nor would the failure to return an email "show that the employer's action would cause a reasonable worker to be dissuaded from making or supporting a charge of discrimination." *Chaib v. Indiana*, 744 F.3d 974, 986-87 (7th Cir. 2014) (internal quotation marks omitted), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).

**B. Title VI Claim**

As noted, "to plead [a] claim under Title VI successfully," Smith must "plausibly allege that Defendants have received 'federal financial assistance' within the meaning of Title VI." *Shebley*, 357 F. Supp. 3d at 693. But the operative complaint does not allege that any AFSCME Defendant received federal funding, and the 40-page brochure Smith attaches to his brief, Doc. 117-7, which he cites for the proposition that AFSCME received federal funding, Doc. 117 at 4, does not support his point. Smith's Title VI claim against AFSCME Defendants therefore is dismissed.

**C. Section 1983 Claims**

Smith's § 1983 claims against OCJ Defendants allege violations of the First and Fourteenth Amendments. Those constitutional provisions "protect citizens from conduct by the government, but not from conduct by private actors." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). "Unions are not state actors; they are private actors." *Ibid.* Although there are "numerous situations when private conduct takes on the color of law," thereby giving rise to § 1983 liability, *ibid.*, Smith has forfeited any argument that his allegations present such a situation. *See G & S Holdings LLC*, 697 F.3d at 538; *Puffer*, 675 F.3d at 718; *Alioto*, 651 F.3d at 721; *Lekas*, 405 F.3d at 614-15.

**D. State Law Claims**

Smith's ICRA claim against AFSCME Defendants is dismissed because, as noted above, ICRA claims may be brought against only governmental entities. *See* 740 ILCS 23/5(b); *Thorncreek Apartments*, 970 F. Supp. 2d at 845. Smith's Slander and Libel Act claims against AFSCME Defendants fail because, as noted above, the statute applies only to a false publication

that "charge[s] any person with having been guilty of fornication or adultery," 740 ILCS 145/1, or "swearing falsely," 740 ILCS 145/2, and the operative complaint alleges neither.

As also noted above, Smith's common law defamation claim against AFSCME Defendants requires that he allege "facts showing that [they] made a false statement about [him], that [they] made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green*, 917 N.E.2d at 459. Smith alleges that Marshall sent an email to another bargaining unit member, the union's executive board, and AFSCME Council 31 stating that Smith had been illegally sending case to arbitration and had character issues. Doc. 80 at ¶ 53; Doc. 117-8 at 1-2 (copy of the email). The operative complaint singles out only two statements in the email as defamatory, Doc. 80 at ¶ 53, so the court considers only those statements. *See Mitchell v. Plano Police Dep't*, 2017 WL 4340118, at *6 (N.D. Ill. Sept. 29, 2017) (dismissing a defamation claim where the plaintiff "fail[ed] to identify any particular statement" as defamatory, "let alone allege facts suggesting that the statement was false").

First, Smith complains that Marshall's email accused him of having "some character issues." Doc. 80 at ¶¶ 53, 95. But it is axiomatic that "the First Amendment affords protection from liability to a speaker expressing an opinion that does not misstate actual facts," *Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008), and a generalized assessment of a person's character is just such a statement. *See Liu v. Nw. Univ.*, 78 F. Supp. 3d 839, 849-50 (N.D. Ill. 2015) (holding that the defendant's statement that the plaintiff had "been uncooperative, evasive, and not forthcoming" was protected opinion "because [it] cannot be objectively verified"); *Hopewell v. Vitullo*, 701 N.E.2d 99, 104 (Ill. App. 1998) (holding the defendant's statement that the plaintiff was "fired because of incompetence" to be protected opinion because it was "too broad, conclusory, and subjective to be objectively verifiable").

Second, Smith contends that the email suggests he illegally sent cases to arbitration as union president. Doc. 80 at ¶¶ 53, 95. But Smith never alleges any damages stemming from that statement, nor—despite setting forth the legal standard for defamation per se—explain why the statement would constitute defamation per se. *See G & S Holdings LLC*, 697 F.3d at 538; *Puffer*, 675 F.3d at 718; *Alioto*, 651 F.3d at 721; *Lekas*, 405 F.3d at 614-15. He has thus failed to state a defamation claim.

Smith alleges that AFSCME Defendants violated the Illinois Whistleblower Act ("IWA"), which provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. Because Smith does not allege that any AFSCME Defendant was his employer, he has no claim against those defendants under the IWA. *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 385-86 (7th Cir. 2016) (holding that an IWA claim was properly dismissed because the plaintiffs did not allege that they were the defendant's employees).

As for Smith's claims related to the collective bargaining agreement, this court lacks jurisdiction over his "unfair representation" claim, as the Illinois Labor Relations Board "has exclusive jurisdiction to hear unfair labor practice grievances of Illinois state employees." *Carver v. Nall*, 172 F.3d 513, 516 (7th Cir. 1999). And Smith's contract claim against AFSCME Defendants, which alleges a violation of the collective bargaining agreement, fares no better, as explained above in dismissing his contract claim against OCJ Defendants. *See Cessna*, 693 N.E.2d at 1270-71; *McGreal*, 2013 WL 3984477, at *11.

