UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 8075 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CITY OF CHICAGO, SYDNEY ROBERTS, KARLO | ) | |
| FLOWERS, and JAMES AGUILU-MURPHY, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Jason Smith brought this *pro se* suit against the Office of the Chief Judge of the Circuit

Court of Cook County ("OCJ") and several affiliated defendants; the American Federation of

State, County and Municipal Employees Council 31 ("AFSCME") and several affiliated

defendants; and the City of Chicago and City employees Brandon Crase, Karlo Flowers, and

Sydney Roberts. Doc. 80. The court dismissed under Civil Rule 12(b)(6) all claims in Smith's

first amended complaint, except for those against the City for retaliation under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., retaliation under the Illinois Civil Rights

Act ("ICRA"), 740 ILCS 23/1 *et seq*., and common law defamation. Docs. 147-148 (reported at

2019 WL 6327423 (N.D. Ill. Nov. 25, 2019)). Smith appealed, Doc. 154, and the Seventh

Circuit dismissed the appeal because final judgment had not been entered, Doc. 177.

Smith then filed a second amended complaint, which purports to state the following

claims: (1) Title VII retaliation against the City; (2) ICRA retaliation against the City; (3) a claim

under the Illinois Slander and Libel Act, 740 ILCS 145/1 *et seq*., against the City, Flowers, and a

new defendant, James Aguilu-Murphy; (4) discrimination under the Illinois Human Rights Act

("IHRA"), 775 ILCS 5/1-101 *et seq*., against the City and Roberts; (5) IHRA retaliation aiding

and abetting against the City, Roberts, Flowers, and Aguilu-Murphy; (6) a claim under the Illinois Personnel Records Review Act ("IPRRA"), 820 ILCS 40/1 *et seq*., against Flowers and Aguilu-Murphy; and (7) indemnification against the City under 745 ILCS 10/9-102. Doc. 227. Those defendants ("City Defendants") move to dismiss under Rule 12(b)(6). Doc. 240. The motion is granted in part and denied in part.

### Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Smith's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Smith as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

A detailed description of the allegations in Smith's first amended complaint appears in the court's prior opinion, familiarity with which is assumed. The facts pertinent at the present juncture are as follows. Smith, an African-American man, was employed by OCJ as a Cook County probation officer. Doc. 227 at ¶¶ 18-19; Doc. 268 at 10; Doc. 268-2 at 2. On February 16, 2018, Smith resigned and took a job with the City's Civil Office of Police Accountability ("COPA"). Doc. 227 at ¶¶ 18-20. While Smith served in that role, OCJ employees began

2

emailing City Defendants about a complaint that Smith had filed with the Illinois Department of Human Rights ("IDHR") and a request for education leave that he had submitted while working as a probation officer. *Id*. at ¶ 13. Smith alleges that Chief Judge Evans of the Cook County Circuit Court notified City Defendants and COPA about Smith's IDHR complaint and sent certain false information about him. *Id*. at ¶ 21.

Based on the information they received, City Defendants "discriminated and retaliated against [Smith]." *Id*. at ¶ 6. On June 22, 2018, Roberts—COPA's Chief Investigator—fired Smith without providing any reason. *Id*. at ¶¶ 5-6; Doc. 268 at 10; Doc. 268-2 at 2. On November 27, 2018, Flowers—COPA's Human Resource Administrator, Doc. 80 at ¶ 27—and Aguilu-Murphy—a COPA Supervising Investigator, Doc. 274-3 at 3—defamed Smith by sending emails to a potential employer—the Transportation Security Administration ("TSA")—stating that COPA had terminated him for failing to disclose secondary employment and engaging in misconduct. Doc. 227 at ¶ 45; Doc. 268-3 at 1-2.

Meanwhile, on July 25, 2018, Smith filed a discrimination charge against the City with the IDHR, alleging that he was wrongfully discharged on account of his race and color and in retaliation for opposing unlawful discrimination. Doc. 227 at ¶ 7; Doc. 268 at 9; Doc. 268-1 at 1-4. The charge was signed and notarized—*i.e.*, "perfected"—on October 7, 2019. Doc. 268 at 9; Doc. 268-2 at 1; *see White v. Acme Steel Co.*, 1987 WL 6629, at *1 (N.D. Ill. Feb. 11, 1987) ("On October 14, 1985 Acme received a Notice of Dismissal from IDHR dated October 4, 1985 stating that plaintiff's charge had been dismissed because it had not been perfected by signing and notarization."). On May 21, 2020, Smith signed a letter, which was on IDHR letterhead and addressed to the Equal Employment Opportunity Commission ("EEOC"), "withdrawing" his IDHR charge and asking the EEOC for a right-to-sue letter. Doc. 268-5 at 1-2. On June 10,

3

2020, the IDHR issued an "order of closure" approving the request. Doc. 274-2 at 1-2. Smith has not received a right to sue notice from the EEOC. Doc. 227 at ¶ 8 ("[P]laintiff has not received the [notice] and is unsure if or when the notice will be sent given the current state of affairs due to COV-19 [sic][.]").