**Conclusion**

City Defendants' motion to dismiss is granted in part. Smith's claims against City Defendants are dismissed, except for his Title VII retaliation, ICRA retaliation, and defamation claims against the City. OCJ Defendants' motion to dismiss and AFSCME Defendants' motion to dismiss and for summary judgment are granted in full. Smith's Title VII claim against the entity OCJ Defendants is dismissed without prejudice, his contract claim against OCJ Defendants is dismissed for lack of jurisdiction, and his contract and unfair representation claims against AFSCME Defendants are dismissed for lack of jurisdiction. The remaining dismissals are with prejudice, as Smith has already amended his complaint, Doc. 80, and does not request leave to amend or suggest how another amendment might cure the defects identified by the present motions. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in … dismissing a complaint with prejudice ... when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint."). The City shall answer the surviving portions of the operative complaint by December 16, 2019.

## <u>No. 19 C 1539</u>

Jason Smith filed this *pro se* putative class action against OCJ Defendants and AFSCME Defendants on March 4, 2019, less than three months after filing suit in No. 18 C 8075 ("*Smith I*"). Doc. 1 (all record citations in this part of the opinion are to the docket in No. 19 C 1539).

The complaint here raises claims that overlap substantially with those raised in *Smith I*. The court has dismissed with prejudice all claims against OCJ Defendants and AFSCME Defendants in *Smith I*. In this case, OCJ Defendants move to dismiss Smith's claims, Doc. 34, and to strike his class allegations, Doc. 36, and AFSCME Defendants move both to dismiss and for partial summary judgment, Doc. 39. The motions are granted.

Absent extraordinary circumstances not present here, such as a *pro se* plaintiff being an attorney, a *pro se* plaintiff cannot be an adequate class representative. *See Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015) ("[I]t is generally not an abuse of discretion for a district court to deny a motion for class certification on the ground that a pro se litigant is not an adequate class representative.") (emphasis omitted); *Lawrence v. Sec'y of State*, 467 F. App'x 523, 525 (7th Cir. 2012) (noting that "*pro se* plaintiffs cannot represent others"); *Jagla v. LaSalle Bank*, 2006 WL 1005728, at *4 (N.D. Ill. Apr. 12, 2006) (stating that courts "have uniformly refused to certify class actions brought by pro se plaintiffs"); *see also Nocula v. UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2008) ("Corporations cannot appear pro se and one pro se litigant cannot represent another.") (citations omitted). Accordingly, OCJ Defendants' motion to strike class allegations is granted.

The complaint in this case brings individual claims substantially identical to those brought in the operative complaint in *Smith I*. "As a general rule, a federal suit may be dismissed for reasons of wise judicial administration … whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (internal quotation marks omitted, ellipses in original). "District courts are accorded a great deal of latitude and discretion in determining whether one action is duplicative of another,

but generally, a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Ibid*. (internal quotation marks omitted).

Although Smith recounts Defendants' alleged wrongs against him in more abbreviated form here, he identifies no respect in which this complaint advances factual allegations materially distinct from those in *Smith I*. Instead, Smith offers only that the operative complaint in *Smith I* "cites other individuals, contains other violations of the law … and does not contain class allegations." Doc. 50 at 3. Of course, the fact that this case *omits* individuals or claims included in *Smith I* cannot render this action non-duplicative.

The complaint here diverges in only two significant respects from *Smith I*. First, Smith seeks to pursue a class action. Doc. 1 at ¶¶ 73-79. But the class allegations have been stricken. Second, while five of the six counts in this case overlap with *Smith I*, Smith advances here one count against OCJ Defendants not expressly pursued in *Smith I*: a claim under the Illinois Probation Act, 730 ILCS 110/13. Doc. 1 at ¶ 84.

Even if the addition of one new legal theory could render this case non-duplicative, Smith's Probation Act claim is barred by the rule against claim splitting. "The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (internal quotation marks omitted). Simply put, "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000); *see also Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (same); *CIVIX–DDI, LLC v. Expedia, Inc.*, 2005 WL 1126906, at *4 (N.D. Ill. May 2, 2005) ("Courts prohibit a litigant from splitting its claims into multiple actions when the litigant should have brought the claims in a single action."). Because

Smith could have brought his Probation Act claim in *Smith I*, the claim splitting doctrine prevents him from bringing it here. *See Chicago Title Land Tr. Co. v. Potash Corp. of Sask. Sales Ltd.*, 664 F.3d 1075, 1081 (7th Cir. 2011) ("Claim splitting is not a way around res judicata. To the contrary, [t]he principle that res judicata prohibits a party from later seeking relief on the basis of issues which might have been raised in a prior action also prevents a litigant from splitting a single cause of action into more than one proceeding.") (internal quotation marks omitted, modifications in original); *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) ("This case is a quintessential example of claim splitting in duplicative lawsuits, a litigation tactic that res judicata doctrine is meant to prevent.").

Accordingly, OCJ Defendants' and AFSCME Defendants' motions to strike and dismiss are granted. The dismissal of Smith's claims is without prejudice to his filing an amended complaint that attempts to plead viable claims. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). Smith has until December 20, 2019 to file an amended complaint. If he does not do so, the court will enter judgment and dismiss his claims here without prejudice to his pursuing his claims against OCJ Defendants and AFSCME Defendants on appeal in *Smith I*. If Smith files an amended complaint, Defendants will have until January 10, 2020 to respond.

November 25, 2019

_____
United States District Judge