On July 30, 2018, five days after filing his IDHR charge, Smith filed a charge against the City with the EEOC, alleging that he "ha[d] been retaliated against for engaging in protected activity, in violation of Title VII." Doc. 268 at 9; Doc. 268-6 at 1. On November 9, 2018, the EEOC determined that it was unable to establish that a Title VII violation had occurred and issued Smith a right-to-sue letter. Doc. 268-6 at 2-4.

Smith filed this suit on December 7, 2018. Doc. 1.

## Discussion

### I.     Title VII Retaliation Claim Against the City

Title VII's antiretaliation provision "prohibits retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (citing 42 U.S.C. § 2000e-3(a)). "Pleading a retaliation claim under Title VII requires the plaintiff to allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (internal quotation marks omitted). The City contends that Smith does not allege that he was fired from COPA due to some prior protected activity. Doc. 240 at 4-5; Doc. 274 at 2-3.

Drawing reasonable inferences in Smith's favor, the complaint plausibly alleges a causal link between his termination from COPA and prior protected activity—namely, filing the IDHR charge while employed by OCJ. Specifically, the complaint alleges that certain OCJ employees "emailed the City … Defendants information about [Smith's] IDHR complaint" while he was

working for COPA, and that Smith was fired as a result. Doc. 227 at ¶¶ 5, 9, 12-13; Doc. 268 at 3. In an effort to refute that allegation, the City attaches to its reply brief an email that it asserts is the email referenced by Smith's complaint. Doc. 274 at 2-3 (citing Doc. 274-1 at 1-6). Although the court may consider a document referenced in the complaint if it is central to the plaintiff's claim, *see Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009), the City has not indisputably established that the email attached to its reply brief is in fact the email referenced in Smith's complaint. Indeed, while Smith alleges that the email in question was from OCJ to City employees, Doc. 227 at ¶ 13, the email attached by the City is from Smith to various OCJ employees, Doc. 274-1 at 1-2. Accordingly, the exhibit is not properly before the court at this juncture, and Smith's Title VII retaliation claim survives dismissal.

## II.      ICRA Retaliation Claim Against the City

ICRA prohibits units of state, county, or local government from engaging in "discrimination" on the basis of "race" and other protected categories. 740 ILCS 23/5(a)(1). The complaint asserts an ICRA retaliation claim. Doc. 227 at ¶¶ 26-31. It is uncertain whether ICRA creates a cause of action for retaliation. *Compare Ill. Native Am. Bar Ass'n v. Univ. of Ill.*, 856 N.E.2d 460, 469 (Ill. App. 2006) (Hoffman, J., concurring) (taking the view that ICRA, unlike IHRA, does not create a cause of action for retaliation because it explicitly references "discrimination" and not "retaliation"), *with Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 889-90 (N.D. Ill. 2015) (disagreeing with Judge Hoffman and "conclud[ing] that an individual can bring a claim for retaliation under ICRA" "because a plaintiff can maintain an action for retaliation under Title VI, and ICRA was patterned on Title VI"), *and Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2020 WL 1330654, at *5 (N.D. Ill. Mar. 22, 2020) (siding with *Weiler* after stressing that "the United States Supreme Court has interpreted several anti-discrimination statutes to prohibit retaliation—even absent an explicit textual reference to 'retaliation'—because

retaliation *is* a form of discrimination and enforcement of anti-discrimination statutes would be undermined if it were not interpreted that way").  There is no need to choose sides here, as the City does not press that issue in moving to dismiss.

As the City acknowledges, Doc. 240 at 6, Smith's ICRA retaliation claim is substantively identical to his Title VII retaliation claim.  *See Carey*, 2020 WL 1330654 at *5 (recognizing that ICRA and Title VII retaliation claims have the same elements).  Accordingly, because Smith's Title VII retaliation claim survives dismissal, his ICRA retaliation claim does as well.

## III.    Defamation Claim Against the City, Flowers, and Aguilu-Murphy

Although the complaint purports to assert a Slander and Libel Act claim based on the November 27, 2018 emails that Flowers and Aguilu-Murphy sent to the TSA, Doc. 227 at ¶¶ 40-47, Smith's opposition brief re-packages those allegations into a common law defamation claim, Doc. 268 at 6-9.  By failing to defend his Slander and Libel Act claim, Smith has abandoned it. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Lekas v. Briley*, 405 F.3d 602, 614-15 (7th Cir. 2005) (holding that the plaintiff abandoned a claim asserted in a complaint where "he did not present legal arguments or cite relevant authority to substantiate that claim in responding to defendants' motion to dismiss"); *see also Boogaard v. NHL*, 891 F.3d 289, 294-96 (7th Cir. 2018) (affirming the district court's holding that the plaintiffs forfeited their claims by failing to respond to the defendant's argument on a Rule 12(b)(6) motion that they failed to state a claim).  That said, and contrary to City Defendants' submission, Doc. 240 at 7, the complaint's failure to expressly refer to common law defamation is of no moment because

"plaintiffs in federal courts are not required to plead legal theories." *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).

This court previously held, and City Defendants do not dispute, that Smith has alleged a common law defamation claim under Illinois law. 2019 WL 6327423, at *4. City Defendants argue, however, that they are shielded from liability by the Illinois Tort Immunity Act ("TIA"), 745 ILCS 10/1-101 *et seq.* Smith fails to respond to the City's argument that section 2-107 of the TIA immunizes it from liability, Doc. 240 at 7, thereby forfeiting the point. Even putting aside forfeiture, the City is correct on the merits. *See* 745 ILCS 10/2-107 ("A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material."); *Ramos v. City of Peru*, 775 N.E.2d 184, 188-89 (Ill. App. 2002) (dismissing a defamation claim against a municipality, reasoning that the claim was barred by section 2-107).

Flowers and Aguilu-Murphy argue that they are shielded by section 2-210 of the TIA. Doc. 240 at 7-8; Doc. 274 at 7-9. Section 2-210 provides: "A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-210. "'Provision of information,' which is a separate category from 'negligent misrepresentation' under [section 2-210], affords a broad protection to public employees acting within the scope of their employment." *Masters v. Murphy*, __ N.E.3d __, 2020 WL 6742783, at *3 (Ill. App. Nov. 17, 2020). Of relevance here, the "provision of information" component of section 2-210 can

provide immunity against defamation claims. *See id*. at *2-4; *Goldberg v. Brooks*, 948 N.E.2d 1108, 1113-14 (Ill. App. 2011).

"To establish immunity under section 2-210's provision of information category, [a defendant] need[s] to show that (1) she was a public employee who (2) provided information while (3) acting within the scope of her employment." *Masters*, 2020 WL 6742783, at *3. Focusing on the third element, Smith argues that Aguilu-Murphy and Flowers were not acting within the scope of their employment when they communicated their allegedly defamatory statements to the TSA. Doc. 268 at 6-9. Under Illinois law, which adopts the test set forth by the Restatement (Second) of Agency, a defendant's conduct occurs within the scope of his employment if: "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master[.]" *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 992 (Ill. 2007) (quoting Restatement (Second) of Agency § 228 (1958)); *see also Masters*, 2020 WL 6742783, at *5 (applying these factors to determine whether the defendant enjoyed immunity under section 2-210); *In re Estate of Lambie*, 2012 IL App (4th) 110494-U, at ¶¶ 17-21 (Ill. App. March 8, 2012) (same).

Smith suggests that Aguilu-Murphy's admission at his deposition that "it was not within his job duties to provide … information [to the TSA regarding Smith]" renders it inappropriate to hold on the pleadings that Aguilu-Murphy's conduct was "of the kind he [wa]s employed to perform" within the meaning of the first component of the governing test. Doc. 268 at 8-9. Relying on the November 27, 2018 emails to the TSA conveying the allegedly defamatory statements, Aguilu-Murphy counters with the assertion that he made his statement in his capacity as Smith's former supervisor. Doc. 274 at 8 (quoting Doc. 274-3 at 3) ("[Smith] was an

Investigator, he was my direct report, my understanding is he was terminated … [because] he had failed to disclose secondary employment however, please refer to Karlo Flowers if you need a more detailed description of the termination.").  Although Aguilu-Murphy's status as Smith's supervisor may bear on whether he was employed to relay information to Smith's potential future employers, it does not establish that proposition as a matter of law for purposes of a Rule 12(b)(6) motion.  *Cf. Masters*, 2020 WL 6742783, at *4 (where a correctional officer brought a defamation claim against another officer for falsely reporting to a supervisor that he had handed jail keys to an inmate, holding the Restatement test satisfied because "correctional officers are responsible for the security of detainees" and the safekeeping of keys was "required by the [jail's] key policy and the administrative code"); *Goldberg*, 948 N.E.2d at 1111, 1114 (holding that a teacher's assistant accused of defaming a school bus driver was entitled to immunity under section 2-210 because "she was paid additional money for the bus duty" and it "was her responsibility to supervise the students and to report any problems or unusual incidents to the principal").  Thus, drawing all reasonable inferences in Smith's favor, the court at this stage cannot hold that Aguilu-Murphy is entitled to immunity under section 2-210.

The same is true for Flowers.  To be sure, the November 27, 2018 emails indicate that when Flowers made statements to the TSA about Smith, Flowers held the title of "Deputy Chief-Administrator—Chief of Staff," Doc. 274-3 at 5, a "human resources" post, *id*. at 4.  However, it does not necessarily follow that Flowers was "unequivocally acting within the scope of [his] employment" when he participated in the alleged defamatory acts.  Doc. 274 at 8 (internal quotation marks omitted).  As with Aguilu-Murphy, the court therefore cannot conclude on the pleadings that Flowers is entitled to immunity under section 2-210.  *See Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 280 (Ill. 2003) ("Because the immunities afforded to governmental

entities [under the TIA] operate as an affirmative defense, those entities bear the burden of properly raising and proving their immunity under the Act."); *Masters*, 2020 WL 6742783, at *3 ("It is the entity or employee's burden to assert and prove an immunity under the [Tort Immunity] Act.").

Accordingly, Smith's defamation claims against Aguilu-Murphy and Flowers survive dismissal, but his claim against the City does not.

## IV.    IHRA Claims

The operative complaint purports to state IHRA claims for discrimination and "aiding and abetting" retaliation.  Doc. 227 at ¶¶ 17-24 (discrimination); *id*. at ¶¶ 32-39 ("aiding and abetting" retaliation).  Defendants argue that these claims should be dismissed due to Smith's failure to exhaust administrative remedies.  Doc. 240 at 9-11; Doc. 274 at 4-6.

The IHRA requires a complainant to exhaust administrative remedies prior to filing a civil lawsuit.  Generally, the complainant first must file a charge with the IDHR within 300 days of the alleged civil rights violation.  *See* 775 ILCS 5/7A-102(A).  Ten days after the filing of a charge, the IDHR notifies the complainant of his right, which must be exercised within 60 days of receiving the notice, to "opt out" of its investigation of the charge and directly commence a civil action in court.  775 ILCS 5/7A-102(B) ("The Department shall, within 10 days of the date on which the charge was filed, serve a copy of the charge on the respondent and provide all parties with a notice of the complainant's right to opt out of the investigation within 60 days[.]"), (C-1) ("At any time within 60 days after receipt of notice of the right to opt out, a complainant may submit a written request seeking notice from the Director indicating that the complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction.").  If the complainant does not timely opt out of IDHR's investigation, he may file a civil suit once the IDHR investigates the charge

10

and issues a report, *see* 775 ILCS 5/7A–102(D), or in the event that IDHR fails to issue a report

within a year of the charge being filed, *see* 775 ILCS 5/7A–102(G)(2).  Failure to comply with

the IHRA's exhaustion requirements warrants dismissal of an IHRA claim.  *See Garcia v. Vill. of*

*Mt. Prospect*, 360 F.3d 630, 640 (7th Cir. 2004).

Smith's contention that he exhausted his IHRA claims is predicated entirely on the IDHR

charge he filed on July 25, 2018 and "perfected" on October 7, 2019.  Doc. 268 at 9-11; Doc.

268-1 at 1-4; Doc. 268-2 at 1-3.  (The charge may have been cross-filed with the EEOC, Doc.

268-2 at 1-3, but Smith does not rely on that possibility in making his exhaustion argument.).

According to Smith, because he filed that charge within 300 days of his termination from COPA,

it was timely.  Doc. 268 at 9, 11.  And relying on a letter attached to his opposition brief, Doc.

268-5 at 1, Smith submits that he exhausted his administrative remedies because "the [IDHR] …

requested a Notice of Right to Sue" from the EEOC on May 21, 2020, Doc. 268 at 9; Doc. 227 at

¶ 8, and duly closed his file, Doc. 268 at 11.

Even if Smith timely *filed* his charge, he did not properly *exhaust* his administrative

remedies.  Smith filed this suit on December 7, 2018, less than one year after he filed his charge,

and he does not allege that IDHR issued a report after investigating his charge, eliminating two

of the three exhaustion pathways.  Insofar as Smith relies on IHRA's "opt-out" provision, 775

ILCS 5/7A-102(C-1), Defendants correctly note that the letter he points to shows that he

*withdrew* his IDHR charge on May 21, 2020, not that he *opted out* of IDHR's investigation.

Doc. 268-5 at 1 ("I am withdrawing Charge Number 2019CF2882 from the [IDHR] and hereby

request a Right to Sue Notice ("Notice") from EEOC[.]").  Moreover, at that point in time, Smith

could not have exercised his opt-out right to proceed directly in court because the 60-day opt-out

period under 775 ILCS 5/7A-102(C-1) had long since expired.  In fact, in response to Smith's

11

letter, IDHR approved his "request to withdraw" and issued an "order of closure." Doc. 274-2 at

1-2; *see McGee v. United Parcel Serv., Inc.*, 2002 WL 449061, at *2 (N.D. Ill. Mar. 22, 2002)

("[T]he court may take judicial notice of matters of public record, including records of

administrative bodies such as the IDHR.") (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284

(7th Cir. 1994)). In so doing, the IDHR did not state that Smith had the right to bring a civil suit

within 90 days of receiving the response—as it would have done had it issued a notice of the

right to sue under the "opt-out" provision. *See* 775 ILCS 5/7A–102(C-1) ("Within 10 business

days of receipt of the complainant's request to opt out of the investigation, the Director shall

issue a notice to the parties stating that: (i) the complainant has exercised the right to opt out of

the investigation; (ii) the complainant has 90 days after receipt of the Director's notice to

commence an action in the appropriate circuit court or other appropriate court of competent

jurisdiction; and (iii) the Department has ceased its investigation and is administratively closing

the charge."). And having voluntarily withdrawn his charge, Smith failed to exhaust his

administrative remedies. *See Baranowska v. Intertek Testing Servs. NA, Inc.*, 2020 WL 1701860,

at *3 (N.D. Ill. Apr. 8, 2020) ("Because the documents show that [the plaintiff] voluntarily

withdrew her charge and the IDHR closed her charge [by issuing an 'order of closure'] without

issuing her the right to sue, she has failed to exhaust her administrative remedies."); *Vroman v.

Round Lake Area Sch.-Dist.*, 2015 WL 7273108, at *2 (N.D. Ill. Nov. 18, 2015) ("It is well-

established that a complainant who voluntarily withdraws a charge before the IDHR issues a

final order addressing whether there is substantial evidence supporting the alleged civil rights

violation has failed to exhaust her administrative remedies."); *Anderson v. Ctrs. for New

Horizons, Inc.*, 891 F. Supp. 2d 956, 960 (N.D. Ill. 2012) (dismissing the plaintiff's IHRA claim

12

for failure to exhaust because she voluntarily withdrew her charge before receiving a final order from the IDHR).

Smith offers no other basis for concluding that he properly exhausted his IHRA claims, thereby forfeiting any such argument. Those claims accordingly are dismissed without prejudice for failure to exhaust. *See Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) ("[T]he proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims."); *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 410 n.11 (7th Cir. 1989) (same).

## V. IPRRA Claim

Smith's opposition brief does not defend his IPRRA claim, thereby abandoning it. *See G & S Holdings LLC*, 697 F.3d at 538. Accordingly, the IPRRA claim is dismissed.

## VI. Indemnification Claim

Because Smith's defamation claim against Aguilu-Murphy and Flowers survives, there is a basis for individual liability that may give rise to an indemnification obligation on the City's part under 745 ILCS 10/9-102. Accordingly, that portion of Smith's indemnification claim against the City survives dismissal.

### Conclusion

City Defendants' motion to dismiss is granted in part and denied in part. The motion is denied as to Smith's Title VII and ICRA retaliation claims against the City, the defamation claim against Aguilu-Murphy and Flowers, and the corresponding portion of his indemnification claim against the City. The motion otherwise is granted. Aside from the IHRA claims, which are dismissed without prejudice for failure to exhaust, the other dismissed claims are dismissed with prejudice because Smith does not suggest how yet another amended complaint might cure the

13

defects identified above. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in … dismissing a complaint with prejudice … when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint."). The City, Aguilu-Murphy, and Flowers shall answer the surviving portions of the operative complaint by March 2, 2021.

February 9, 2021

_____

United States District Judge